ACCEPTED
03-15-00128-CV
5606085
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/9/2015 3:21:27 PM
JEFFREY D. KYLE
CLERK

## CAUSE NUMBER 03-15-00128-CV

## IN THE COURT OF APPEALS

## FOR THE THIRD COURT OF APPEALS DISTRICT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
6/9/2015 3:21:27 PM
JEFFREY D. KYLE
Clerk

### TEDDE R. BLUNCK,

*Appellant,*

### V.

### CATHY A. BLUNCK,

*Appellee.*

## ON APPEAL FROM THE 22ND DISTRICT COURT, HAYS COUNTY, TEXAS

## TRIAL COURT CAUSE NO. 11-1217

## APPELLANT'S BRIEF

RESPECTFULLY SUBMITTED:

TEDDE R. BLUNCK, PRO SE
502 QUITMAN STREET
P O BOX 1152
PITTSBURG, TEXAS 75686
TELEPHONE: (903) 855-8460
TELECOPIER: (903) 855-8465
E-MAIL: tblunck@yahoo.com

i

## Identity of Parties and Counsel

**Appellant/Petitioner:**
Tedde R. Blunck
502 Quitman Street
P O Box 1152
Pittsburg, Texas 75686
Telephone: (903) 855-8460
Telecopier: (903) 855-8465
E-mail: tblunck@yahoo.com

**Petitioner/Appellant's Appellate Counsel:**
Tedde R. Blunck, Pro Se
502 Quitman Street
P O Box 1152
Pittsburg, Texas 75686
Telephone: (903) 855-8460
Telecopier: (903) 855-8465
E-mail: tblunck@yahoo.com

**Appellee/Respondent:**
Cathy A. Blunck
1433 Preston Road, Suite 1707
Dallas, Texas 75254
Mobile: (214) 668-9468
Telecopier: unknown
E-mail: cablunck@yahoo.com

**Respondent/Appellee's Appellate Counsel:**
Mr. Karl E. Hays
Law Office of Karl E. Hays, PLLC
2101 South Highway 35, Suite 210
Austin, Texas 78741
Telephone: (512) 476-1911
Telecopier: (512) 476-1904
service@haysfamilylaw.com

---

Respectfully Submitted:

Tedde R. Blunck, Pro Se
502 Quitman Street
P O Box 1152
Pittsburg, Texas 75686
Telephone: (903) 855-8460
Telecopier: (903) 855-8465
E-mail: tblunck@yahoo.com

ii

## TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL _____ ii

TABLE OF CONTENTS _____ iii

INDEX OF AUTHORITIES _____ iv

STATEMENT OF THE CASE _____ 1

ISSUES PRESENTED _____ 2

STATEMENT OF FACTS _____ 3

SUMMARY OF THE ARGUMENT _____ 8

ARGUMENT _____ 13

PRAYER _____ 23

CERTIFICATE OF NUMBER OF WORDS IN BRIEF _____ 24

CERTIFICATE OF SERVICE _____ 24

APPENDIX _____ 25

# INDEX OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

Af-Cap, Inc. v. Republic of Congo,
462 F.3d 417 (5th Cir. 2006)_____          8, 14

Beaumont Bank, N.A. v. Buller,
806 S.W.2d 223 (Tex. 1991)_____          8, 14

Bergeron v. Sessions,
561 S.W.2d 551 (Tex. Civ. App.--Dallas 1977, writ ref'd n.r.e.)_____          21, 22

Bergman v. Bergman,
828 S.W.2d 555 (Tex. App. – El Paso, 1992, no writ.)_____          19

Burns v. Miller, et al,
 948 S.W.2d 317 (Tex. App. – Dallas, 1997, writ denied)_____          12, 18, 20

Clayton v. Wisener,
169 S.W.3d 682 (Tex. App.--Tyler 2005, no pet.)_____          10, 16, 17

Elkins v. Stotts-Brown,
103 S.W.3d 664  (Tex. App.-Dallas 2003, no pet.)_____          17

Estate of Guerrero,
2015 Tex. App. Lexis 4121 (Tex. App.—Houston [14th Dist.], no pet.)__          11, 16

Ex parte Johnson,
654 S.W.2d 415 (Tex. 1983)_____          8, 14

Finotti v. Old Harbor Co.,
1999 Tex. App. LEXIS 8514 (Tex. App. -- Dallas, no pet.)_____          9, 15

Garza v. Wilson,
2000 Tex. App. LEXIS 581,  (Tex. App.-Houston [14th Dist.], no pet.)          11, 17

Hodges v. Peden,
634 S.W.2d 8, (Tex. App.--Houston [14th Dist.] 1982, no writ)_____          23

Jones v. Strayhorn,
321 S.W.2d 290 (Tex. 1959)_____ 20, 22

Mansions in the Forest, L.P. v. Montgomery County,
365 S.W.3d 314 (Tex. 2013)_____ 11, 16

Mayo v. Suemaur Exploration & Prod. LLC,
2008 Tex. App. LEXIS 7164, (Tex. App.-Houston [14th Dist.], no pet.)  11, 16

Moyer v. Moyer,
183 S.W.3d 48 (Tex. App.-Austin 2005, no pet.)_____ 9, 12, 15, 18, 19

Roebuck v. Horn,
74 S.W.3d 160, (Tex. App.-Beaumont 2002, no pet.)_____ 9, 12, 15, 17, 18

Schultz v. Fifth Judicial Dist. Court of Appeals at Dallas,
810 S.W.2d 738 (Tex. 1991)_____ 9, 10, 15, 16, 19

Shanze Enters. V. Amigo MGA, LLC,
2014 U.S. Dist. Lexis 156512 (N.D. Tex. 2014)_____ 9, 15, 19

Stephenson v. LeBoeuf,
2003 Tex. App. LEXIS 7967, (Tex. App.-Houston [14th Dist.], no pet.) 8, 9, 14, 15

Tanner v. McCarthy,
274 S.W.3d 311, (Tex. App.-Houston [1st Dist.] 2008, no pet.)_____ 8, 10, 14, 16

Williams Farms Produce Sales, Inc. v. R&G Produce Co.,
2014 Tex. App. LEXIS 3369, (Tex. App.-Corpus Christi, no pet.)_____ 10, 15

**STATUTES**

Texas Civil Practice & Remedies Code § 31.002_____8, 11, 14, 17

Texas Property Code Section 42_____ 19

CAUSE NUMBER 03-15-00128-CV

IN THE COURT OF APPEALS

FOR THE THIRD COURT OF APPEALS DISTRICT
AUSTIN, TEXAS

TEDDE R. BLUNCK,

*Appellant,*

V.

CATHY A. BLUNCK,

*Appellee.*

ON APPEAL FROM THE 22ND DISTRICT COURT, HAYS COUNTY,
TEXAS

TRIAL COURT CAUSE NO. 11-1217

APPELLANT'S BRIEF

BRIEF OF APPELLANT

TO THE HONORABLE COURT OF APPEALS, FIFTH DISTRICT OF TEXAS:

Tedde R. Blunck files this Appellant brief and prays that the judgment of the

District Court be reversed and that the matter be remanded to the District Court for

a new trial.

0

## STATEMENT OF THE CASE

### Course of Proceedings and Disposition Below

This appeal arises from an action brought by Tedde R. Blunck. Original Petition for Divorce was filed on June 11, 2011 in the District Court, 22nd Judicial District, Hays County, Texas. On August 8, 9, and 16, 2012, the District Court held a bench trial in the matter. Appellant filed a Request for Finding of Fact on September 3, 2012. A Motion for Judgment with a proposed judgment was filed October 3, 1012. A Final Decree of Divorce was signed October 24, 2012. A second Request for Findings of Fact was filed on November 13, 2012. Finding of Fact were signed on November 15, 2012. Appellant filed a Motion for New Trial November 16, 2012. No order was entered on the Motion for a New Trial. Appellant filed a Motion to Modify, Correct or Reform Judgment November 21, 2012. No order was entered on the Motion to Modify, Correct or Reform Judgment. A Notice of Appeal was filed on January 22, 2013. The Appeal was dismissed and a Mandate was issued by this Court December 11, 2014. Appellee filed a Motion for Post-Judgment Receivership Pursuant to Section 31.002, Civil Practices and Remedies Code on January 30, 2015. (See Clerk's Record at 33, Appendix at 33) Appellant filed an Objection and Special Exception to Appellee's Motion for Post-Judgment Receivership Pursuant to Section 31.002, Civil Practices and Remedies Code (See Clerk's Record at 85, Appendix at 85) and an Objection

1

to Receiver's Motion to Approve Final Report of Receiver, for Payment of Receiver's Fees and Expenses and to Discharge Receiver (See Clerk's Record at 81, Appendix at 81) on February 9, 2015 prior to the Hearing scheduled for that day. A Hearing was held on the Motion February 9, 2015. Appellant did not attend the Hearing. The District Court did not rule on either of Appellant's Objections. The District Court entered an Order Approving Receiver's Final Report, Authorizing Payment of Receiver's Fees and Expenses, and Discharging Receiver and an Order Appointing Receiver Pursuant to Section 31.002, Civil Practices and Remedies Code (See Clerk's Record at 72, Appendix at 72) on February 9, 2015. Appellant filed his Notice of Appeal with the District Court (See Clerk's Record at 90, Appendix at 90) February 26, 2015 appealing the District Court's Order Appointing Receiver Pursuant to Section 31.002, Civil Practices and Remedies Code.

## ISSUES PRESENTED

I.    Whether the District Court abused its discretion by entering an Order for turnover relief without any evidence in the record supporting the finding that Appellant had any non-exempt property that cannot be readily attached or levied on by ordinary legal process.

II.    Whether the District Court abused its discretion because the turnover relief

ordered by the District Court is insufficiently specific regarding the property to be turned over and extends to exempt property and property of third parties.

III. Whether the Court abused its discretion when it awarded the Receiver, who is an attorney, a fee of $300 per hour for all receiver services, his hourly rate as an attorney, without consideration of a lesser reasonable fee when performing non-attorney functions and when there is no evidence in the record to support that the fees are usual and customary or reasonable and necessary.

## STATEMENT OF FACTS

The facts and circumstances relative to the case are these:

Appellant filed for divorce on June 15, 2011. The Parties were married on May 26, 1988 and ceased to live together on or about July 6, 2009. The District Court granted the divorce August 16, 2012 and the Judge signed the Final Decree of Divorce on October 24, 2012. A Notice of Appeal was filed on January 22, 2013. The Appeal was dismissed and a Mandate was issued by this Court December 11, 2014. Appellee filed a Motion for Post-Judgment Receivership Pursuant to Section 31.002, Civil Practices and Remedies Code (See Clerk's Record at 33, Appendix at 33) on January 30, 2015. Appellant filed an Objection and Special Exception to Appellee's Motion for Post-Judgment Receivership Pursuant to

3

Section 31.002, Civil Practices and Remedies Code (See Clerk's Record at 85, Appendix at 85) and an Objection to Receiver's Motion to Approve Final Report of Receiver, for Payment of Receiver's Fees and Expenses and to Discharge Receiver (See Clerk's Record at 81, Appendix at 81) on February 9, 2015 prior to the Hearing scheduled for that day. A Hearing was held on the Motion February 9, 2015. Appellant did not attend the Hearing. The District Court did not rule on either of Appellant's Objections. (See Clerk's Record at 96, Appendix at 96) The District Court entered an Order Approving Receiver's Final Report, Authorizing Payment of Receiver's Fees and Expenses, and Discharging Receiver (See Clerk's Record at 80, Appendix at 80) and an Order Appointing Receiver Pursuant to Section 31.002, Civil Practices and Remedies Code (See Clerk's Record at 72, Appendix at 72) on February 9, 2015. Appellant filed his Notice of Appeal with the District Court February 26, 2015 appealing the District Court's Order Appointing Receiver Pursuant to Section 31.002, Civil Practices and Remedies Code. (See Clerk's Record at 90, Appendix at 90)

No post-judgment discovery has taken place. No testimony was provided at the Hearing on February 9, 2015. (See Reporter's Record at 4, Appendix at 108) The Judge listened only to oral argument of counsel. Counsel for Appellee offered only two exhibits into the record in support of his argument, neither of which was authenticated. The first exhibit "Movant's 1, which is the Living Trust in which

4

Mr. Blunck transferred all of this property." (see Reporter's Record at 15. Appendix at 119) This document was dated December 24, 2012. No evidence was presented that the Living Trust had not been revoked or modified since that date, when in fact the document has been modified twice and both modifications are of public record with the County Clerk in Camp County, Texas and whether the Living Trust even owns any property at this time. Counsel argues that the turnover order is needed so that the Receiver can "exercise Mr. Blunck's rights that he would have under the living trust." (see Reporter's Record at 16, Appendix at 120) No testimony was offered either in open court or via affidavit to authenticate Movant's Exhibit No. 1 (See Appendix at 142). The document does not comply with Rule 902 of the Texas Rules of Civil Procedure and therefore is not self-authenticating (the copy offered as Exhibit No.1 shows the pen and ink changes initiated by the Settlor and the Trustee, the copy was never recorded). The second exhibit, Movant's No.2, (See Appendix at 173) Counsel argues that "these are schedules that Mr. Blunck submitted [to the Bankruptcy Court]. And in those schedules Mr. Blunck represented to the Bankruptcy Court that he had exempt property, in addition to what we showed you with the trust and the contract rights that can be executed pursuant to the turnover order." (see Reporter's Record at 19, Appendix at 123) The document is dated July 23, 2013. No evidence was presented that the property listed in the schedules still exists. No evidence or

5

argument was offered or presented in the record that any of the property listed on the schedules was non-exempt. The schedules offered as Movant's No. 2 were not authenticated by testimony or affidavit. The document does not comply with Rule 902 of the Texas Rules of Civil Procedure and therefore is not self-authenticating.

The Court's turnover order states in pertinent part: "Leon Breeden . . . is hereby appointed Receiver. . . with the power and authority to take possession of and sell all leviable property of the Judgment Debtor, including, but not limited to the following non-exempt property: (1) all documents or records, including financial records, related to such property that is in the actual or constructive possession or control of the Judgment Debtor; (2) all financial accounts (bank accounts), certificates of deposit, money-market accounts, accounts held by any third party; (3) all securities; (4) all real property, equipment, vehicles, boats, and planes; (5) all safety deposit boxes or vaults; (6) all cash; (7) all negotiable instruments, including promissory notes, drafts, and checks; (8) cause of action or choses of action; (9) contract rights, whether present or future; and (10) accounts receivable; and that all such property shall beheld [sic] in custodia legis by said Receiver as of the date of this Order." (see Clerk's Record at 73, Appendix at 73) There is no evidence in the record to support the finding that the Judgment Debtor has any exempt property. The record is devoid of any evidence to support a finding that the Judgment Debtor has actual or constructive possession of any of

6

the 10 items specified to be turned over to the Receiver. Item No. 2 specifically relates to property held by third parties. The Order goes on to state: "Judgment Debtor is ORDERED to turnover to the Receiver at his office address within **five (5)** [emphasis added] from Judgment Debtor's receipt of a copy of this Order: (1) the documents contained on Exhibit "A" attached hereto, together will all documents and financial records which may be requested by Receiver; (2) all checks, cash, securities (stocks and bonds), promissory notes, documents of title, and contracts owned by or in the name of Judgment Debtor." (see Clerks' Record at 73, Appendix at 73). There is no time frame stated in the Order regarding the above. It is impossible to comply with the Order when no time frame is stated. Additionally, this provision of the Order reaches to exempt property and property in the possession of third parties.

The Order states in pertinent part: "It is ORDERED the Receiver shall not post a bond. It is further ORDERED that the Receiver shall be entitled to Receiver's fees at a rate of $300.00 per hour, which the Court finds to be the customary and usual fee for a turnover receiver." (see Clerk's Record at 76, Appendix at 76). There is no evidence in the record to support the finding that the fees awarded to the Receiver are customary or usual, or reasonable or necessary. No testimony was presented or received, nor were any authenticated exhibits offered or received into evidence to support the finding.

7

## SUMMARY OF THE ARGUMENT

The trial court must have some evidence to establish the necessary conditions for the application of *Texas Civil Practice & Remedies Code § 31.002* exist.

The Texas Turnover Statute, *Texas Civil Practice & Remedies Code § 31.002*, is a procedural device by which judgment creditors may reach assets of a debtor that are otherwise difficult to attach or levy. *See Af-Cap, Inc. v. Republic of Congo, 462 F.3d 417, 426 (5th Cir. 2006)* (citing *Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 224 (Tex. 1991)*). The turnover statute itself does not require notice and a hearing prior to issuance of a turnover order. *See Ex parte Johnson, 654 S.W.2d 415, 418 (Tex. 1983)*. Nevertheless, the trial court "must have some evidence before it that establishes that the necessary conditions for the application of 31.002 exist." *Tanner v. McCarthy, 274 S.W.3d 311, 322 (Tex. App. -- Houston [1st Dist.] 2008, no pet.)*. The creditor must show the trial court that: "(1) the debtor owns the property, (2) the property cannot be readily attached, and (3) the property is not exempt." *Stephenson v. LeBoeuf, No. 14-2-130-cv, 2003 Tex. App. LEXIS 7967, 2003 WL 22097781, at *2 (Tex. App. -- Houston [14th Dist.] Sept. 11, 2003, [*3] no pet.)*. Creditor failed to carry its burden of proving that the Judgment Debtor owns non-exempt property that could not be readily attached. The District Court abused its discretion in finding "that the Judgment Debtor owns

8

non-exempt property that cannot be readily attached or levied on by ordinary legal process" (See Clerk's Record at 72, Appendix at 72) when the record contains no evidence to support the finding.

For a judgment creditor to prove the required elements, the creditor must "introduce more evidence than just a motion for turnover. The statute requires a factual showing that the judgment debtor has non-exempt property that is not readily subject to ordinary execution." *Id.* (citing *Schultz v. Fifth Judicial Dist. Court of Appeals at Dallas, 810 S.W.2d 738, 740 (Tex. 1991))*. "A turnover order must be specific in both identifying the non-exempt property that is susceptible to turnover relief and in tailoring the turnover relief to that property." *Moyer v. Moyer, 183 S.W.3d 48, 54 (Tex. App. -- Austin 2005, no pet.)*; *see also Roebuck v. Horn, 74 S.W.3d 160, 163 (Tex. App. -- Beaumont 2002, no pet.)* ("A reference to broad categories of assets does not constitute a reference to specific assets that is required in a turnover order."); *Id. at 54.* ("[T]he trial court's order must be definite, clear, and concise in its description of the property to be turned over eliminating the need for interpretations, inferences or conclusions."). *Shanze Enters. V. Amigo MGA, LLC, 13-CV-4311-D, 2014 U.S. Dist. Lexis 156512 at *3 (N.D. Tex. 2014)*. Citing *Finotti v. Old Harbor Co., No. 5-97-1365-cv, 1999 Tex. App. LEXIS 8514, 1999 WL 1034607, at *1 (Tex. App. -- Dallas Nov. 16, 1999, no pet.)*

9

The Court therefore may not properly enter a turnover order if there is not at least some probative evidence of the necessary facts supporting the trial court's discretion. *See Williams Farms Produce Sales, Inc. v. R&G Produce Co., No. 13-12-00365-CV, 2014 Tex. App. LEXIS 3369, 2014 WL 1266118, at \*4 (Tex. App. -- Corpus Christi 2014, no pet.).*

[A] judgment creditor may not receive aid from the court under the provisions of section 31.002 if the judgment debtor does not own property that is non-exempt and that could not readily be attached or levied on by ordinary legal process. *Tanner v. McCarthy, 274 S.W.3d 311, 322 (2008 Tex. App –Houston, [1st Dist.])* [A] trial court must nonetheless determine that the request for aid pending before the court falls within the scope of section 31.002 before it enters an order granting relief under that section. In making this determination, the trial court must have some evidence before it establishes that the necessary conditions for the application of 31.002 exist. See *Schultz, 810 S.W.2d at 740* (holding that turnover statute requires factual showing that judgment debtor has non-exempt property that is not readily subject to ordinary execution); *Clayton v. Wisener, 169 S.W.3d 682, 683-84 (Tex. App.--Tyler 2005, no pet.)* (holding that trial court abused its discretion in entering a turnover order without any evidence of facts required by section 31.002(a) and based only on motion and argument of judgment creditor's counsel). *Id.*

The Texas Supreme Court has held that the complete absence of authenticating

10

evidence is a defect in substance that can be raised for the first time on appeal. See *Mansions in the Forest, L.P. v. Montgomery County, 365 S.W.3d 314 at 317(Tex. 2013).* This court's precedent holds the same. *Estate of Guerrero, 2015 Tex. App. LEXIS 4124 at 27 (2015 Tex. App.—Houston [14th Dist.], no pet.)* citing *Mayo v. Suemaur Exploration & Prod. LLC, No. 14-07-00491-CV, 2008 Tex. App. LEXIS 7164, 2008 WL 4355259, at \*5; see also Garza v. Wilson, No. 14-98-00928-CV, 2000 Tex. App. LEXIS 581, 2000 WL 64052, at \*2 (Tex. App.—Houston [14th Dist.] Jan. 27, 2000, no pet.).*

The absence of an affidavit verifying a copy of the instrument attached as summary judgment proof amounts to no proof. *Id. at 25.* No testimony was provided to authenticate Movant's No. 1 or Movant's No. 2, nor was either authenticated via affidavit. Movant's No. 1 and Movant's No. 2 do not comply with Texas Rules of Evidence, Rule 902, and therefore are not self-authenticating. Movant's No. 1 and Movant's No. 2 are not evidence in support of the Movant's motion. Movant has provided no evidence that establishes the necessary conditions for the application of *Texas Civil Practice & Remedies Code § 31.002* exist.

Appellee has the burden to -- but does not -- identify any specific non-exempt property or provide any evidence to establish that any specific non-exempt property is susceptible to turnover relief. Appellee has failed to establish that: (1) Appellant owns the property, (2) the property cannot be readily attached, and (3)

11

the property is not exempt. Appellee's motion only identifies "broad categories of assets," rather than specific assets as required for a turnover order. *Roebuck v. Horn, 74 S.W.3d 160, 163 (2002, Tex. App. – Beaumont).* It is not to be left to the debtor to determine what property that person has and whether it is exempt. Otherwise, there would be no need for any 'factual showing' by 'proof of the necessary facts' as required by [the supreme court's] opinion. *Moyer v. Moyer, 183 S.W.3d 48, 54 (2005 Tex. App.—Austin).* Others [cases] acknowledge that this requirement aids in ensuring that the turnover order does not extend to exempt property or property of third parties. *Roebuck, 74 S.W.3d at 163-64* (broad turnover order improperly extended to assets owned in whole or part by third parties); Burns v. Miller, et al, 05-94-01288 CV, 948 S.W.2d 317, 326-27 (Tex. App. – Dallas, 1997, writ denied). (non-specific order to turn over "cash, money orders, checks . . . in any form and in anyone's possession which Burns beneficially owns or may own in the future" improperly extended to exempt and currently nonexistent property). *Id.*

The Turnover Order states in pertinent part: "Judgment Debtor is ORDERED to turnover to the Receiver at his office address within **five (5)** [emphasis added] from Judgment Debtor's receipt of a copy of this Order: (1) the documents contained on Exhibit "A" attached hereto, together with all documents and financial records which may be requested by Receiver; (2) all checks, cash,

12

securities (stocks and bonds), promissory notes, documents of title, and contracts owned by or in the name of Judgment Debtor." (See Clerks' Record at 73, Appendix at 73). There is no time frame stated in the Order regarding the above. It is impossible to comply with the Order when no time frame is stated. Additionally, this provision of the Order reaches to exempt property and property in the possession of third parties.

The District Court abused its discretion when it entered a Turnover Order that sets out only in generality the property (which may be exempt and or in the possession of third parties) that is to be turned over and does not specifically state the non-exempt property owned by Judgment Debtor to be turned over and does not Order a specific time frame that the property is be turned over.

The District Court also abused its discretion when it Ordered Judgment Debtor to pay the appointed Receiver fees of $300.00 per hour when there is no evidence in the Record to support the finding that such fees are usual and customary or reasonable and necessary.

## **ARGUMENT**

I.  THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT ENTERED AN ORDER FOR TURNOVER RELIEF WITHOUT ANY EVIDENCE IN THE RECORD SUPPORTING THE FINDING THAT APPELLANT HAD ANY NON-EXEMPT PROPERTY THAT CANNOT

13

BE READILY ATTACHED OR LEVIED ON BY ORDINARY LEGAL PROCESS.

The trial court must have some evidence to establish the necessary conditions for the application of *Texas Civil Practice & Remedies Code § 31.002* exist.

The Texas Turnover Statute, *Texas Civil Practice & Remedies Code § 31.002*, is a procedural device by which judgment creditors may reach assets of a debtor that are otherwise difficult to attach or levy. *See Af-Cap, Inc. v. Republic of Congo, 462 F.3d 417, 426 (5th Cir. 2006)* (citing *Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 224 (Tex. 1991))*. The turnover statute itself does not require notice and a hearing prior to issuance of a turnover order. *See Ex parte Johnson, 654 S.W.2d 415, 418 (Tex. 1983)*. Nevertheless, the trial court "must have some evidence before it that establishes that the necessary conditions for the application of 31.002 exist." *Tanner v. McCarthy, 274 S.W.3d 311, 322 (Tex. App. -- Houston [1st Dist.] 2008, no pet.)*. The creditor must show the trial court that: "(1) the debtor owns the property, (2) the property cannot be readily attached, and (3) the property is not exempt." *Stephenson v. LeBoeuf, No. 14-2-130-cv, 2003 Tex. App. LEXIS 7967, 2003 WL 22097781, at *2 (Tex. App. -- Houston [14th Dist.] Sept. 11, 2003, no pet.)*.

For a judgment creditor to prove the required elements, the creditor must

14

"introduce more evidence than just a motion for turnover. The statute requires a factual showing that the judgment debtor has non-exempt property that is not readily subject to ordinary execution." *Id.* (citing *Schultz v. Fifth Judicial Dist. Court of Appeals at Dallas, 810 S.W.2d 738, 740 (Tex. 1991))*. "A turnover order must be specific in both identifying the non-exempt property that is susceptible to turnover relief and in tailoring the turnover relief to that property." *Moyer v. Moyer, 183 S.W.3d 48, 54 (Tex. App. -- Austin 2005, no pet.)*; *see also Roebuck v. Horn, 74 S.W.3d 160, 163 (Tex. App. -- Beaumont 2002, no pet.)* ("A reference to broad categories of assets does not constitute a reference to specific assets that is required in a turnover order."); *Id. at 54.* ("[T]he trial court's order must be definite, clear, and concise in its description of the property to be turned over eliminating the need for interpretations, inferences or conclusions."). *Shanze Enters. V. Amigo MGA, LLC, 13-CV-4311-D, 2014 U.S. Dist. Lexis 156512 at *3 (N.D. Tex. 2014).* Citing *Finotti v. Old Harbor Co., No. 5-97-1365-cv, 1999 Tex. App. LEXIS 8514, 1999 WL 1034607, at *1 (Tex. App. -- Dallas Nov. 16, 1999, no pet.)*

The Court therefore may not properly enter a turnover order if there is not at least some probative evidence of the necessary facts supporting the trial court's discretion. *See Williams Farms Produce Sales, Inc. v. R&G Produce Co., No. 13-12-00365-CV, 2014 Tex. App. LEXIS 3369, 2014 WL 1266118, at *4 (Tex. App. --*

*Corpus Christi 2014, no pet.)*.

[A] judgment creditor may not receive aid from the court under the provisions of section 31.002 if the judgment debtor does not own property that is non-exempt and that could not readily be attached or levied on by ordinary legal process. *Tanner v. McCarthy*, 274 S.W.3d 311, 322 (2008 Tex. App –Houston, [1st Dist.]) [A] trial court must nonetheless determine that the request for aid pending before the court falls within the scope of section 31.002 before it enters an order granting relief under that section. In making this determination, the trial court must have some evidence before it that establishes that the necessary conditions for the application of 31.002 exist. See *Schultz*, 810 S.W.2d at 740 (holding that turnover statute requires factual showing that judgment debtor has non-exempt property that is not readily subject to ordinary execution); *Clayton v. Wisener*, 169 S.W.3d 682, 683-84 (Tex. App.--Tyler 2005, no *pet.)* (holding that trial court abused its discretion in entering a turnover order without any evidence of facts required by section 31.002(a) and based only on motion and argument of judgment creditor's counsel). *Id.*

The Texas Supreme Court has held that the complete absence of authenticating evidence is a defect in substance that can be raised for the first time on appeal. See *Mansions in the Forest, L.P. v. Montgomery County*, 365 S.W.3d 314 at 317(Tex. 2013). This court's precedent holds the same. *Estate of Guerrero*, 2015 Tex. App. LEXIS 4124 at 27 (2015 Tex. App.—Houston [14th Dist.], no pet.) citing *Mayo v.*

16

*Suemaur Exploration & Prod. LLC, No. 14-07-00491-CV, 2008 Tex. App. LEXIS 7164, 2008 WL 4355259, at \*5; see also Garza v. Wilson, No. 14-98-00928-CV, 2000 Tex. App. LEXIS 581, 2000 WL 64052, at \*2 (Tex. App.—Houston [14th Dist.] Jan. 27, 2000, no pet.).*

The absence of an affidavit verifying a copy of the instrument attached as summary judgment proof amounts to no proof. *Id.* at 25. No testimony was provided to authenticate Movant's No. 1 or Movant's No. 2, nor was either authenticated via affidavit. Movant's No. 1 and Movant's No. 2 do not comply with Texas Rules of Evidence, Rule 902, and therefore are not self-authenticating. Movant's No. 1 and Movant's No. 2 are not evidence in support of the Movant's motion. Motions and arguments of counsel are not evidence. *Clayton v. Wisener, 169 S.W.3d 682, 684 (Tex. App. – Tyler 2005, no pet.)* citing *Elkins v. Stotts-Brown, 103 S.W.3d 664, 669 (Tex. App.-Dallas 2003, no pet.).* Movant has provided no evidence that establishes the necessary conditions for the application of *Texas Civil Practice & Remedies Code § 31.002* exist.

Appellee has the burden to -- but does not -- identify any specific non-exempt property or provide any evidence to establish that any specific non-exempt property is susceptible to turnover relief. Appellee has failed to establish that: (1) Appellant owns the property, (2) the property cannot be readily attached, and (3) the property is not exempt. Appellee's motion only identifies "broad categories of

17

assets," rather than specific assets as required for a turnover order. *Roebuck v. Horn, 74 S.W.3d 160, 163 (2002, Tex. App. – Beaumont).* It is not to be left to the debtor to determine what property that person has and whether it is exempt. Otherwise, there would be no need for any 'factual showing' by 'proof of the necessary facts' as required by [the supreme court's] opinion. *Moyer v. Moyer, 183 S.W.3d 48, 54 (2005 Tex. App.—Austin).* Others [cases] acknowledge that this requirement aids in ensuring that the turnover order does not extend to exempt property or property of third parties. *Roebuck, 74 S.W.3d at 163-64* (broad turnover order improperly extended to assets owned in whole or part by third parties); *Burns, 948 S.W.2d at 326-27* (non-specific order to turn over "cash, money orders, checks . . . in any form and in anyone's possession which Burns beneficially owns or may own in the future" improperly extended to exempt and currently nonexistent property). *Id.*

The District Court abused its discretion in finding "that the Judgment Debtor owns non-exempt property that cannot be readily attached or levied on by ordinary legal process" (See Clerk's Record at 72, Appendix at 72) when the record contains no evidence to support the finding.

II. THE DISTRICT COURT ABUSED ITS DISCRETION BECAUSE THE TURNOVER RELIEF ORDERED IS INSUFFICIENTLY SPECIFIC REGARDING THE PROPERTY TO BE TURNED OVER AND

18

EXTENDS TO EXEMPT PROPERTY AND PROPERTY OF THIRD PARTIES.

The Turnover Order is in the nature of a mandatory injunction and is appealable. *Schultz v. Fifth Judicial Dist. Ct. of App. at Dallas, 810 S.W.2d, 738, 740 (Tex. 1991)*. To meet the requirements of Section 31.002, the court's order must be specific in both identifying the non-exempt property that is susceptible to turnover relief and in tailoring the turnover relief to the property. *Moyer v. Moyer, 183 S.W.3d 48, 54 (Tex. App. – Austin, 2005)*. The trial court's order must be definite, clear, and concise in its description of the property to be turned over eliminating the need for interpretations, inferences or conclusions. *Shanze Enters. V. Amigo MGA, LLC, 13-CV-4311-D, 2014 U.S. Dist. Lexis 156512 (N.D. Tex. 2014)*. It is elementary that an injunction must be definite and concise, leaving the person enjoined in no doubt about his duties, and should not be such as would call on him for interpretation, inferences or conclusions. *Bergman v. Bergman, 828 S.W.2d 555, 557 (Tex. App. – El Paso, 1992, no writ.)* The Turnover Order is neither specific in terms of what is to be turned over or when any particular item is to be turned over. It is not to be left to the debtor to determine what property that person has and whether it is exempt. Otherwise, there would be no need for any 'factual showing' by 'proof of the necessary facts' as required by [the supreme court's] opinion. *Moyer v. Moyer, 183 S.W.3d 48, 54 (2005 Tex. App.—Austin)*. Texas

*Property Code Section 42* specifies certain real and personal property that is exempt. Additional real and personal property is exempt if it is in the possession of third parties or is the assets of a spendthrift trust. Distributions from trusts are not subject to turnover because they are proceeds or disbursements of exempt property. *Burns v. Miller, et al, 05-94-01288 CV, 948 S.W.2d 317, 326 (Tex. App. – Dallas, 1997, writ denied).* The Court's order fails to state specifically what non-exempt property in the possession of the Judgment Debtor is to be turned over or when it is to be turned over.

The District Court abused its discretion when it Ordered broad categories of property which may or may not be in the possession of the Judgment Debtor to be turned over to the Receiver without specifying when such property was to be turned over.

III.   THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT AWARDED THE RECEIVER, WHO IS AN ATTORNEY, A FEE OF $300 PER HOUR FOR ALL RECEIVER SERVICES, HIS HOURLY RATE AS AN ATTORNEY, WITHOUT CONSIDERATION OF A LESSER REASONABLE FEE WHEN PERFORMING NON-ATTORNEY FUNCTIONS AND WHEN THERE IS NO EVIDENCE IN THE RECORD TO SUPPORT THAT THE FEES ARE USUAL AND CUSTOMARY OR REASONABLE AND NECESSARY.

Receivers are entitled to reasonable compensation. *Jones v. Strayhorn, 159 Tex. 421, 321 S.W.2d 290, 292-293 (1959).* The value of a receiver's services determines the appropriate amount of compensation. *Bergeron v. Sessions, 561 S.W.2d 551, 554 (Tex. Civ. App.--Dallas 1977, writ ref'd n.r.e.).* To determine the value of a receiver's services, courts consider the following factors:

(1) the nature, extent and value of the administered estate;

(2) the complexity and difficulty of the work;

(3) the time spent;

(4) the knowledge, experience, labor and skill required of, or devoted by the receiver;

(5) the diligence and thoroughness displayed; and

(6) the results accomplished.

*Id. at 554-55.* While courts should "cautiously avoid excessive or improper" fees, sufficient fees should be permitted "to induce competent persons to serve as receiver[.]" *Id. at 555.*

The District Court abused its discretion when it found that the Receiver's fees requested were usual and customary:

(1) the nature, extent and value of the administered estate – the record is devoid of any evidence to support a finding that the Receiver's fees are usual and customary or reasonable and necessary regarding the nature, extent and value of

21

the administered estate

(2)     the complexity and difficulty of the work – the record is devoid of any evidence to support a finding that the Receiver's fees are usual and customary or reasonable and necessary regarding the complexity and difficulty of the work to be done.

(3)     the time spent – the record is devoid of any evidence to support a finding that the Receiver's fees are usual and customary or reasonable and necessary regarding when there is no evidence of the estimate of the time to be spent.

(4)     the knowledge, experience, labor and skill required of, or devoted by the receiver – the record is devoid of any evidence to support a finding that the Receiver's fees are usual and customary or reasonable and necessary regarding whether the skills necessary to perform the anticipated services require the services of a licensed attorney. "[A] receiver is not entitled to compensation at a legal rate for work which does not require legal skills." *Bergeron, 561 S.W.2d at 554.*

(5)     the diligence and thoroughness displayed – the record is devoid of any evidence to support a finding that the Receiver's fees are usual and customary or reasonable and necessary regarding the diligence and thoroughness necessary to perform any of the anticipated services. The record is devoid of any evidence to support a finding that the Receiver's fees are usual and customary or reasonable

22

and necessary regarding any necessary services whatsoever.

(6)   the results accomplished – the record is devoid of any evidence to support a finding that the Receiver's fees are usual and customary or reasonable and necessary regarding any results will be accomplished whatsoever.

Receiver has not provided any evidence in the record, only argument, that his charged rate of $300 per hour is usual and customary or reasonable and necessary compensation for the services anticipated to be provided. In fact such a high rate for the services that are undefined is highly unreasonable, especially the use of such an egregious rate for travel and meals as was awarded in the underlying matter.

Additionally, the District Court abused its discretion when it Ordered the Receiver's fee to be taxed as cost against the Judgment Debtor. (See Clerk's Record at 76, Appendix at 76). We should be mindful that "[t]he apportionment of costs should be controlled by equitable principles and the ultimate success or failure of the party who requests the appointment of a receiver is not in itself controlling, but is a prime factor in determining who shall ultimately pay the costs of the receivership." *Hodges v. Peden, 634 S.W.2d 8, 12 (Tex. App.--Houston [14th Dist.] 1982, no writ (citing Jones, 321 S.W.2d at 293-94).*

**PRAYER**

Appellant Tedde R. Blunck respectfully prays that the Judgment of the

23

District Court granting the Turnover Order be reversed and remanded to the District Court for a New Trial in all respects.

## CERTIFICATE OF THE NUMBER OF WORDS CONTAINED IN BRIEF

I hereby certify in accordance with Texas Rules of Appellate Procedure 9.4(i)(3) that the Appellant's brief contains 6,409 words.

Tedde R. Blunck

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above Appellant's Brief was served on Karl Hays, 2101 South Highway 35, Suite 210 Austin, Texas 78741, attorney for Appellee Cathy A. Blunck in accordance with the Texas Rules of Appellant Civil Procedure on June 8, 2015.

Tedde R. Blunck

24

CAUSE NUMBER 03-13-00074-CV

IN THE COURT OF APPEALS

FOR THE THIRD COURT OF APPEALS DISTRICT
AUSTIN, TEXAS

TEDDE R. BLUNCK,

*Appellant,*

V.

CATHY A. BLUNCK,

*Appellee.*

ON APPEAL FROM THE 22ND DISTRICT COURT, HAYS COUNTY, TEXAS

TRIAL COURT CAUSE NO. 11-1217

APPENDIX TO APPELLANT'S BRIEF

RESPECTFULLY SUBMITTED:

TEDDE R. BLUNCK, PRO SE
502 QUITMAN STREET
P O BOX 1152
PITTSBURG, TEXAS 75686
TELEPHONE: (903) 855-8460
TELECOPIER: (903) 855-8465
EMAIL: tblunck@yahoo.com

25

# TABLE OF CONTENTS

District Clerk's Record _____ 1

Reporter's Record _____ 100

Movant's Exhibit No. 1 _____ 141

Movant's Exhibit No. 2 _____ 172

# CLERK'S RECORD

VOLUME __one__ OF __ONE__

Trial Court Cause No. 11-1217

**IN THE __22nd__ DISTRICT COURT OF**
**HAYS COUNTY, TEXAS, AT SAN MARCOS, TEXAS**

**THE HONORABLE_____BILL HENRY_____JUDGE PRESIDING**

_____TEDDE R. BLUNCK_____Plaintiff(s)

VS.

_____CATHY A. BLUNCK_____Defendant(s)

**Appealed to the Court of Appeals for the ___Third___ District of Texas, at ___Austin___, Texas**

**ATTORNEY FOR APPELLANT(s)**

Name: _____Tedde R.Blunck, Pro Se_____ SB# _____00793355_____

Address: _____P. O. Box 1152_____ Telephone #: (903) 855-8460

_____Pittsburg, Texas  75686_____ Fax No.: ___(903) 855-8465___

E-Mail Address: ___tblunck@yahoo.com___

Attorney for_____Tedde R. Blunck, Pro Se_____Appellant(s)

Delivered by electronically filing with the Court of Appeals for the Third District of Texas at Austin , Texas on the __18th__ day of _____March_____, 2015.

BEVERLY CRUMLEY
District Clerk, Hays County, Texas

BY:___/s/   Kathy Orlowski_____Deputy

Appellate Court Cause No. 03-15-00128-CV

----------------------------------------------------------------

INDEX

----------------------------------------------------------------

COVER PAGE ..................................................... 1

INDEX .......................................................... 2

MOTION TO RELEASE AND TRANSFER PROPERTY IN POSSESSION OF
      RECEIVER AND TO AUTHORIZE RECEIVER TO SUBMIT FINAL
      REPORT
            FILED DECEMBER 12, 2014 ...............................

OBJECTION TO RESPONDENT'S MOTION TO SET HEARING ON MOTION TO
      RELEASE AND TRANSFER PROPERTY IN THE POSSESSION OF
      RECEIVER AND TO AUTHORIZE RECEIVER TO SUBMIT FINAL
      REPORT
            FILED DECEMBER 15, 2014 ...............................

ORDER GRANTING MOTION TO RELEASE AND TRANSFER PROPERTY IN
      POSSESSION OF RECEIVER AND TO AUTHORIZE RECEIVER TO
      SUBMIT FINAL REPORT
            FILED DECEMBER 18, 2014 ...............................

MOTION TO APPROVE FINAL REPORT OF RECEIVER, FOR PAYMENT OF
      RECEIVER'S FEES AND EXPENSES, AND TO DISCHARGE RECEIVER
            FILED JANUARY 14, 2015 ................................

MOTION FOR POST-JUDGMENT RECEIVERSHIP PURSUANT TO SECTION
      31.002, CIVIL PRACTICE AND REMEDIES CODE
            FILED JANUARY 30, 2015 ................................

ORDER APPOINTING RECEIVER PURSUANT TO SECTION 31.002, CIVIL
      PRACTICE AND REMEDIES CODE
            SIGNED & FILED FEBRUARY 9, 2015  ......................

OATH OF RECEIVER
      FILED FEBRUARY 9, 2015 .........................................

ORDER APPROVING RECEIVER'S FINAL REPORT, AUTHORIZING PAYMENT
      OF RECEIVER'S FINAL FEES AND EXPENSES, AND DISCHARGING
      RECEIVER
            SIGNED & FILED FEBRUARY 9, 2015 .........................

OBJECTION TO RECEIVER'S MOTION TO APPROVE FINAL REPORT OF
     RECEIVER, FOR PAYMENT OF RECEIVER'S FEES AND EXPENSES,
     AND TO DISCHARGE RECEIVER
          FILED FEBRUARY 9, 2015 ..................................

OBJECTION AND SPECIAL EXCEPTION TO RESPONDENT'S MOTION FOR
     POST-JUDGMENT RECEIVERSHIP PURSUANT TO SECTION 31.002,
     CIVIL PRACTICE AND REMEDIES CODE
          FILED FEBRUARY 9, 2015 ..................................

RECEIPT OF EXHIBITS
     FILED FEBRUARY 9, 2015 .......................................

DESIGNATION OF CLERK'S RECORD
     FILED FEBRUARY 13, 2015 ......................................

NOTICE OF APPEAL
     FILED FEBRUARY 26, 2015 ......................................

COURT'S DOCKET SHEET ..............................................

BILL OF COSTS ....................................................

CLERK'S CERTIFICATE ..............................................

FILED
12/12/2014 10:46:07 AM
Beverly Crumley
District Clerk
Hays County, Texas

CAUSE NUMBER 11-1217

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| TEDDE R. BLUNCK | § | 22ND JUDICIAL DISTRICT |
| AND | § | |
| CATHY A. BLUNCK | § | HAYS COUNTY, TEXAS |

**MOTION TO RELEASE AND TRANSFER PROPERTY
IN POSSESSION OF RECEIVER AND TO AUTHORIZE RECEIVER
TO SUBMIT FINAL REPORT**

TO THE HONORABLE JUDGE OF SAID COURT:

This motion is brought by Cathy A. Blunck, who is the Respondent in these proceedings. In specific support of her request for an order authorizing the Receiver to release and transfer property in his possession and to submit a final report in this case, Cathy A. Blunck would present the following:

*Applicable Facts*

The *Final Decree of Divorce* was signed in this case on 24 October 2012. By notice of appeal filed on 22 January 2013, Tedde R. Blunck, the Petitioner in this proceeding, appealed the Court's order to the Third Court of Appeals.

On 22 January 2013, within the time period prescribed by Section 109.001 of the Texas Family Code, Cathy A. Blunck sought and obtained temporary orders pending appeal. Among the relief granted by the Court at that time was the appointment of a receiver to take possession of certain property. The orders rendered by the Court specifically authorized the

In the Matter of the Marriage of Blunck
Motion to Release and Transfer Property
Page 1

000004

Receiver to take possession of the following property:

a. the following property awarded to Cathy A. Blunck in the Final Decree of Divorce signed in this cause on October 24, 2012:

100% of Tedde R. Blunck's retirement benefits in Parsons Brinckerhoff Group, Inc. Retirement Savings Plan, c/o T. Rowe Price, arising out of Tedde R. Blunck's employment with Parsons Brinckerhoff Group Inc. as of 16 August 2012, together with any interest, dividends, gains, or losses on that amount arising since that date and more particularly defined in a Qualified Domestic Relations Order signed by the Court on the day this *Final Decree of Divorce* is signed. In determining the division of the parties' estate, the Court has considered the tax effect relating to the retirement benefits Cathy Blunck is to receive, as authorized under the Texas Family Code.

b. all documents or records, including financial records, related to the above-described property that is in the actual or constructive possession or control of Tedde R. Blunck.

c. all financial accounts (bank accounts), certificates of deposit, money-market accounts, accounts containing the proceeds of the above-described property, including, but not limited to, accounts in the following institutions: 1st National Bank of Gilmer, Pilgrim's Bank of Pittsburg, and Bank One, Pittsburg.

The Court's temporary orders provided that the Receiver was to hold the above-referenced property "in custodia legis during the pendency of any appeal from the Final

In the Matter of the Marriage of Blunck
Motion to Release and Transfer Property
Page 2

Page 5 of 207                                          000005

Decree of Divorce signed on 24 October 2012."

In compliance with the Court's orders, Leon Breeden, the duly appointed receiver, levied on certain bank accounts belonging to Tedde R. Blunck and placed those accounts under the control of the receivership. As reflected in the *Initial Report of Receiver and Application for Payment of Receiver's Fees and Expenses* filed with the Court on 15 February 2013, the receiver is currently in possession of the following:

```
First National Bank, Tedde R. Blunck IRA xx111,
$237,093.13

Pilgrim Bank, Tedde R. Blunck IRA xxxx865, $181,467.49

Capital One Bank, Tedde R. Blunck IRA xxxxxxx474,
$229,722.65
```

On 20 February 2013, the Court rendered additional temporary orders expanding the role of the Receiver and authorizing the Receiver to take control over additional property. Specifically, the order provided that the Receiver was to take possession of the following:

```
a.    All property real or personal which was under
      the direct or constructive control of Tedde R.
      Blunck as of 8 August 2012, the date the trial
      began in this case, including, but not limited
      to real estate, bank accounts, brokerage
      accounts, trust accounts, retirement accounts,
      and retirement proceeds.
```

Although the Receiver has not taken physical possession of any property, save and except the IRA accounts identified above, technically any property falling within the parameters of the Court's order of 20 February 2013, would be in custodia legis and subject

In the Matter of the Marriage of Blunck
Motion to Release and Transfer Property
Page 3

Page 6 of 207                                                    000006

to the Receiver's control and authority.

In response to the Receiver's report, the parties entered into an agreed order authorizing the Receiver to retain the IRA accounts under his control at the banks where such accounts were currently located.

On 26 June 2013, Tedde R. Blunck filed for bankruptcy protection under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Texas Marshall Division. At that time, an automatic stay went into effect precluding any further action which might materially effect property belonging to the bankruptcy estate. By order dated 4 November 2013, a copy of which is attached hereto as Exhibit "A", and incorporated herein by reference as if fully set forth at length, the Court granted Cathy A. Blunck's request to modify the automatic stay to permit her to take all steps necessary, short of contempt, to obtain possession of the property originally awarded to her under the parties' final decree of divorce. These orders were ratified in the *Order Confirming Chapter 13 Plan and Related Orders* dated 27 December 2013, a copy of which is attached hereto as Exhibit "B" and incorporated herein by reference as if fully set forth at length.

On 2 July 2014, the Court of Appeals for the Third District of Texas issued an order dismissing Tedde R. Blunck's appeal. On 11 December 2014, the Court of Appeals for the Third District of Texas issued its *Mandate*, confirming its dismissal of Tedde R. Blunck's appeal. A true and correct copy of the *Mandate* is attached as Exhibit "C" and is incorporated herein by reference as if fully set forth at length.

In the Matter of the Marriage of Blunck
Motion to Release and Transfer Property
Page 4

Page 7 of 207                                                                 000007

## *Requested Relief*

In light of the dismissal of Tedde R. Blunck's appeal, Cathy A. Blunck is requesting that she be allowed to take possession of the property that was awarded to her in the Court's original order and which is currently under the control of the Receiver.

Accordingly, Cathy A. Blunck requests that this Court authorize the Receiver to release possession of all of the property under his control. Cathy A. Blunck additionally requests that she be appointed as attorney-in-fact for Tedde R. Blunck for the purposes of executing any documents necessary to transfer title to and/or control of any of the property awarded to her under the final decree of divorce. In the alternative, Cathy A. Blunck would request that the Court authorize the Receiver to operate as Mr. Blunck's attorney-in-fact to effect the transfer of property into Ms. Blunck's name. Such orders should specifically include a grant of authority to execute any and all documents necessary to transfer title to Cathy A. Blunck of the IRA accounts in Tedde R. Blunck's name at First National Bank, Pilgrim Bank, and Capital One Bank that are under the control of the Receiver.

Cathy A. Blunck further requests that the Receiver be authorized to thereafter submit a final report to the Court and that, upon acceptance of that report, the Receiver be discharged and the receivership dissolved.

WHEREFORE ABOVE PREMISES CONSIDERED, Cathy A. Blunck respectfully requests that, upon consideration of the matters set forth herein, the Court grant her requested relief and such other and further relief to which she may be justly entitled.

In the Matter of the Marriage of Blunck
Motion to Release and Transfer Property
Page 5

Respectfully submitted,

LAW OFFICE OF KARL E. HAYS, PLLC
2101 South IH35, Suite 210
Austin, Texas 78741
512-476-1911
512-476-1904 facsimile


By:_____
        Karl E. Hays
        State Bar Number 09307050

John Barrett
State Bar Number 01816300
BARRETT AND COBLE
7200 North MoPac Expressway, Suite 440
Austin, Texas 78731
512-482-8193
512-482-0525 facsimile
ATTORNEYS FOR CATHY A. BLUNCK

## CERTIFICATE OF SERVICE

The undersigned attorney certifies pursuant to Rule 21 of the Texas Rules of Civil Procedure, that a true and correct copy of the foregoing *Motion to Release and Transfer Property in Possession of Receiver and to Authorize Receiver to Submit Final Report* has been served upon the below-named individual, in the manner noted below, as prescribed by Rule 21a of the Texas Rules of Civil Procedure, on this the __12th__ day of December 2014.

_____
Karl E. Hays

**Via Facsimile Transmission**
Tedde R. Blunck
502 Quitman St.
P.O. Box 1152
Pittsburg, Texas 75686
903-855-8456 facsimile

In the Matter of the Marriage of Blunck
Motion to Release and Transfer Property
Page 6

Page 9 of 207

000009

**EOD**

11/04/2013

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TEDDE ROBIN BLUNCK | § | CASE NO. 13-20129 |
| SSN: xxx-xx-3054 | § | CHAPTER 13 |
| 1347 CR 4510 | § | |
| Pittsburg, TX 75686 | § | |
| | § | |
| DEBTOR | § | |

### ORDER MODIFYING THE AUTOMATIC STAY

On October 23, 2013, the Court heard the Motion for Relief from Automatic Stay (the "Motion") filed by Cathy A. Blunck (the "Movant") on September 5, 2013, in the above referenced case. The Court finds that proper notice of the Motion and the hearing was given pursuant to the Federal and Local Rules of Bankruptcy Procedure. Charles Lauffer appeared at the hearing on behalf of the Movant, Cathy A. Blunck. Gordon Mosley appeared at the hearing on behalf of the Debtor, Tedde R. Blunck. Upon due consideration of the evidence, including factual stipulations on the record, and the arguments of counsel, the Court finds the Divorce Decree issued on October 24, 2012 and thereafter entered on November 1, 2012 (the "Divorce Decree"), in that certain litigation styled *In The Matter of the Marriage of Tedde R. Blunck and Cathy A. Blunck*, pending as Cause No. 11-1217 before the 22nd Judicial District Court in and for Hays County, Texas (the "Hays County Action") is a final and enforceable judgment, having not been properly superseded according to law. Accordingly, the Court finds that just cause exists for the entry of the following order.

**IT IS THEREFORE ORDERED** that the Motion for Relief from Automatic Stay filed by Cathy A. Blunck on September 5, 2013 is **GRANTED** as set forth in this Order.

Exhibit A

1

**IT IS FURTHER ORDERED** that the automatic stay is hereby **MODIFIED** so as to allow all parties to take all appropriate actions to continue and to complete the prosecution of the appellate action regarding the Divorce Decree, currently pending as Cause No. 03-13-00074-CV, before the Third Court of Appeals of Texas in Austin, Texas, and styled *Tedde R. Blunck, Appellant v. Cathy A. Blunck, Appellee,* together with any further appellate action as may be necessary or advisable.

**IT IS FURTHER ORDERED** that, in light of the fact that the Debtor-Defendant, Tedde R. Blunck, has failed to supersede the enforcement of the Divorce Decree issued by the 22nd Judicial District Court in and for Hays County, Texas pending appeal, the automatic stay is hereby further **MODIFIED** to allow the continued enforcement of the Divorce Decree according to law, and Cathy Blunck is hereby authorized to seek and to exercise any and all appropriate remedies available under state law to enforce the terms of the Divorce Decree, including any orders regarding the property awarded to her therein including but not limited to the following:

1. 100% of Tedde R. Blunck's retirement benefits in Parsons Brinckerhoff Group Inc. Retirement savings plan, c/o T. Rowe Price, arising out of Tedde R. Blunck's employment with Parsons Brinckerhoff Group Inc. as of 16 August 2002, together with any interest, dividends, gains, or losses on that amount arising since that date and more particularly defined in a Qualified Domestic Relations order signed by the 22nd Judicial District Court in and for Hays County, Texas. This includes the amounts now held in the following accounts:

    a. First National Bank of Pittsburg, Texas, account no. xxxx111, IRA account in the name of Tedde Blunck;

    b. Pilgrim Bank of Pittsburg, Texas, account no. xxxx865, IRA account in the name of Tedde R. Blunck, Leon Breeden, Receiver;

    c. Capital One Bank, Pittsburg, Texas, account no. xxxxxxx474, IRA account in the name of Tedde R. Blunck;

    d. 401k Account held at T-Rowe Price in the amount of $40,120.25;

2

The Court acknowledges the foregoing property (a)-(d), awarded to the Movant in the Divorce Decree, is subject to the receivership imposed by the previous orders of the 22nd Judicial District Court of Hays County, Texas, for the purpose of protecting the existence and integrity of property awarded to the Movant in the Divorce Decree and the automatic stay is further **MODIFIED** to allow the court-appointed receiver to exercise all rights and to seek all remedies necessary to fulfill the obligations imposed upon him by the 22nd Judicial District Court of Hays County, Texas, with respect to the property affected by this order;

2.      Parsons Brinckerhoff, Inc. Exec. Def. Corp. Plan I, $78,104.00;

3.      Parson Brinckerhoff, Inc. Exc. Def. Comp Plan II, $120,816.00;

4.      Wells Fargo Savings Account ending in xxx2983, $40,291.00

5.      Undivided ½ interest in all Timber and Minerals, Camp County, Texas 406.93 acres located at 1347 CR 4510;

6.      The Duck Boat, Motor, and Trailer duck motor vehicle, vehicle identification number 1MDARER19RD678273, together with all prepaid insurance, keys, and title documents;

7.      One (1) 2007 Ford Expedition motor vehicle, vehicle identification number 1FMFK19567LA95287;

8.      Four hunting trophies (Impala, Gemsbock, Blesbok, and Bushbuck) and one zebra skin.

**IT IS FURTHER ORDERED** that the remedies for which the stay is lifted do not include the enforcement by contempt without further order of this court.

All other relief sought by the Motion is **DENIED** without prejudice.

Signed on 11/04/2013

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE



# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

IN RE:                                         )      CASE NO:  **13-20129**
**Tedde Robin Blunck**                         )
                                               )      Chapter 13
                                               )
SSN(s): **xxx-xx-3054**                        )
**1347 CR 4510**                               )
**Pittsburg, TX 75686**                        )
                                               )
                                               )
                                               )
                *Debtor(s)*                    )

## ORDER CONFIRMING CHAPTER 13 PLAN AND RELATED ORDERS

After notice and hearing, wherein the Court considered the matters on file herein, including the Trustee's Report of Creditors Meeting held pursuant to Section 341 of the Bankruptcy Code, and all objections to confirmation of the Plan, The Court finds:

1. Written notice of the Meeting of Creditors held pursuant to 11 U.S.C. § 341 and of this hearing on the confirmation of the Plan was given as required by Rule 2002; and

2. All scheduled creditors have been served with a copy of the Debtor's Plan or summary thereof in accordance with Rule 3015; and

3. The Plan as presented for confirmation (hereinafter referred to as "the Plan") complies with the provisions of Chapter 13 of Title 11 of the United States Code and the other applicable provisions of said Title; and

4. With respect to each allowed secured claim provided for by the Plan, the holder of such claim either accepted or was deemed to have accepted the Plan, or, in the alternative

   a. The Plan provides that the holder of such claim retain the lien securing such claim; and

   b. The value, as of the effective date of the Plan, of property to be distributed under the Plan on account of such claim is not less than the allowed amount of such claims; or

   c. The Debtor has surrendered or abandoned the collateral securing such claim; or

   d. The treatment of the claim complies with 11 U.S.C. § 1322(b)

## IT IS THEREFORE ORDERED THAT:

1. The Debtor's Plan dated _____**11/13/2013**_____ as filed or as amended is CONFIRMED subject to the allowance of claims herein and the Trustee's Recommendation Concerning Claims which shall be filed within 30 days of the latter of entry of this Order or the deadline for all creditors (including a government unit) to file a claim. With respect to all claims allowed or not yet allowed at the time of execution of this Order, said claims are subject to the Trustee's Recommendation Concerning Claims as follows:

   I. (a). The Trustee, the Debtor, and the Debtor's attorney shall examine proofs of claim or summaries thereof and shall object to the allowance of improper claims as provided by Rule 3007.

   (b). The Trustee shall file and serve all parties in interest with the Trustee's Recommendation Concerning Claims within thirty (30) days of the latter of entry of this Order or the claim filing deadline for all creditors (including a government unit). Such Trustee's Recommendation Concerning Claims shall include the Trustee's objections to claims, if any, recommendations as to the extent and validity of each creditor's security interest, if any, and recommendations as to the value of any collateral not previously valued by the Court. The Trustee's Recommendation Concerning Claims shall be deemed to be an objection to claims, a motion to value any such collateral, and an action to determine the validity of each creditor's security interest or an action to avoid any such security interest as set forth therein.

   (c). Unless an objection or response is timely filed as to the treatment of any claim, the claim will be allowed only in the manner and amount listed in the Trustee's Recommendation Concerning Claims, and such treatment will be final and binding on all parties without further order of the Court.

Exhibit B

TXEB Local Form 3015-b  [Revised January 18, 2006]                                          Page 1

Case No:   13-20129
Debtor(s):   **Tedde Robin Blunck**

II. (a).   The Chapter 13 Trustee shall review all claims and the feasibility of the Plan prior to filing the Trustee's Recommendation Concerning Claims. If at that time the Plan is no longer feasible, the Trustee shall notify the Debtor and his attorney, in writing, of the infeasibility of the Plan. If forty-five (45) days after the service of the Trustee's Recommendation Concerning Claims the Plan remains infeasible, the Trustee shall file a Motion to Modify the Plan and/or a Motion to Dismiss the case.

(b).   Further, if at any time during the term of the Chapter 13 case, a claim is allowed which makes the Plan infeasible, the Chapter 13 Trustee shall notify the Debtor and his attorney, in writing, of the infeasibility of the Plan. If the Plan remains infeasible for forty-five (45) days after such notice, the Trustee shall file a Motion to Modify the Plan and/or an alternative Motion to Dismiss the case.

III. At the time of the issuance of an Order Confirming a Plan in this case, the time for filing claims in this case may not have expired. Consequently, the Court specifically reserves the right in the future to:

(a).   Alter or sustain an objection to the secured status of a claim filed as secured either before or after the entry of this Order Confirming Plan, and value the collateral securing any such claim to the extent not previously valued herein or otherwise by the Court;

(b).   Enter a Final Order after notice and hearing on any responses or objections to the Trustee's Recommendation Concerning Claims, and on any additional objection(s) to claims timely filed by a party in interest;

(c).   At any time during the pendency of this case, entertain a motion to alter or sustain an objection to the secured status of a claim filed as secured after the bar date for filing claims has expired, or to value the collateral securing any such claim to the extent not previously valued by the Court.

(d).   Reduce, if necessary to ensure compliance with LBR 2016(h), the amount of attorney fees to the debtor's attorney due to the absence of a certification from debtors attorney regarding legal services provided pertaining to automatic stay litigation occurring in the case.

IV. All creditors having allowed secured claims (whether filed before or after an Order Confirming Plan is entered) shall be treated in accordance with section 1325(a) (5), except as otherwise specifically set forth herein. The collateral securing creditor's claims provided for under the Debtor's Plan is hereby valued by the Court at the values set forth below.

(a).   When the value of the collateral securing a timely filed proof of claim of any taxing authority differs from the value shown on the Debtor's Plan, the Trustee will use the value shown on the creditor's proof of claim. All parties will be noticed of this valuation through the Trustee's Recommendation Concerning Claims and disputed valuations may be resolved by the Court, by agreement or objection.

(c).   In those instances, if any, where an objection was filed to the treatment of a creditors claim, including the valuation of collateral as provided in the Debtor's Plan, the Court through this order hereby determines the treatment shall be as set forth in exhibit 'A' attached, if any.

(d).   In the event a creditor timely files a proof of claim which evidences a perfected security interest in collateral which was not specified by the Plan and not previously valued by the Court, such collateral will be valued by the Court at the value set forth in the Trustee's Recommendation Concerning Claims to be filed herein, unless a response to such Trustee's Recommendation Concerning Claims is timely filed. Such Trustee's Recommendation Concerning Claims is to be filed and served within thirty (30) days of the latter of entry of this Order or the deadline for filing proofs of claims herein (including a government unit). Responses to such Trustee's Recommendation Concerning Claims must be filed within the time and in the manner provided in such Trustee's Recommendation Concerning Claims.

**TXEB Local Form 3015-b**   [Revised January 18, 2006]                                                              Page 2

Case No:   13-20129
Debtor(s):   **Tedde Robin Blunck**

---

(e). The valuation of collateral by the Court as set forth above shall not relieve a secured creditor from the duty to file a proof of claim in order to be paid under the Plan. Further, such valuation shall not preclude any party from objecting to the amount claimed by any such creditor, or from bringing an action to determine the extent of validity of such creditor's security interest or to avoid any such security interest.

2.  The Debtor(s) shall pay the sum of ____**$1,350.00**____ per month for _____**60**_____ payments together with any income Tax refunds that the debtor receives during the life of the plan for a total of ____**$81,000.00**____ to:

*If variable payments are indicated, see Exhibit "B" - Variable Plan Payments for the monthly amounts.*

> **John Talton**
> **P.O. Box 734**
> **Tyler, Texas 75710-0734**

Beginning _____**7/25/2013**_____ and continuing until all of the allowed claims provided for under the Plan have been paid in accordance with the terms of the Plan, of this Order, or as set forth in the Trustee's Recommendation Concerning Claims.

3.  The Trustee shall make disbursements pursuant to the provisions of the Plan, this Order, or as set forth in the Trustee's Recommendation Concerning Claims, Section 1326 of the Bankruptcy Code and shall pay only such claims which have been allowed by the Court. The Trustee shall make such disbursements monthly, unless otherwise provided for by the Plan, but shall not be required to pay any dividend in an amount less than $15.00 and dividends not distributed because of this provision shall accumulate and be paid when such accumulation aggregates $15.00 or more.

4.  The Debtor(s) shall not incur additional debt during the term of this Plan except upon written approval of the Court or the Standing Chapter 13 Trustee. Failure to obtain such approval may cause the claim for such debt to be unallowable and non-dischargeable.

☑   Check this box if Additional Provisions are attached

Signed on 12/27/2013

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE

APPROVED AS TO FORM AND SUBSTANCE

**/s/ GORDON MOSLEY**
*GORDON MOSLEY, Attorney for Debtor*

**12/27/2013**
Date

**/s/ John Talton**
*John Talton, Chapter 13 Trustee*

**12/27/2013**
Date

TXEB Local Form 3015-b   [Revised January 18, 2006]                                              Page 3

Case No:   13-20129
Debtor(s):   **Tedde Robin Blunck**

---

## Additional Provisions of the Plan

### Replacement Value Not Set at Confirmation

Notwithstanding any provision herein to the contrary, the value(s) of the collateral securing the claims, if any, as set forth in paragraph 6(A)(ii)(b) of this Chapter 13 Plan are not determined upon the entry of this Confirmation Order, unless an agreement regarding such value is attached to this Order.  In the absence of any such attachement, such value shall be established pursuant to each creditor's secured proof of claim pertaining to any such collateral, subject to subsequent modification be the entry of an order resolving any objection to such secured proof of claim or resolving a party's seperate motion to value the particular collateral pursuant to 11 USC 506 and Bankruptcy Rule 3012

### Trustee's Recommendation Concerning Claims

Notwithstanding any provision herein to the contrary, the deadline for the Trustee to file the Trustee's Recommendation Concerning Claims, as well as the deadline for filing objections to the Trustee's Recommendation Concerning claims and objections to claims shall be governed by Local Bankruptcy Rule 3015(g).

### Tax Returns and Refunds

All future refunds which the Debtor(s) receive during the term of the plan, starting with the tax refund, if any, to be received in the tax year 2012, shall be turned over to the Chapter 13 Trustee within ten (10) days of receipt of such, to the extent said refunds exceed $32,111.04 and shall be added to the plan base. Whether or not a tax refund is due, Debtor(s) shall provide a copy of their tax return to the Trustee within ten (10) days of filing such during the term of the Plan.

### Unsecured Claims to be paid with interest

Notwithstanding any other provision herein, all timely filed and allowed unsecured claims shall be paid in full with interest at the rate of 6.00 % APR.

Among the unsecured claims that the plan shall provide for is an unsecured claim filed on behalf of "The Hartford" (claim no. 11), currently filed in the amount of $15,797.50.

Debtor reserves his right, consistent with the Bankruptcy Code and Bankruptcy Rules, to file an objection to any proof of claim that may be filed in this case.

/s/ Herbert J. Gilles
Herbert J. Gilles
counsel for "The Hartford"

### Claim(s) of Cathy Blunck

The plan shall provide for the claims of Cathy Blunck as described on the attached sheet.

**TXEB Local Form 3015-b**   [Revised January 18, 2006]                                          Page 4

## CLAIM(S) OF CATHY BLUNCK

The Debtor's Plan shall provide for the direct payment of the claim(s) of Cathy Blunck ("Ms. Blunck"), currently evidenced by the proof of claims # 9 and # 10 on the Bankruptcy Court's Claim Register. Said claims were filed by Ms. Blunck as fully secured, and evidenced by an Abstract of Judgment filed on April 15, 2013, with the County Clerk of Camp County, Texas.

The automatic stay is hereby lifted with regard to Ms. Blunck's claims, and shall no longer prevent any collection efforts, of Ms. Blunck as it may relate to claims 9 & 10, or other pending property settlements with the Debtor.

The extent to which Ms. Blunck may pursue her remedies to satisfy her allowed bankruptcy claims against the debtor, or any additional provision of the Divorce Decree and other pending orders now under appeal, shall be subject to the supervision and jurisdiction of the 22nd Judicial District Court in and for Hays County, Texas.

The remedies for which the automatic stay is lifted do not include the enforcement by contempt. That limitation shall not prevent Ms. Blunck, through her counsel, or other parties in interest, from seeking additional modification of the stay from the Bankruptcy Court should the need arise to enforce the provisions of the Debtor's Confirmation Order or other Orders issued by the 22nd Judicial District Court of Hays County, Texas.

/s/ Gordon Mosley
Gordon Mosley
SBN: 00791311
Counsel for the Debtor

/s/ Lloyd Kraus
Lloyd Kraus
For the Chapter 13 Trustee

# WILCOX LAW, P.L.L.C.

P.O. Box 11509
Fort Worth, Texas 76110-0509

- - - - - -

206 E. 8th Street, Suite 201
Fort Worth, Texas 76102

STEPHEN G. WILCOX

- - - - - -

817-870-1181 (fax)
817-870-1694 (direct)
**swilcox@wilcoxlaw.net**

December 17, 2013

**VIA EMAIL/FACSIMILE**
Gordon Mosley
4411 Old Bullard Rd., No. 700
Tyler, TX 75703

### RE: TEDDE BLUNCK; CASE NO. 13-20129-BP-13

Dear Mr. Mosley:

Our client, Ford Motor Credit Company LLC ("Creditor"), has filed its Objection to Confirmation in this matter. In order to resolve our objections, I propose the following agreement:

The parties agree that Creditor's claims secured by a 2008 Ford F150, vehicle identification number 1FTPW14V88FB48320, and a 2012 Ford Escape, vehicle identification number 1FMCU0EG7CKA65259, will be paid directly by Debtor to Creditor according to all of the terms and provisions of the contracts regarding the vehicles. The parties agree that, in the event the last payments due on these secured claims are due after the date on which the final payments under the plan are due, these secured claims are subject to 11 U.S.C. § 1322(b)(5) and discharge of these secured claims is subject to the provisions of 11 U.S.C. §1328 (a) and (c). Creditor shall retain its lien on the vehicles described herein until it is paid in full pursuant to the terms of the contracts with the Debtor.

If this is agreement is acceptable, please sign below and return this letter to me as quickly as possible. Additionally, please present the signed letter agreement to the Chapter 13 Trustee to attach to the Confirmation Order. Thank you very much.

Sincerely yours,

*Stephen Wilcox*

Stephen G. Wilcox

Gordon Mosley
1702-34030-353377

FILE COPY

# M A N D A T E

THE STATE OF TEXAS

TO THE 22ND DISTRICT COURT OF HAYS COUNTY, GREETINGS:

Trial Court Cause No. 11-1217

      Before our Court of Appeals for the Third District of Texas on July 2, 2014, the cause on appeal to revise or reverse your judgment between

Tedde R. Blunck

No. 03-13-00074-CV       v.

Cathy A. Blunck

Was determined, and therein our Court of Appeals made its order in these words

This is an appeal from the judgment signed by the trial court on October 24, 2012. Having reviewed the record, the Court agrees that the appeal should be dismissed. Therefore, the Court dismisses the appeal as moot. The appellant shall pay all costs relating to this appeal, both in this Court and the court below.

Wherefore, we command you to observe the order of our Court of Appeals in this behalf and in all things have the order duly recognized, obeyed, and executed.

Witness the Honorable J. Woodfin Jones, Chief Justice of the Court of Appeals for the Third District of Texas, with the seal of the Court affixed in the City of Austin on Thursday, December 11, 2014.

JEFFREY D. KYLE, CLERK

By: Amy Strother, Deputy Clerk

EXHIBIT C

# BILL OF COSTS

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

No. 03-13-00074-CV

Tedde R. Blunck

v.

Cathy A. Blunck
(No. 11-1217 IN 22ND DISTRICT COURT OF HAYS COUNTY)

| Type of Fee | Charges | Paid | By |
|---|---|---|---|
| FILING | $15.00 | E-PAID | TEDDE R BLUNCK |
| FILING | $15.00 | E-PAID | TEDDE R BLUNCK |
| FILING | $10.00 | E-PAID | TEDDE R BLUNCK |
| FILING | $10.00 | E-PAID | TRACY TODD |
| FILING | $10.00 | E-PAID | TEDDE R BLUNCK |
| FILING | $10.00 | E-PAID | TRACY TODD |
| REQUIRED TEXAS.GOV EFILING FEE | $5.00 | E-PAID | KARL E HAYS |
| FILING | $10.00 | E-PAID | KARL E HAYS |
| REQUIRED TEXAS.GOV EFILING FEE | $5.00 | E-PAID | KARL E HAYS |
| REQUIRED TEXAS.GOV EFILING FEE | $5.00 | E-PAID | TEDDE R BLUNCK |
| REQUIRED TEXAS.GOV EFILING FEE | $5.00 | E-PAID | TEDDE R BLUNCK |
| FILING | $10.00 | E-PAID | TEDDE R BLUNCK |
| REQUIRED TEXAS.GOV EFILING FEE | $5.00 | E-PAID | TEDDE R BLUNCK |
| FILING | $10.00 | E-PAID | TEDDE R BLUNCK |
| SUPPLEMENTAL CLERK'S RECORD | $0.00 | UNKNOWN | |
| SUPPLEMENTAL CLERK'S RECORD | $72.00 | UNKNOWN | |
| CLERK'S RECORD | $300.00 | UNKNOWN | |
| FILING | $100.00 | PAID | TEDDE R. BLUNCK |
| SUPREME COURT CHAPTER 51 FEE | $50.00 | PAID | TEDDE R. BLUNCK |
| INDIGENT | $25.00 | PAID | TEDDE R. BLUNCK |

Balance of costs owing to the Third Court of Appeals, Austin, Texas: 0.00

Court costs in this cause shall be paid as per the Judgment issued by this Court.

I, JEFFREY D. KYLE, CLERK OF THE THIRD COURT OF APPEALS OF THE STATE OF TEXAS, do hereby certify that the above and foregoing is a true and correct copy of the cost bill of THE COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS, showing the charges and payments, in the above numbered and styled cause, as the same appears of record in this office.

IN TESTIMONY WHEREOF, witness my hand and the Seal of the COURT OF APPEALS for the Third District of Texas on December 11, 2014.

JEFFREY D. KYLE, CLERK
By: Amy Strother, Deputy Clerk

FILED
12/15/2014 12:00:00 AM
Beverly Crumley
District Clerk
Hays County, Texas

CAUSE NO. 11-1217

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| TEDDE R. BLUNCK | § | 22ND JUDICIAL DISTRICT |
| AND | § | |
| CATHY A. BLUNCK | § | HAYS COUNTY, TEXAS |

**OBJECTION TO RESPONDENT'S MOTION TO SET HEARING ON MOTION TO RELEASE AND TRANSFER PROPERTY IN THE POSSESSION OF RECEIVER AND TO AUTHORIZE RECEIVER TO SUBMIT FINAL REPORT**

This Objection to Respondent's Motion to Set Hearing on Motion to Release and Transfer Property in Possession of Receiver and to Authorize Receiver to Submit Final Report is brought by Tedde R. Blunck, Petitioner. In support, Tedde R. Blunck shows:

1. Local Rules of Practice for the 22nd District Court, Part One: Civil Rules, Section One – Settings, Rule 1. WRITTEN REQUEST states: "All cases, contested or uncontested, MUST be set by way of WRITTEN MOTION WITH ORDER ATTACHED. Forms will be provided, if necessary. Attorneys requesting settings will notify opposing counsel of such motion by certified mail or hand delivery at least ten (10) days before the date of such setting. In addition, said Request shall include an estimated length of hearing.

"If for good cause opposing counsel cannot go to trial on such date, he shall immediately notify the Court Administrator or Court Coordinator in writing stating such reasons.

"If opposing counsel has not advised the Office of Court Administration within five (5) days of such notice, the Court shall proceed to set such case for hearing."

2. Petitioner received Respondent's notice of Motion to Set Hearing on Motion to

Release and Transfer Property in Possession of Receiver and to Authorize Receiver to Submit Final Report on December 12, 2014 via e-mail requesting the hearing be set for December 18, 2014 at 9:00 a.m.

3. This Objection is filed within the required five (5) days of receipt of Notice.

4. Notice has not been delivered via certified mail or hand delivery as required by Rule 1.

5. Notice period provided 6 days and not 10 days as required by Rule 1.

6. The Notice and Motion fail to state an estimated length of hearing.

7. The Notice and Motion wholly fail to comply with the Local Rule 1 set out in Paragraph 1 above.

8. Texas Rules of Civil Procedure, Rule 21a, states in pertinent part: "Every notice required by these rules, and every pleading, plea, motion, or other form of request required to be served by Rule 21, other than the citation to be served upon the filing of a cause of action and except as otherwise expressly provide in these rules, may be served by delivering a copy to the party to be served, or the party's duly authorized agent or attorney of record, as the case may be, either in person or by agent or by courier receipted delivery or by certified mail or registered mail, to the party's last known address, or by telephonic document transfer to the recipient's current Telecopier number, or by such other manner as the court in its discretion may direct."

9. Service was not provided in accordance with the requirements of the foregoing Rule 21a.

10. Petitioner has not had adequate time to prepare for the hearing.

**OBJECTION TO RESPONDENT'S MOTION TO SET HEARING ON MOTION TO RELEASE AND TRANSFER PROPERTY IN POSSESSION OF RECEIVER AND TO AUTHORIZE RECEIVER TO SUBMIT FINAL REPORT** Page **2** of **3**

Page 22 of 207

000022

Tedde R. Blunck prays that the Court sustain his objection to Respondent's Motion to Set Hearing on Motion to Release and Transfer Property in Possession of Receiver and to Authorize Receiver to Submit Final Report and deny Respondent's Motion and require Respondent to comply with Local Rule 1 stated in Paragraph No. 1 above and Rule 21a of the Texas Rules of Civil Procedure.

Respectfully submitted,

TEDDE R. BLUNCK, PETITIONER
502 Quitman Street
PO Box 1152
Pittsburg, Texas 75686
Tel: (903) 855-8460
Fax: (903) 855-8465

By:_____
    Tedde R. Blunck, Pro Se

**Certificate of Service**

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on December 14, 2014.

_____
Tedde R. Blunck, Pro Se

**OBJECTION TO RESPONDENT'S MOTION TO SET HEARING ON MOTION TO RELEASE AND TRANSFER PROPERTY IN POSSESSION OF RECEIVER AND TO AUTHORIZE RECEIVER TO SUBMIT FINAL REPORT** Page **3** of **3**

Page 23 of 207                                                                                                          000023

CAUSE NUMBER 11-1217

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| TEDDE R. BLUNCK | § | 22ND JUDICIAL DISTRICT |
| AND | § | |
| CATHY A. BLUNCK | § | HAYS COUNTY, TEXAS |

## ORDER GRANTING MOTION TO RELEASE AND TRANSFER PROPERTY IN POSSESSION OF RECEIVER AND TO AUTHORIZE RECEIVER TO SUBMIT FINAL REPORT

On the date subscribed below, the Court considered Cathy A. Blunck's *Motion to Release and Transfer Property in Possession of Receiver and to Authorize Receiver to Submit Final Report.*

*Appearances*

Movant, Cathy A. Blunck, who is the Respondent in these proceedings, appeared in person and by and through her attorney of record, Karl E. Hays.

Respondent, Tedde R. Blunck, who is the Respondent to the pending motion and the Petitioner in these proceedings, appeared in person pro se.

Leon Breeden, court-appointed Receiver in this cause, appeared in person.

After nothing the appearance of the parties, counsel and the Receiver, the Court then took up and considered the merits of Cathy A. Blunck's request.

*Findings and Orders*

Upon taking judicial notice of the file, and upon hearing the evidence and argument of counsel, as well as noting the position of the Receiver in this matter, the Court is of the opinion and does so find that the relief requested by Cathy A. Blunck should be granted.

1

Accordingly, it is ORDERED that the Receiver shall release and transfer to Cathy A. Blunck possession and control of the following accounts currently in the possession and control of the Receiver:

a.    First National Bank, Tedde R. Blunck IRA xx111, approximate current balance of $240,431.79.

b.    Pilgrim Bank, Tedde R. Blunck IRA xxxx865, approximate current balance of $186,304.00.

c.    Capital One Bank, Tedde R. Blunck IRA xxxxxxx474, approximate current balance of $229,945.87.

It is further ORDERED that the Receiver is appointed as Tedde R. Blunck's attorney-in-fact for the purpose of executing any and all documents necessary to transfer title to the above-referenced accounts to Cathy A. Blunck. It is ORDERED that the Receiver is specifically authorized to execute any and all documents necessary to transfer title to Cathy A. Blunck of the above-referenced IRA accounts in Tedde R. Blunck's name at First National Bank, Pilgrim Bank and Capital One Bank and it is further ORDERED that said accounts shall be transferred to Cathy A. Blunck instanter.

It is further ORDERED that, upon transfer of possession and control of all property under the current control of the Receiver, the Receiver shall be authorized to submit a final report to the Court, together with a request for an approval of such report, and dissolution of the Receivership.

SIGNED this _18_ day of December 2014.

_____Bill H_____
BILL HENRY
JUDGE PRESIDING

2

NO. 11-1217

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| TEDDE R. BLUNCK | § | 22ND JUDICIAL DISTRICT |
| AND | § | |
| CATHY A. BLUNCK | § | HAYS COUNTY, TEXAS |

## MOTION TO APPROVE FINAL REPORT OF RECEIVER, FOR PAYMENT OF RECEIVER'S FEES AND EXPENSES, AND TO DISCHARGE RECEIVER

TO THE HONORABLE JUDGE BILL HENRY:

### FINAL REPORT OF ACTIVITIES

This report covers my activites as receiver in this case from and after the hearing held on March 5, 2014, after which the Court entered its "Order on Motion to Release Property in Possession of Receiver and for Clerk to Release Cash Bond to Receiver" which was signed on March 18, 2014. At that time the Court denied the motion of Cathy A. Blunck to release property in possession of receiver but did approve additional fees incurred by the Receiver and for payment of the cash bond on file with the clerk of court for partial payment of my fees.

1. I did receive payment of $7,000.00 for the cash bond from the district clerk's office as partial payment of my total approved fees in that order of $16,037.51, leaving a balance of approved fees in the amount of $9,037.50.

2. Since the hearing in March, 2014, I only received sporadic emails from Ms. Blunck's attorney regarding the status of the appeal in this case, along with a request to sign an affidavit to be filed in the appeal, which I did sign and return to Mr. Hays. No fees are requested for these matters.

1

Page 26 of 207                                                          000026

3.     On December 11, 2014, Mr. Hays called me and advised that he had received the mandate from the Court of Appeals finalizing the dismissal of Mr. Blunck's appeal and that he planned to file a motion requesting that I be discharged as receiver and that the 3 IRA accounts in the banks in Pittsburg, Texas be transferred to Cathy Blunck. I advised Mr. Hays that based on my knowledge of how banks operate that I felt strongly that no matter how his motion and order were actually worded that the banks would require some kind of signature from both Ms. Blunck and me in order to process transferring the accounts to her name and that it would be best, in my opinion, for the court to order me to transfer the accounts to Ms. Blunck rather than having me discharged and the order directing the non-party banks to transfer the accounts to Ms. Blunck. Mr. Hays agreed with my position on how the order should be worded and advised that he would file the motion the next day and request a hearing the following week.

4.     On December 12, 2014, I received and reviewed the Motion to Release and Transfer Property in Possession of Receiver and to Authorize Receiver to Submit Final Report. I then sent an email to each of the 3 banks advising them that a hearing was scheduled for the following week and that I anticipated that the Court would be ordering the accounts to be transferred to Ms. Blunck.

5.     On December 18, 2014, I appeared at the hearing on Cathy Blunck's Motion to Release and Transfer Property in Possession of Receiver and to Authorize Receiver to Submit Final Report. After hearing, the Court signed an order granting that motion and directing me to transfer the 3 IRA accounts in various banks in Pittsburg, Texas to Ms. Blunck. I had previously advised Mr. Hays, and advised the Court at the hearing, that I was available to go with Ms. Blunck to Pittsburg, Texas the next day, Friday, December 19, to try to get all of the accounts

2

transferred to Ms. Blunck as quickly as possible.

At the conclusion of the hearing I contacted the district clerk in Pittsburg to inquire about a suit which Mr. Blunck advised during the hearing that he had filed in District Court in Camp County and in which he anticipated seeking a temporary restraining against me transferring the accounts to Ms. Blunck. The clerk sent me a copy of the petition which had been filed on December 17 in Cause No. CV-14-2462 styled "Paulette M. Blunck, as Trustee of the Tedde R. Blunck Living Trust v. Cathy A. Blunck." The original petition is styled "Plaintiff's Original Petition for Breach of Contract." The petition was signed by Tedde R. Blunck as attorney for Paulette M. Blunck, as Trustee of the Tedde R. Blunck Living Trust." There was no allegation in the petition relating to the receivership in this case nor is there a request for issuance of a temporary restraining order, temporary injunction or permanent injunction. After consultation with Ms. Blunck and Mr. Hays it was decided that Ms. Blunck and I would still go to Pittsburg the next day and that in the event any type of injunction was issued and served on me or Ms. Blunck that I would try to deal with the situation in person. I then advised the Court of the situation and that in the event anything was served upon me the next day I might need to contact the Court.

6. On December 19, 2014, I left my house promptly at 4:00 a.m. to begin the drive to Pittsburg, Texas. Ms. Blunck had agreed to meet me at a shopping center right on I-35 in Desoto, Texas, so I could pick her up there and we could drive from there to Pittsburg with minimal delay. I anticipated being able to make good time through use of state highway 130 to Georgetown, Texas, and thereafter because of the early hour. Unfortunately I encountered heavy rainstorms from just north of Georgetown to just north of Waco, with speeds reduced to a

3

maximum of 60 mph and often less than that for long stretches. I arrived in DeSoto right at 8 am and picked up Ms. Blunck and we arrived in Pittsburg at approximately 10:15.

We went first to Pilgrim Bank. The lady we were directed to was not anyone I had dealt with before but she seemed to know about the situation and went to work immediately. She called the bank's IRA department and the legal department and then advised us that everything was good and she would have the paperwork done shortly. Based on her questions and statements while preparing the paperwork it became apparent to me that the transactions the bank had in mind were not what should happen. The bank intended to issue me a cashier's check for the amount of the account, then have me deposit the check into an account in Ms. Blunck's name. This was not appropriate for several reasons, one being that I as receiver had no ownership interest in the account and should not receive any proceeds from the account, and another being that such a transaction would presumably destroy the status of the IRA accounts under federal law and incur taxes that should not be incurred. After lengthy discussions with the bank representative, the IRA department and the legal department, I finally got across that the transaction should be handled as if there were no receiver and the bank should simply close out the account in Mr. Blunck's name and transfer the funds to an IRA account in Ms. Blunk's name.

We finished at Pilgrim Bank at approximately 2:15 p.m. and went across the street to Capital One Bank. The lady I had dealt with previously there was not in and the employee dealing with IRA accounts that day was from another branch but after conferring with the woman I had dealt with previously, and senior bank official on hand, and conferences with IRA and legal department, they agreed to handle the transaction the same way Pilgrim's Bank had. They had a lot of paperwork to get approved so while they worked on that we went to First National Bank of

4

Pittsburg. The bank president I had dealt with before was present and after quick conferences with his departments, we got the paperwork started there. We then went back to Capital One and finished up and then back to First National to do the same. We walked out of First National Bank right at 5:30 p.m. Had we not gone on a Friday when bank hours are extended until 6:00 p.m. there is no way we could have finished all 3 accounts.

When we left First National Bank of Pittsburg, the 3 IRA accounts had been transferred to Ms. Blunck in an aggregate amount of approximately $656,616.01.

We then went to dinner, not having had a meal all day. We left Pittsburg at approximately 6:30 p.m. Ms. Blunck drove back to DeSoto so I could get some sleep before my drive back home. We arrived in DeSoto at approximately 8:20. I then drove back to San Marcos and arrived home at 12:30 a.m. Total distance traveled was 765 miles.

8. Ms. Blunck subsequently sent me a cashier's check in the amount of $9,037.50 for payment of the remainder of my fees which had previously been approved by the Court.

9. The order of March 18, 2014 contained a provision entitled "Clarification Regarding Accounts Under Control of Receiver", page 3, last paragraph of the Order. In that provision, it was stated that the 4th account under my receivership was the Parsons Brinckerhoff Group, Inc., 401(k) Retirement Savings account. I have not actually done anything in regard to that account because Mr. Blunck told me at the March hearing that the money (approximately $42,000.00) was still in that account and that he had no intention of claiming any of that money. I also advised Mr. Hays that I was skeptical that I could do anything in regard to a 401(k) account because of the federal ERISA statute, which grants broad authority and immunities to plan administrators and that given the amount of money involved in that account versus the IRA

5

accounts that my time would be better spent in dealing with the IRA accounts. In my humble opinion the 401(k) account should be governed by a QDRO rather than a receiver.

## REQUEST FOR PAYMENT OF FEES AND EXPENSES

The Court has previously approved my hourly rate of $300.00 per hour. Time spent on this matter is detailed below.

| | |
|---|---|
| 1. December 11, 2014 - telephone conference with Mr. Hays | .5 |
| 2. December 12, 2014 - review of motion and emails to 3 banks | .5 |
| 3. December 18, 2014 - attending hearing and research on case in Pittsburg | 2.5 |
| 4. December 19, 2014 - total travel and meal time | 13.25 |
| 5. December 19, 2014 - time spent at banks getting accounts transferred | 7.25 |
| 6. January 7, 2015 - review of file and preparation of this report | 2.0 |
| Total time through preparation of this report | 18.75 |

Fees requested

| | |
|---|---|
| 3.5 hours @ $300.00 per hour for December 11 - December 18 | $1,050.00 |
| 13.25 hours for travel on December 19 @ $300.00 per hour | $3,975.00 |
| 7.25 hours for time spent at banks on December 19 @ $300.00 per hour | $2,175.00 |
| 2 hours for time spent preparing this report on January 7 @ $300.00 per hour | $ 600.00 |
| Total fees requested if no hearing on this motion | $7,800.00 |

Ms. Blunck has indicated that she will pay the fees approved by the Court. The allocation of my fees as between the parties is to be determined by the Court and is outside the scope of my role as Receiver. Should a hearing be required on this matter, I request that the Court award additional fees for time expended at the hourly rate of $300.00 per hour.

6

000031

WHEREFORE, I request that the Court approve my final report, approve payment of my fees, and discharge me from my role as Receiver in this case.

Respectfully submitted,

*Leon Breeden*

LEON BREEDEN
120 W. Hopkins, Suite 102
San Marcos, Texas 78666
Tel: 512-396-2199
Fax: 512-754-7163
leon@leonbreeden.com
State Bar No. 02940750
Receiver

## Certificate of Service

I certify that a true copy of this document was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on January ___14___, 2014.

*Leon Breeden*

Leon Breeden, Receiver

7

FILED
1/30/2015 3:32:47 PM
Beverly Crumley
District Clerk
Hays County, Texas

CAUSE NUMBER 11-1217

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| TEDDE R. BLUNCK | § | 22ND JUDICIAL DISTRICT |
| AND | § | |
| CATHY A. BLUNCK | § | HAYS COUNTY, TEXAS |

## MOTION FOR POST-JUDGMENT RECEIVERSHIP PURSUANT TO SECTION 31.002, CIVIL PRACTICE AND REMEDIES CODE

1.      Cathy A. Blunck has obtained a judgment against Tedde R. Blunck in this cause. The judgment is dated 24 October 2012, and is in the amount of approximately $242,532.00. The judgment is final and not appealable and remains fully payable. A copy of the judgment is attached as Exhibit "A." Attached as Exhibit "B" is a copy of Section 31.002, Civil Practice and Remedies Code (herein §31.002) upon which this motion is based.

2.      §31.002(a) specifically provides that, "A judgment creditor is entitled to aid from a court of appropriate jurisdiction..." and §31.002(a)(3) provides for the appointment of a receiver to collect the debt. Tedde R. Blunck has not paid the judgment; Tedde R. Blunck owns property, including present or future rights to property that cannot be readily attached or levied on by ordinary legal process; and the property is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

3.      Accordingly, Cathy A. Blunck requests the Court order Tedde R. Blunck to turn over all non-exempt property that is in Tedde R. Blunck's possession or subject to his control, including, but not limited to, (1) all financial accounts (bank account), certificates of deposit, money market accounts, accounts held by any third party; (2) all securities; (3) all real property, equipment, vehicles, boats,

000033

and planes; (4) all safety deposit boxes or vaults; (5) all cash; (6) all negotiable instruments, including promissory notes, drafts, and checks; (7) causes of action or choses of action; (8) contract rights, whether present or future; and (9) accounts receivable, together with all documents related to the property, to a receiver with authority to take possession of the non-exempt property, sell it and pay the proceeds to Cathy A. Blunck to the extent required to satisfy the judgment, including the fees and costs of the receiver.

4.      Cathy A. Blunck further moves the Court to appoint a receiver pursuant to §31.002(b)(3), to take possession of the non-exempt assets and documents related to the assets, sell the assets and apply the proceeds from the sale to satisfy the judgment, including the receiver's fees and costs. Cathy A. Blunck requests this court to appoint Leon Breeden whose address is 120 W. Hopkins, Suite 102, San Marcos, Texas, 78666 as Receiver. Mr. Breeden has previously served as a receiver in this case.

5.      Cathy A. Blunck requests that the Court award its attorney's fees, expenses and costs in the amount of $750.00 for preparing, filing and arguing the motion and obtaining an order. Under §31.002(e), the judgment creditor is entitled to recover reasonable costs, including attorney's fees.

WHEREFORE PREMISES CONSIDERED, Cathy A. Blunck respectfully requests that the Court appoint a receiver to collect the judgment in this case, award attorney's fees, and provide for the payment of fees and costs to the receiver.

Respectfully Submitted,

LAW OFFICE OF KARL E. HAYS, PLLC
2101 South IH-35, Suite 210
Austin, Texas 78741
512-476-1911
512-476-1904 facsimile


By:_____
Karl E. Hays
State Bar Number 09307050
service@haysfamilylaw.com

ATTORNEY FOR CATHY A. BLUNCK

## CERTIFICATE OF SERVICE

The undersigned attorney certifies pursuant to Rule 21 of the Texas Rules of Civil Procedure, that the foregoing *Motion for Post-Judgment Receivership Pursuant to Section 31.002, Civil Practice and Remedies Code* has been served upon the below-named individual, in the manner noted below, as prescribed by Rule 21a of the Texas Rules of Civil Procedure, on this 30th day of January 2015.


_____
Karl E. Hays

**Via Facsimile Transmission**
Tedde R. Blunck
502 Quitman St.
P.O. Box 1152
Pittsburg, Texas 75686
903-855-8456 facsimile

FILED

2012 NOV -1 AM 10: 21

*Beverly Crumley*
DISTRICT CLERK
HAYS COUNTY, TEXAS

CAUSE NUMBER 11-1217

IN THE MATTER OF § IN THE DISTRICT COURT
THE MARRIAGE OF §
§
TEDDE R. BLUNCK § 22ND JUDICIAL DISTRICT
AND §
CATHY A. BLUNCK § HAYS COUNTY, TEXAS

## FINAL DECREE OF DIVORCE

On 8, 9, and 16 August 2012 the Court heard this case.

**Appearances**

Petitioner, Tedde R. Blunck, appeared in person, pro se, and announced ready for trial.

Respondent, Cathy A. Blunck, appeared in person and through attorney of record, John Barrett, and announced ready for trial.

**Record**

The record of testimony was duly reported by the court reporter for the 22nd Judicial District Court.

**Jurisdiction and Domicile**

The Court, upon taking judicial notice of the contents of the file in this cause, finds that the pleadings of Petitioner and Respondent are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date the suit was filed. The Court finds that both

*IMMO Blunck*
*Final Decree of Divorce*
*Page 1*

VOL 584 PG 0657

28 EXHIBIT A

000175
000036

Petitioner and Respondent have been domiciliaries of Texas for at least a six-month period preceding the filing of this action and residents of the county in which this suit is filed for at least a ninety-day period preceding the filing of this action. Additionally, the Court finds that all necessary parties have entered their appearances in this cause and are properly before the Court.

**Jury**

A jury was waived, and questions of fact and of law were submitted to the Court.

**Divorce**

IT IS ORDERED AND DECREED that Tedde R. Blunck, Petitioner, and Cathy A. Blunck, Respondent, are divorced and that the marriage between them is dissolved on the grounds of adultery by Tedde R. Blunck.

**Child of the Marriage**

The Court finds that there is no child of the marriage of Petitioner and Respondent and that none is expected.

**Division of Marital Estate**

The Court finds that the following is a just and right division of the parties' marital estate, having due regard for the rights of each party.

**<u>Property to Tedde R. Blunck</u>**

IT IS ORDERED AND DECREED that Tedde R. Blunck is awarded the following as his sole and separate property, and Cathy A. Blunck is divested of all right,

*IMMO Blunck*
*Final Decree of Divorce*
*Page 2*

title, interest, and claim in and to that property:

1.    The real property and improvements located at 1152 Little Bear Road, Buda, Hays County, Texas, subject to Cathy A. Blunck's right to exclusive use of the property pending payment of funds by Tedde R. Blunck, including but not limited to any escrow funds, easements, homeowners association rights, prepaid insurance, utility deposits, keys, house plans, home security access and code, keys and garage door opener, warranties and service contracts, and title and closing documents related to the property, which is more particularly described as:

> Lot 9, Block C of Elliott Ranch, Phase Four, a subdivision in Hays County, Texas, according to the map or plat of record in Volume 12, Pages 151-156 of the Plat Records of Hays County, Texas

2.    The real property and improvements located at 1347 CR 4510 Pittsburg, Camp County, Texas, including but not limited to any escrow funds, easements, homeowners association rights, prepaid insurance, utility deposits, keys, house plans, home security access and code, keys and garage door opener, warranties and service contracts, and title and closing documents related to the property, which is more particularly described as:

> ABS A060 Mary Hayes, Tract, 41-5000, 406.93 (+1.55 AC in Rd.) acres, Camp County, Texas (containing a computed area of 408.48 acres with 1.55 acres in a public road, leaving a net area of 406.93 acres)

BEING a tract of land situated in the MARY HAYS SURVEY ABSTRACT NO. 60, Camp County, Texas and being the remainder of a tract of land conveyed to E. B. McCaslin by deed recorded in volume 191 Page 415 Deed Records Camp County, Texas, and being more particularly described by metes and bounds as follows:

BEGINNING at a point for the Southeast corner of this tract on the centerline of County Road No. 4510, same being the Northeast corner of a tract of land conveyed to F. M. Jones by deed recorded in volume 22 page 286 Deed Records Camp County, Texas.
THENCE South 89 degrees 56 minutes 43 seconds West, passing a ½ inch capped (yellow plastic stamped Dewey 1641) steel rod set on the West line of County Road No. 4510 at 20.00 feet and continuing along the common line between said McCaslin and Jones tracts and generally along a wire fence for a total distance of 2443.60 feet to a ½ inch capped (yellow plastic stamped

*VOL 584 PG 0659*

*IMMO Blunck*
*Final Decree of Divorce*
*Page 3*

000177
000038

Dewey 1641) steel rod set for corner, same being a point in the East line of a tract of land in the name of Mrs. Hallie Reed, (no recording data).

THENCE North 20 degrees 00 minutes 00 seconds West along the common line between said McCaslin and Reed tracts, passing the Southeast corner of a tract of land in the name of J. W. Smith, (no recording data), also passing the Southeast corner of a tract of land in the name of J.D. Pankhurst, (no recording data) and continuing generally along a wire fence for a total distance of 6370.90 feet to a point for corner in Prairie Creek.

THENCE the following calls along the common line between said McCaslin and Pankhurst tracts and the meanderings of said creek:

1. North 43 degrees 20 minutes 02 Seconds East 366.11 feet

2. North 14 degrees 19 minutes 43 seconds West, passing the Northeast corner of said Pankhurst tract, same being a corner of a tract of land conveyed to Prairie Creek Ranch Partnership by deed recorded in volume 255 page 407 Deed Records Camp County, Texas and continuing for a total distance of 2187.00 feet to a point for corner in said creek, same being the Southwest corner of a tract of land in the name of P. L. Nolen et al, (no recording data).

3. North 48 degrees 55 minutes 32 seconds East along the common line between said McCaslin and Nolen tracts for a distance of 61.73 feet to a point for corner in said creek.

4. South 54 degrees 55 minutes 32 seconds East along the common line between said McCaslin and Nolen tracts for a distance of 2 34.56 feet to a point for corner in said creek.

5. North 55 degrees 17 minutes 22 seconds East along the common line between said McCaslin and Nolen tracts for a distance of 300.86 feet to a point for corner in said creek.

6. THENCE South 87 degrees 51 minutes 39 seconds East along the common line between said McCaslin and Nolen tracts for a distance of 121.10 feet to a point for corner in said creek.

7. THENCE North 60 degrees 17 minutes 00 seconds East along the common line between said McCaslin and Nolen tracts for a distance of 83.25 feet to a point for corner in said creek.

8. North 73 degrees 43 minutes 49 seconds East along the common line between said McCaslin and Nolen tracts for a distance of 48.00 feet to point for corner in said creek,

9. South 64 degrees 21 minutes 04 seconds East along the common line between said McCaslin and Nolen tracts for a distance of 218.71 feet to a point for corner in said creek.

10. North 11 degrees 55 minutes 04 seconds West along the common line

VOL 584 PG 0660

*IMMO Blunck*
*Final Decree of Divorce*
*Page 4*

000178
000039

between said McCaslin and Nolen tracts for a distance of 65.38 feet to a point for corner in said creek.

11. North 08 degrees 50 minutes 00 seconds East along the common line between said McCaslin and
Nolen tracts for a distance of 112.06 feet to a point for corner in said creek.

12. South 66 degrees 39 minutes 07 seconds East along the common line between said McCaslin and
Nolen tracts for a distance of 201.50 feet to a point for corner in said creek

13. North 85 degrees 46 minutes 22 seconds East along the common line between said McCaslin and Nolen tracts for a distance of 21.50 feet to a point for corner in said creek, same being a point in the West line of a tract of land in the name of H. Stephens, (no recording data).

THENCE  South 19 degrees  48 minutes 58 seconds East along the common line between  said McCaslin  and Stephens tracts and generally along a wire fence, passing the following tracts along the East line of McCaslin tract:

Annie Reynolds, (no recording data), Hartwell Stephens, (no recording data), and a tract of land conveyed to E. R. McCaslin and Myrtle McCaslin by deed recorded in volume 59 page 43 Deed Records Camp County, Texas and continuing for a total distance of 5101.23 feet to a fence post found for corner.

THENCE North 70 degrees 11 minutes 31 seconds East along the common line between said McCaslin tracts and generally along a wire fence, passing a ½ inch capped (yellow plastic stamped Dewey 1641) steel rod set on the West line of County Road no. 4510 at 1704.66 feet and continuing for a total distance of 1724.66 feet to a point for corner on the centerline of said road.

THENCE the following calls along the centerline of County Road No. 4510:

1. South 08 degrees 28 minutes 17 seconds West 164.1 0 feet to a point for corner.

2. South 03 degrees 48 minutes 48 seconds West 93.76 feet to a point for corner.

3. South 03 degrees 18 minutes 05 seconds East 89.55 feet to a point for corner.

4. South 07 degrees 16 minutes 56 seconds East 1079.09 feet to a point for corner.

5. South 11 degrees 27 minutes 19 seconds East 78.79 feet to a point for corner.

6. South 02 degrees 34 minutes 16 seconds West 258.83 feet to a point for corner.

7. South 06 degrees 55 minutes 55 seconds West 1230.11 feet to a point for corner, same being the Northeast corner of a tract of land conveyed to J. B. Cravey et ux by deed recorded in volume 53 page 286 Deed Records Camp County, Texas.

*IMMO Blunck*
*Final Decree of Divorce*
*Page 5*

000179
000040

THENCE North 86 degrees 34 minutes 49 seconds West along the common line between said McCaslin and Cravey tracts and generally along a wire fence for a total distance of 225.52 feet to a fence post found for corner.

THENCE South 04 degrees 19 minutes 46 seconds West along the common line between said McCaslin and Cravey tracts and generally along a wire fence for a distance of 420.00 feet to a ½ inch capped (yellow plastic stamped Dewey 1641) steel rod set for corner.

THENCE South 86 degrees 34 minutes 49 seconds East along the common line between said McCaslin and Cravey tracts and generally along a wire fence, passing the West line of county Road No. 451 0 and continuing for a total distance of 236.90 feet to a point for corner on the centerline of said road.

THENCE the following calls along the centerline of said road:

1. South 13 degrees 03 minutes 14 seconds East 40.27 feet to a point for corner.

2. South 21 degrees 13 minutes 53 seconds East 66.65 feet to a point for corner.

3. South 25 degrees 52 minutes 28 seconds East 83.10 feet to a point for corner.

4. South 29 degrees 54 minutes 57 seconds East for a distance of 825.81 feet to the point of BEGINNING.


CONTAINING a computed area of 408.48 acres with 1.55 acres in a public road, leaving a net area of 406.93 acres.


THIS CONVEYANCE IS SUBJECT TO ALL RESTRICTIONS, EASEMENTS, RIGHTS-OF- WAY, AND CONVEYANCES OF RECORD.

3.    The following timeshares:

a.    A 2% undivided interest as tenant-in-common in and to Unit 086 (the "Unit"), Hill Country Resort, Phase 5, a vacation resort in Comal County, Texas, according to the Second Amended and Restated Declaration of Restrictions, Covenants and conditions recorded under File No. 20000 6037046 and Supplemental Declaration recorded under File No. N/A Real Property Records of Comal County, Texas, (collectively the "Declaration"), and as shown and described in the Plat of Hill Country Resort recorded in Volume 8, Page 385 of the Plat Records, Comal County, Texas, together with the exclusive right to occupy the Unit during Use Period No. 50, beginning DECEMBER 14, 2007, as said Use Period is defined in the

VOL 584 PG 0662

*IMMO Blunck*
*Final Decree of Divorce*
*Page 6*

000180
000041

Declaration upon and subject to all of the terms, restrictions, covenants, conditions, provision in the Declaration and any amendments thereto.

b.    A 2% undivided interest as tenant-in-common in and to Unit 057 (the "Unit"), Hill Country Resort, Phase 3, a vacation resort in Comal County, Texas, according to the Second Amended and Restated Declaration of Restrictions, Covenants and conditions recorded under File No. 20000 6037046 and Supplemental Declaration recorded under File No. N/A Real Property Records of Comal County, Texas, (collectively the "Declaration"), and as shown and described in the Plat of Hill Country Resort recorded in Volume 8, Page 345 of the Plat Records, Comal County, Texas, together with the exclusive right to occupy the Unit during Use Period No. 17, beginning APRIL26, 2008, as said Use Period is defined in the Declaration upon and subject to all of the terms, restrictions, covenants, conditions, provision in the Declaration and any amendments thereto.

4.    The real property and improvements located at 502 Quitman Street, Pittsburg, Camp County, Texas, 75686 including but not limited to any escrow funds, easements, homeowners association rights, prepaid insurance, utility deposits, keys, house plans, home security access and code, keys and garage door opener, warranties and service contracts, and title and closing documents related to the property, which is more particularly described as:

.52 acre Nancy Glass Survey, Abstract No. 073. A-43 (aka Lot 08, E Pt. City Block 48 per CCAD), City of Pittsburg, Camp County, Texas

Being a lot, tract, or parcel of land situated in the Nancy Glass Survey, Abstract No. 073, Camp County, Texas, and being all of that certain tract of land conveyed from Zeliah Heath et vir to Dr. Manuel Guerra, by Warranty deed, as recorded in Volume 141, page 342, Deed Records, Camp County, Texas, and being more particularly described by metes and bounds as follows:

BEGINNING at a 60d nail set in asphalt at the Northeast corner of the remainder of a called 0.623 acre tract conveyed to Carolyn Rape, by Warranty Deed, as recorded in Volume 041, page 106, Real Property Records, Camp County, Texas, said point being in the South line of State Highway No. 11 (a.k.a. Quitman Street), from said point, a ½ inch iron rod found, bears North 69 Degrees 03 Minutes 27 Seconds West, a distance of

*IMMO Blunck*
*Final Decree of Divorce*
*Page 7*

000181
000042

64.00 feet;

THENCE South 69 Degrees 03 Minutes 27 Seconds East, with the South line of said State Highway No. 11, a distance of 60.38 feet to a ½ inch iron rod set with a yellow plastic cap stamped (CBG INC) at the Northwest corner of a tract of land once conveyed to Mollie Thomison by Warranty Deed as recorded in Volume 051, page 165, Deed Records, Camp County, Texas, from said point, a ½ inch iron pipe found, bears North 12 Degrees 53 Minutes 11 Seconds West, a distance of 0.98 feet;

THENCE South 12 Degrees 53 Minutes 11 Seconds West, with the West line of said Thomison tract, and passing the Southwest corner of said Thomison tract, and a Northwest corner of the remainder of a called 1-1/4 acre tract conveyed to Camp County-City of Pittsburg, Texas, by Warranty Deed, as recorded in Volume 122, page 483, Deed Records, Camp County, Texas, and continuing on for a total distance of 283.36 feet to a ½ inch iron rod set with a yellow plastic cap stamped (CBG INC) at the Eastern most Northeast corner of a called 0.253 acre tract conveyed to the East Texas Medical Center Regional Healthcare System, by Warranty Deed, as recorded in Volume 179, page 128, Official Public Records, Camp County, Texas, from said point, a ½ inch iron rod found with a red plastic cap stamped (S&A), bears South 10 Degrees 49 Minutes 21 Seconds West, a distance of 73.64 feet;

THENCE North 71 Degrees 36 Minutes 01 Seconds West, with a North line of said 0.253 acre tract, a distance of 100.00 feet to a ½ inch iron rod set with a yellow plastic cap stamped (CBG INC) at an ell corner of said 0.253 acre tract;

THENCE North 20 Degrees 54 Minutes 16 Seconds East, (Reference Bearing), with the an East line of said 0.253 acre tract, and passing at a distance of 11.29 feet, a ½ inch iron rod found with a red plastic cap stamped (S&A) at the Northern most Northeast corner of said 0.253 acre tract, and the Southeast corner of the remainder of said 0.623 acre tract, and continuing on for a total distance of 285.00 feet to the POINT OF BEGINNING and CONTAINING 22,707 square feet or 0.52 acres of land, more or less.

5.    All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of Tedde R. Blunck or subject

*IMMO Blunck*
*Final Decree of Divorce*
*Page 8*

to his sole control except as specifically listed below.

6.    The funds on deposit, together with accrued but unpaid interest, in the following banks, savings institutions, or other financial institutions:

    a.    Wells Fargo checking account number ending in **1488;
    b.    Wells Fargo checking account number ending in **0348;
    c.    Wells Fargo checking account number ending in **9173;
    d.    Wells Fargo checking account number ending in **4223;
    e.    Wells Fargo checking account number ending in **1927; and
    f.    Wells Fargo checking account number ending in **0879.
    g.    The remaining balance in Wells Fargo savings account number ending in xxxx2983 after $40,291.00 is paid to Cathy A. Blunck.

7.    FORTY-FIVE PERCENT (45%) of Tedde R. Blunck's benefits in Parsons Brinckerhoff Inc. Exec Def Comp Plan (DCOMP I), c/o T. Rowe Price, arising out of Tedde R. Blunck's employment with Parsons Brinckerhoff, Inc. to be paid as set out below.

8.    FORTY-FIVE PERCENT (45%) of Tedde R. Blunck's benefits in Parsons Brinckerhoff Inc. Exec Def Comp Plan (DCOMP II), c/o T. Rowe Price, arising out of Tedde R. Blunck's employment with Parsons Brinckerhoff, Inc. to be paid as set out below.

9.    All policies of life insurance (including cash values) insuring Tedde R. Blunck's life.

10.    The MTL Insurance Company life insurance policy insuring S. J. Hawkinson.

11.    The 2008 Ford F150 motor vehicle, vehicle identification number 1FTPW14V88FB48320, together with all prepaid insurance, keys, and title documents.

12.    The 2012 Ford Escape motor vehicle, vehicle identification number 1FMCUCEG7CKA65259, together with all prepaid insurance, keys, and title documents.

13.    The 1976 Bethany Citation Travel Trailer motor vehicle, vehicle identification number BF1111CFB464015, together with all prepaid insurance, keys, and title documents.

14.    The following travel and hotel award benefits:

    a.    Marriott account number ending in **8894;
    b.    50% of Gold Delta Sky Miles account number ending **1008;
    c.    Southwest Airlines benefits held in Husband's name;
    d.    American Airlines benefits held in Husband's name; and
    e.    Wells Fargo account number ending in **1165.

15.    The contents of the storage unit located in Pittsburgh, Texas.

16.    An undivided one half (½) interest in timber and mineral interests on the property located at ABS A060 Mary Hayes, Tract, 41-5000, 406.93 (+1.55 AC in Rd.) acres, and more commonly known as 1347 CR 4510 Pittsburg, Texas.

17.    The outstanding loan proceeds from Kelle Hawkinson.

18.    The outstanding loan proceeds from Michelle Jolie.

19.    The outstanding loan proceeds from Beau Shafer.

20.    The proceeds from the Note receivable from Richard and Vanessa Antoine.

21.    The hunting trophies and prints save and except for the trophies awarded to Cathy A. Blunck and Ordered delivered to Richard Antoine herein.

22.    Contents of the gun safe and hunting gear in his possession.

<u>Property to Cathy A. Blunck</u>

IT IS ORDERED AND DECREED that Cathy A. Blunck is awarded the following as her sole and separate property, and Tedde R. Blunck is divested of all right, title, interest, and claim in and to that property:

1.    All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the wife or subject to her sole control.

*IMMO Blunck*
*Final Decree of Divorce*
*Page 10*

VOL584 PG 0666

000184
000045

2.    All clothing, jewelry, and other personal effects in the possession of the wife or subject to her sole control.

3.    The funds on deposit, together with accrued but unpaid interest, in the following banks, savings institutions, or other financial institutions:

    a.    Wells Fargo joint checking account number ending in **6681;

    b.    $40,291.00 in Wells Fargo High Yield Savings account in Tedde Blunck's name, account number ending in **2983, to be paid by Tedde R. Blunck to Cathy A. Blunck by check or money order on or before the date of entry of this *Final Decree of Divorce*. The Court finds that this sum of money was in existence in this bank account on the date the judgment was rendered;

    c.    Broadway Bank checking account in Cathy A. Blunck's name, account number ending in **2199; and

    d.    Greater Texas savings account in Cathy A. Blunck's name, account number ending in **2214.

4.    The sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of Cathy A. Blunck's past, present, or future employment, and all individual retirement accounts, simplified employee pensions, annuities, and variable annuity life insurance benefits including but not limited to:

    a.    Nationwide Annuity Contract number ending in **2740;

    b.    Ora Pharma ER 401k; and

    c.    Ora Pharma Health Savings Account.

5.    FIFTY-FIVE PERCENT (55%) of Tedde R. Blunck's benefits in Parsons Brinckerhoff Inc. Exec Def Comp Plan (DCOMP I), plan no. 154360, arising out of Tedde R. Blunck's employment with Parsons Brinckerhoff, Inc. to be paid as set out below.

6.    FIFTY-FIVE PERCENT (55%) of Tedde R. Blunck's benefits in Parsons Brinckerhoff Inc. Exec Def Comp Plan (DCOMP II), plan no. 154581, arising out of Tedde R. Blunck's employment with Parsons Brinckerhoff, Inc. to be paid as set out below.

VOL 584 PG 0667

7.    100% of Tedde R. Blunck's retirement benefits in Parsons Brinckerhoff Group Inc. Retirement Savings Plan, c/o T. Rowe Price, arising out of Tedde R. Blunck's employment with Parsons Brinckerhoff Group Inc. as of 16 August 2012, together with any interest, dividends, gains, or losses on that amount arising since that date and more particularly defined in a Qualified Domestic Relations Order signed by the Court on the day this *Final Decree of Divorce* is signed. In determining the division of the parties' estate, the Court has considered the tax effect relating to the retirement benefits Cathy Blunck is to receive, as authorized under the Texas Family Code.

8.    All policies of life insurance (including cash values) insuring Cathy A. Blunck's life.

9.    The MTL Insurance Company life insurance policy number ending in 7882A, insuring R. Antoine.

10.    The 2007 Ford Expedition motor vehicle, vehicle identification number 1FMFK19567LA95287, together with all prepaid insurance, keys, and title documents.

11.    The Duck Boat, Motor, and Trailer duck motor vehicle, vehicle identification number 1MDARER19RD678273, together with all prepaid insurance, keys, and title documents.

12.    ONE HUNDRED AND NINE THOUSAND TWO HUNDRED AND FORTY-SEVEN AND NO/100 DOLLARS ($109,247.00) payable by Tedde R. Blunck to Cathy A. Blunck according to the terms outlined below. The Court finds that this amount is necessary to achieve a just and right division of community property.

13.    NINETEEN THOUSAND AND NO/100 DOLLARS ($19,000.00) payable by Tedde R. Blunck to Cathy A. Blunck on or before the date of entry of this *Final Decree of Divorce* by cashier's check or money order. The Court finds that this sum of money was in existence in Tedde R. Blunck's possession on the date the judgment was rendered.

14.    SIXTY-SIX THOUSAND FOUR HUNDRED THIRTY NINE AND NO/100 DOLLARS ($66,439.00) payable by Tedde R. Blunck to Cathy A. Blunck on or within 30 days of signing of the *Final Decree of Divorce* by cashier's check or money order. The Court finds that this amount is necessary to achieve a just and right division of community property.

*IMMO Blunck*
*Final Decree of Divorce*
*Page 12*

000186
000047

15.     The following travel and hotel award benefits:

    a.    American Aadvantage account number ending in **4974;

    b.    Delta account number ending in **6710;

    c.    World Points account number ending in **5588;

    d.    Hyatt Gold account number ending in **082F;

    e.    50% of Gold Delta Sky Miles (80,166 miles) account number ending **1008; and

    f    Chase Freedom account number ending in **0907.

Tedde R. Blunck shall pay the cost of transferring the 80,166 miles in the Gold Delta Sky Miles into an account for Cathy A. Blunck.

16.     The contents of the storage units no. 215 and 216, located in Dallas, Texas.

17.     An undivided one half (½) interest in timber and mineral interests on the property located at ABS A060 Mary Hayes, Tract, 41-5000, 406.93 (+1.55 AC in Rd.) acres, and more commonly known as 1347 CR 4510 Pittsburg, Texas.

18.     Two (2) crypts in Calvary Hill Cemetery, Dallas, Texas.

19.     FIVE THOUSAND AND NO/100 DOLLARS ($5,000.00) to be paid by Tedde R. Blunck to Cathy A. Blunck on or before the date of entry of this *Final Decree of Divorce* by cashier's check or money order for waste of community assets.

20.     Four trophy heads (Impala, Gemsbock, Blesbok, and Bushbuck and 1 zebra skin in the possession of Tedde R. Blunck.

**Division of Debt**

<u>Debts to Tedde R. Blunck</u>

IT IS ORDERED AND DECREED that Tedde R. Blunck shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold Cathy A. Blunck and her property harmless from any failure to so discharge, these items:

VOL 584 PG 0669

000187
000048

1.    The balance due, including principal, interest, tax, and insurance escrow, on the promissory note executed by Tedde R. Blunck and Cathy A. Blunck, in the original principal sum of $417,000.00, dated 5 November 2007, payable to First Horizon Home Loans, and secured by deed of trust on the real property awarded in this decree to Tedde R. Blunck, which is recorded according to the map or plat of record in Volume 12, Pages 151-156 of the Plat Records of Hays County, Texas

2.    The balance due, including principal, interest, tax, and insurance escrow, on the promissory note executed by Cathy A. Blunck and Tedde R. Blunck, in the original principal sum of $450,000.00, dated 7 October 2010, payable to Capital Farm Credit, FLCA of Bryan, Texas, and secured by deed of trust on the real property awarded in this decree to Tedde R. Blunck, which is recorded in the Deed of Trust Records of Camp County, Texas.

3.    The balance due, including principal, interest, and all other charges, on the promissory note payable to Ford Motor Company and given as part of the purchase price of and secured by a lien on the 2008 Ford F150 motor vehicle awarded to Tedde R. Blunck.

4.    The balance due, including principal, interest, and all other charges, on the promissory note payable to Ford Motor Company and given as part of the purchase price of and secured by a lien on the 2012 Ford Escape motor vehicle awarded to Tedde R. Blunck.

5.    Any outstanding debts and/or balances due any credit card accounts in the name of Tedde R. Blunck, including but not limited to the following:

   a.    Debt owed to Bank of America Visa, account number ending in **3885;
   b.    Debt owed to Bank of America American Express, account number ending in **1499;
   c.    Debt owed to Chase Marriott Visa, account number ending in **4432;
   d.    Debt owed to GE Money Bank Visa, account number ending in **6535;
   e.    Debt owed to Costco American Express, account number ending in **1005;
   f.    Debt owed to Costco American Express, account number ending in **1001;
   g.    Debt owed to CitiAdvantage, account number ending in **7921; and

*IMMO Blunck*
*Final Decree of Divorce*
*Page 14*

VOL 584 PG 0670

h.    Debt owed to Gold Delta American Express, account number ending in **1008.

6.    All debts, charges, liabilities, and other obligations incurred solely by Tedde R. Blunck from and after 30 May 2011 unless express provision is made in this decree to the contrary.

7.    The sum of THREE THOUSAND FOUR HUNDRED SIXTY-TWO AND 44/100 DOLLARS ($3,462.44) to Cathy A. Blunck for temporary support due and owing under the *Temporary Orders* of 20 October 2011 to be paid by Tedde R. Blunck to Cathy A. Blunck by money order or cashier's check on or before 6 September 2012. Cathy A. Blunck acknowledges this sum has been paid.

8.    All encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the real and personal property awarded to Tedde R. Blunck in this decree unless express provision is made in this decree to the contrary.

9.    The sum of THIRTY-SIX THOUSAND EIGHT HUNDRED FORTY-SIX AND NO/100 DOLLARS ($36,846.00) for attorneys' fees, court costs, accounting fees, expert witness fees, appraisal fees, deposition costs, court reporter fees, and other expenses incurred by or on behalf of Cathy A. Blunck in connection with this cause for divorce owing to Barrett and Coble, to be paid as set out below.

10.    Any and all attorneys' fees, court costs, accounting fees, expert witness fees, appraisal fees, deposition costs, court reporter fees, and all other expenses incurred by or on behalf of Tedde R. Blunck in connection with this cause for divorce, including without limitation all amounts owing to Noelke English Maples St. Leger Blair.

11.    The sum of FIVE THOUSAND AND NO/100 DOLLARS ($5,000.00) to be paid by Tedde R. Blunck to Cathy A. Blunck on or before the date of entry of this *Final Decree of Divorce* by money order or cashier's check for waste of community assets.

12.    The sum of ONE HUNDRED NINE TWO HUNDRED AND FORTY SEVEN AND NO/100 DOLLARS ($109,247.00) to Cathy A. Blunck, to be paid as set out below. The Court finds that this amount is necessary to achieve a just and right division of community property.

13.    The sum of NINETEEN THOUSAND AND NO/100 DOLLARS ($19,000.00) to Cathy A. Blunck, to be paid on or before the date of entry of this *Final*

VOL584 PG0671

000189

*Decree of Divorce* by money order or cashier's check.

14.    The sum of SIXTY-SIX THOUSAND FOUR HUNDRED THIRTY NINE AND NO/100 DOLLARS ($66,439.00) payable by Tedde R. Blunck to Cathy A. Blunck within 30 days of signing of this *Final Decree of Divorce* by cashier's check or money order. The Court finds that this amount is necessary to achieve a just and right division of community property.

15.    All debts not specifically named above in the sole name of Tedde R. Blunck.

16.    The tax liability and preparation fees for Cathy A. Blunck's 2011 federal income tax return.

17.    All state and federal income tax liability for Tedde R. Blunck.

18.    All debts  not specifically named above in the sole name of Tedde R. Blunck.

Debts to Cathy A. Blunck

IT IS ORDERED AND DECREED that Cathy A. Blunck shall pay, as a part of

the division of the estate of the parties, and shall indemnify and hold Tedde R. Blunck

and his property harmless from any failure to so discharge, these items:

1.    The balance due, including principal, interest, and all other charges, on the promissory note payable to Ford Motor  and given as part of the purchase price of and secured by a lien on the 2007 Ford Expedition motor vehicle awarded to Cathy A. Blunck.

2.    Any outstanding debts and/or balances due any credit card accounts in the name of Cathy A. Blunck, including but not limited to the following:

    a.    Debt owed to Chase Freedom account number ending in **0907;
    b.    Debt owed to World Points account number ending in **5588; and
    c.    Debt owed to Bank of America Master Card account number ending in **9735.

*IMMO Blunck*
*Final Decree of Divorce*
*Page 16*

000190
000051

3.    All debts, charges, liabilities, and other obligations incurred solely by Cathy A. Blunck from and after 30 May 2011 unless express provision is made in this decree to the contrary.

4.    All encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due for the tax year 2012, on the real and personal property awarded to Cathy A. Blunck in this decree unless express provision is made in this decree to the contrary.

5.    All debts not specifically named above in the sole name of Cathy A. Blunck.

*Constructive Fraud on the Community*

The Court finds that Petitioner, Tedde R. Blunck, has committed constructive fraud on the community and on Cathy A. Blunck by engaging in a series of transactions, including but not limited to the purchase of certain real property located in Pittsburg, Texas, in the joint names of himself and a third party, Paulette Schafer, with whom he has a romantic relationship. The Court finds that the property was purchased in violation of the Hays County Standing Order Regarding Children, Property and Conduct of the Parties and in violation of his fiduciary duty owed to the community and to his wife, Cathy A. Blunck. The Court further finds that this single transaction has resulted in damage to the community in the amount of $66,439.00. The Court further finds that no sums of money were actually paid by Paulette Schafer for the purchase or improvement of this property. The Court therefore ORDERS that the entirety of the value of the property be reconstituted to the community estate. The Court further finds that in order to reach a just and right division of the community estate that the entire amount should be

VOL1584 PG 0673

000191

awarded to Respondent, Cathy A. Blunck and that the payment of such amount should be secured against real property awarded to the Petitioner, Tedde R. Blunck. IT IS THEREFORE ORDERED AND DECREED that Cathy A. Blunck do have and recover judgment against Tedde R. Blunck in the amount of $66,439.00 for which let execution issue. IT IS FURTHER ORDERED that Tedde R. Blunck shall execute a Real Estate Lien Note in the amount of $66,439.00, and said Real Estate Lien Note shall be secured by a Deed of Trust to Secure Owelty of Partition against the property located in Camp County, Texas, described as:

> ABS A060 Mary Hayes, Tract, 41-5000, 406.93 (+1.55 AC in Rd.) acres, Camp County, Texas (containing a computed area of 408.48 acres with 1.55 acres in a public road, leaving a net area of 406.93 acres)

The Court further ORDERS that this Real Estate Lien Note be paid within 30 days after the signing of the *Final Decree of Divorce*. The terms of the Real Estate Lien Note shall be that it is payable in one lump sum 30 days after the signing of the *Final Decree of Divorce*. Cathy A. Blunck may enforce this by foreclosure on the above property or by any remedy available for the enforcement of judgments.

*Waste of Community Assets*

The Court finds that Tedde R. Blunck has wasted community assets and the community estate should be reconstituted to include the amounts wasted.

IT IS FURTHER ORDERED that Tedde R. Blunck shall pay the sum of $5,000.00 to Cathy A. Blunck for community funds wasted by him on or before the date of entry of

VOL1584 PG0674

*IMMO Blunck*
*Final Decree of Divorce*
*Page 18*

this Final Decree of Divorce by cashier's check or money order.

*Notice*

IT IS ORDERED AND DECREED that each party shall send to the other party, within three days of its receipt, a copy of any correspondence from a creditor or taxing authority concerning any potential liability of the other party.

*Owelty of Partition*

The Court, having awarded the 1347 CR 4510 Pittsburg, Texas property and the 1152 Little Bear Road, Buda, Texas property of the parties to Petitioner, finds that it is necessary to impose an encumbrance for owelty of partition against the 1347 CR 4510 Pittsburg, Texas property to secure the payment of the debt resulting from the award.

IT IS ORDERED AND DECREED that an encumbrance for owelty of partition is imposed against the entirety of the property described as follows:

> ABS A060 Mary Hayes, Tract, 41-5000, 406.93 (+1.55 AC in Rd.) acres, Camp County, Texas (containing a computed area of 408.48 acres with 1.55 acres in a public road, leaving a net area of 406.93 acres)

The purpose of the encumbrance is to secure the payment of the debt of Petitioner in favor of Respondent of ONE HUNDRED NINE THOUSAND TWO HUNDRED FORTY-SEVEN AND NO/100 Dollars ($109,247.00), resulting from the award of the property in this divorce proceeding. The debt shall bear interest at 5% percent per year and shall be payable as follows: to be paid in monthly payments of $1,158.73 each, due on the 1st day of the month beginning the first day of the month after this Final Decree of

VOL584 PG0675

Divorce is entered and continuing on the 1ˢᵗ of each month thereafter, and continuing for ten years until principal and interest have been paid. To further evidence the debt, Petitioner is ORDERED to sign a Lien Note payable to Respondent in the amount of the debt specified above and payable according to the terms specified above. Petitioner is FURTHER ORDERED to sign a deed of trust to secure payment of the debt resulting from the owelty of partition.

This debt is part of the division of community property between the parties and shall not constitute or be interpreted to be any form of spousal support or alimony. The Court finds that this debt is necessary for the purpose of achieving a just and right division of the community property.

*Judgment and Lien*

For the purpose of a just and right division of property made in this decree, IT IS FURTHER ORDERED AND DECREED that Respondent, Cathy A. Blunck, is awarded judgment of ONE HUNDRED NINE THOUSAND TWO HUNDRED FORTY-SEVEN AND NO/100 Dollars ($109,247.00) against Petitioner, Tedde R. Blunck, payable in accordance with the terms listed above, with interest at 5% percent per year compounded annually from the date of judgment, for which let execution issue. The Court further finds that the payment of such amount should be secured against real property awarded to the Petitioner, Tedde R. Blunck. IT IS THEREFORE ORDERED AND DECREED that Cathy A. Blunck do have and recover judgment against Tedde R. Blunck in the amount

*IMMO Blunck*
*Final Decree of Divorce*
*Page 20*

000194
000055

of ($109,247.00) for which let execution issue.

This judgment is part of the division of community property between the parties

and shall not constitute or be interpreted to be any form of spousal support or alimony.

*Cathy A. Blunck Residing at the 1152 Little Bear Road, Buda, Texas Residence*

IT IS ORDERED that Cathy A. Blunck may continue to have exclusive use of the

residence located at 1152 Little Bear Road, Buda, Texas until 30 days after all documents

necessary to effectuate this *Final Decree of Divorce* are executed and the following sums

owed to Cathy A. Blunck by Tedde R. Blunck are paid:

1. $40,291.00 to be paid from the Wells Fargo account ending in 2983;

2. $3,462.44 for money owed under the Temporary Orders; Cathy A. Blunck

    acknowledges the payment of this amount.

3. $19,000.00 for the purpose of achieving a just and right division;

4. $36,846.00 for attorney's fees to be paid to Barrett and Coble;

5. $66,439.00 to achieve a just and right division of property;

6. $30,000.00 for appellate attorney's fees (if Tedde R. Blunck files a Notice

    of Appeal or Motion for New Trial); and

7. $5,000.00 for waste committed by Tedde R. Blunck for a total of

    $197,576.00 (if Tedde R. Blunck files a Notice of Appeal or Motion for

    New Trial) or $167,576.00 (if Tedde R. Blunck does not file a Notice of

    Appeal or Motion for New Trial).

*IMMO Blunck*
*Final Decree of Divorce*
*Page 21*

VOL584 PG 0677

000195
000056

IT IS FURTHER ORDERED that Tedde R. Blunck shall timely pay all costs associated with the upkeep and maintenance of the residence, including but not limited to the current levels of yard maintenance, pool maintenance, utilities (water and electricity), reasonable repairs, property taxes, and vehicle payment.

The following amounts are due and payable under the temporary orders and/or subsequent to the trial $2,896.81. These are due as of the date of entry of the decree. Cathy A. Blunck shall not be required to surrender possession of the residence until these amounts are paid.

### Attorney's Fees

The Court finds that Cathy A. Blunck has incurred thirty six thousand eight hundred and forty-six and no/100 dollars ($36,846.00) as attorney's fees, expert fees, expenses, and costs, which were necessary as support for Cathy A. Blunck. IT IS ORDERED that good cause exists to award a judgment to Barrett and Coble, Attorneys at Law, in the amount of a thirty six thousand eight hundred and forty-six and no/100 dollars ($36,846.00) for attorney's fees, expert fees, expenses, and costs, with interest at six percent (6%) percent per year compounded annually from the date this *Final Decree of Divorce* is signed until paid. The judgment, for which let execution issue, is awarded against Tedde R. Blunck, and Tedde R. Blunck is ORDERED to pay the fees, expenses, costs, and interest to Barrett and Coble at 7200 North MoPac Expressway, Suite 440, Austin, Texas 78731 by cash, cashier's check, or money order on or before 30 days after

this *Final Decree of Divorce* is signed. Barrett and Coble may enforce this judgment for fees, expenses, and costs in the attorney's own name by any means available for the enforcement of a judgment for debt.

IT IS FURTHER ORDERED AND DECREED that Cathy A. Blunck is awarded a judgment of $30,000.00 against Tedde R. Blunck for attorney's fees on appeal for the benefit of her attorneys, Barrett and Coble, Attorneys at Law, together with all expenses. The judgment shall bear interest at 6 percent per year compounded annually from the date of judgment, for which let execution issue. This sum shall be due 10 days after Tedde R. Blunck files a Notice of Appeal or a Motion for New Trial and shall be paid to Barrett and Coble, 7200 North MoPac Expressway, Suite 440, Austin, Texas, 78731 by cash, cashier's check or money order.

### Payment of Benefits in Parsons Brinckerhoff Inc. Exec Def Comp Plan

IT IS ORDERED that Cathy A. Blunck is entitled to receive 55% of all post-tax funds received by Tedde R. Blunck through Tedde R. Blunck's benefits in Parsons Brinckerhoff Inc. Exec Def Comp Plan (DCOMP I), plan no. 154360 and Parsons Brinckerhoff Inc. Exec Def Comp Plan (DCOMP II), plan no. 154581 if, as, and when received by Tedde R. Blunck. IT IS ORDERED that Tedde R. Blunck shall pay Cathy A. Blunck's portion to her by check, cashier's check or money order at her last known address within 3 days of his receipt of the funds. IT IS FURTHER ORDERED that Tedde R. Blunck is appointed the constructive trustee for Cathy A. Blunck for any funds

*IMMO Blunck*
*Final Decree of Divorce*
*Page 23*

received by him under these plans and Tedde R. Blunck shall bear 100% of the tax liability for any money received under these plans. It is ORDERED that Tedde R. Blunck shall provide Cathy A. Blunck complete written disclosure of the amount he receives if, as and when he receives it.

This provision is part of the division of community property between the parties and shall not constitute or be interpreted to be any form of spousal support or alimony.

*Tax Provisions*

Liability for Federal Income Taxes for Prior Year

IT IS ORDERED AND DECREED that Tedde R. Blunck shall be solely responsible for all federal income tax liabilities of the parties from the date of marriage through December 31, 2011, and shall timely pay any deficiencies, assessments, penalties, or interest due thereon and shall indemnify and hold Cathy A. Blunck and her property harmless therefrom unless such additional tax, penalty, and/or interest resulted from Cathy A. Blunck's omission of taxable income or claim of erroneous deductions. In such case, the portion of the tax, penalty, and/or interest relating to the omitted income or claims of erroneous deductions shall be paid by Cathy A. Blunck.

IT IS ORDERED AND DECREED that if a refund is made for overpayment of taxes for any year during the parties' marriage through December 31 of 2011, each party shall be entitled to one-half of the refund, and the party receiving the refund check is designated a constructive trustee for the benefit of the other party, to the extent of one-

VOL 584 PG 0680

000198
000059

half of the total amount of the refund, and shall pay to the other party one-half of the total amount of the refund check within five days of receipt of the refund check. Either party is ORDERED to endorse a refund check on presentation by the other party.

IT IS ORDERED AND DECREED Tedde R. Blunck is ORDERED to pay $185.00 to Cathy A. Blunck for preparation of Cathy A. Blunck's returns for the tax year 2011, and shall timely pay 100 percent of any liability shown on or Cathy A. Blunck's 2011 federal income tax returns.

Treatment/Allocation of Community Income for Year of Divorce

For the purposes of determining income tax liability, the parties hereby partition 100 percent of the income, gain, loss, and deductions attributable to a party from that party's individual labor, that party's individual efforts, or the property awarded in this agreement to that party, as his or her sole and separate property, as if that party had been single and unmarried from January 1, 2012, through the date of divorce. The partition further assigns to a party any exemptions, exclusions, estimated tax payments, and withholdings made by that party or for his or her benefit from January 1, 2012, through the date of divorce, as if the same were that party's separate property. IT IS ORDERED AND DECREED that, for purposes of determining income tax liability, any property awarded to a party in this decree shall be deemed to be partitioned to that party and have been that party's separate property as of January 1, 2012, and thereafter. The parties further agree and IT IS ORDERED AND DECREED that any tax payments and any

VOL 584 PG 0681

payments that are tax deductible are assigned to the party who made those payments.

IT IS ORDERED AND DECREED that for the calendar year 2012, each party will file an individual income tax return in accordance with the Internal Revenue Code.

IT IS ORDERED AND DECREED that Cathy A. Blunck shall report 100 percent of her income, withholding, prepayments, and deductions and none of Tedde R. Blunck's income, withholding, prepayments, and deductions. Cathy A. Blunck shall be entitled to receive 100 percent of any refund for which she might be entitled on her 2012 federal income tax return. Cathy A. Blunck shall pay 100 percent of any liability shown on her 2012 federal income tax return.

IT IS ORDERED AND DECREED that Tedde R. Blunck shall report 100 percent of his income, withholding, prepayments, and deductions and none of Cathy A. Blunck's income, withholding, prepayments, and deductions. Tedde R. Blunck shall be entitled to receive 100 percent of any refund for which he might be entitled on his 2012 federal income tax return. Tedde R. Blunck shall pay 100 percent of any liability shown on his 2012 federal income tax return. IT IS FURTHER ORDERED that Tedde Blunck will report any withdrawals he made from his Parsons Brinckerhoff Group Inc. Retirement Savings Plan, c/o T. Rowe Price, including but not limited to the $130,000.00 withdrawal by Tedde R. Blunck on April 3, 2012, on his federal income tax return and have sole responsibility for any tax liability associated with those withdrawals.

VOL5584 PG 0682

IT IS ORDERED AND DECREED that for calendar year 2012, each party shall indemnify and hold the other party and his or her property harmless from any tax liability associated with the reporting party's individual tax return for that year unless the parties have agreed to allocate their tax liability in a manner different from that reflected on their returns.

IT IS ORDERED AND DECREED that each party shall furnish such information to the other party as is requested to prepare federal income tax returns for 2012 within thirty days of receipt of a written request for the information, and in no event shall the available information be exchanged later than March 1, 2013. As requested information becomes available after that date, it shall be provided within ten days of receipt.

IT IS ORDERED AND DECREED that each party shall preserve for a period of seven years from the date of divorce all financial records relating to the community estate. Each party is ORDERED to allow the other party access to these records to determine acquisition dates or tax basis or to respond to an IRS examination within five days of receipt of written notice from the other party. Access shall include the right to copy the records.

IT IS ORDERED AND DECREED that all payments made to the other party in accordance with the allocation provisions for payment of federal income taxes contained in this *Final Decree of Divorce* are not deemed income to the party receiving those payments but are part of the property division and necessary for a just and right division

*IMMO Blunck*
*Final Decree of Divorce*
*Page 27*

VOL 584 PG 0683

000201
000062

of the parties' estate.

IT IS ORDERED AND DECREED that any assets of the parties not awarded or divided by this *Final Decree of Divorce* are subject to future division as provided in the Texas Family Code.

IT IS FURTHER ORDERED AND DECREED, as a part of the division of the estate of the parties, that any community liability not expressly assumed by a party under this decree is to be paid by the party incurring the liability, and the party incurring the liability shall indemnify and hold the other party and his or her property harmless from any failure to so discharge the liability.

*Confirmation of Separate Property*

IT IS ORDERED AND DECREED that the following described property is confirmed as the separate property of Cathy A. Blunck:

a.   Jackson National Life Insurance Perspective II Fixed & Variable Annuity, policy number ending in ***876A;
b.   Miscellaneous jewelry
c.   50% of Terrell Enterprises, Inc.
d.   15.1426% of Selma Ventures, Ltd.
d.   50% of Mar/Max, Inc.

*Credit Cards*

IT IS ORDERED AND DECREED that Cathy A. Blunck is granted exclusive use of the following credit cards and Tedde R. Blunck is enjoined and prohibited from using or incurring any indebtedness on those cards:

a.   CitiAdvantage account ending in **7921.

VOL584 PG 0684

000202
000063

*Notices*

It is ORDERED and DECREED that any notice to be given under this decree by either party to the other shall be in writing and may be effected by registered or certified mail, return receipt requested, unless specified otherwise herein. Notice to Tedde R. Blunck will be sufficient if made or addressed to the following:

Tedde R. Blunck
502 Quitman Street
Pittsburgh, Texas 75686

and to Cathy A. Blunck if made and addressed to the following:

Cathy A. Blunck
1152 Little Bear Road
Buda, Texas 78610

Each party may change the address for notice to him or her by giving written notice of that change to the other in accordance with the provisions of this paragraph.

*Transfer and Delivery of Property*

IT IS ORDERED AND DECREED that Tedde R. Blunck and Cathy A. Blunck shall execute all instruments necessary to effectuate this *Final Decree of Divorce*, including any deeds, notes, powers of attorney, bills of sale, assignments, consents to changes of beneficiary of insurance policies, tax returns, and other documents, and that Tedde R. Blunck and Cathy A. Blunck shall each have all appropriate and necessary writs, execution, and process, as many and as often as is necessary to accomplish the execution and final disposition of this judgment. The parties shall cooperate to insure that

VOL 584 PG 0685

all transfers of community and separate property funds, modifications of signatories to accounts, occur within fifteen (15) days from the date this *Final Decree of Divorce* is approved by the Court. Cathy A. Blunck's attorneys, Barrett and Coble, shall draft all necessary documentation to effectuate the transfers of community and separate property.

Tedde R. Blunck is ORDERED to execute, have acknowledged, and deliver to John Barrett these instruments within 15 days of receipt:

1. Deed of Trust to Secure Owelty of Partition on the property located at ABS A060 Mary Hayes, Tract, 41-5000, 406.93 (+1.55 AC in Rd.) acres, Camp County, Texas and more commonly known as 1347 CR 4510 Pittsburg, Texas;
2. Real Estate Lien Note;
3. Deed of Trust to Secure Assumption on the 1152 little Bear Road, Buda Texas property;
4. Deed of Trust with Owelty Lien;
5. Power of attorney to transfer the 2007 Ford Expedition motor vehicle;
6. Power of attorney to transfer the Duck boat, motor and trailer; and
7. Mineral/timber deeds.

Cathy A. Blunck is ORDERED to execute, have acknowledged, and deliver to Tedde R. Blunck these instruments within 15 days of receipt:

1. Special Warranty Deed on the property located at 1152 Little Bear Road, Buda, Texas;
2. Special Warranty Deed with Encumbrance for Owelty of Partition for the property located at ABS A060 Mary Hayes, Tract, 41-5000, 406.93 (+1.55 AC in Rd.) acres, Camp County, Texas and more commonly known as 1347 CR 4510 Pittsburg, Texas; and
3. Deed of Trust with Owelty Lien.

This decree shall serve as a muniment of title to transfer ownership of all property awarded to any party in this *Final Decree of Divorce*.

*IMMO Blunck*
*Final Decree of Divorce*
*Page 30*

VOL 584 PG 0686

## Direction to Deliver Property

Tedde R. Blunck is ORDERED to deliver to Richard Antoine, at 1006 Hot Springs Valley, Buda, Texas 78610, in good condition, on or before 6 September 2012 the following items:

1.      Four heads (Impala, Gemsbock, Blesbok, and Bushbuck); and
2.      1 zebra skin

## *Court Costs*

IT IS ORDERED AND DECREED that court costs shall be paid by the party that incurred them.

## *Spousal Support*

IT IS ORDERED that Cathy A. Blunck's request for spousal support is DENIED.

## *Tedde R. Blunck's 1st Amended Petition for Divorce*

IT IS ORDERED that relief requested in Tedde R. Blunck's *1st Amended Petition for Divorce* is DENIED.

## *Resolution of Temporary Orders*

The Court finds that Tedde R. Blunck owes the sum of $2,896.81 to Cathy A. Blunck pursuant to the temporary orders and orders made by the Court during trial concerning costs associated with the upkeep and maintenance of the residence, including but not limited to the current levels of yard maintenance, pool maintenance, utilities (water and electricity), reasonable repairs, and property taxes. IT IS THEREFORE ORDERED AND DECREED that Cathy A. Blunck do have and recover judgment

VOL584 PG 0687

against Tedde R. Blunck in the amount of $2,896.81 for which let execution issue.

*Discharge from Discovery Retention Requirement*

IT IS ORDERED AND DECREED that the parties and their respective attorneys are discharged from the requirement of keeping and storing the documents produced in this case in accordance with rule 191.4(d) of the Texas Rules of Civil Procedure.

*Successors and Assigns*

It is ORDERED AND DECREED that this decree, except as otherwise expressly provided herein, will be binding on, and will inure to the benefit of, the respective legatees, devisees, heirs, executors, administrators, assigns, and successors in interest of the parties.

*Indemnification*

Each party represents and warrants that he or she has not incurred any outstanding debt, obligation, or other liability on which the other party is or may be liable, other than those described in this decree. Each party agrees and IT IS ORDERED that if any claim, action, or proceeding is hereafter initiated seeking to hold the party not assuming a debt, an obligation, a liability, an act, or an omission of the other party liable for such debt, obligation, liability, act or omission of the other party, that other party will, at his or her sole expense, defend the party not assuming the debt, obligation, liability, act, or omission of the other party against any such claim or demand, whether or not well founded, and will indemnify the party not assuming the debt, obligation, liability, act, or

*IMMO Blunck*
*Final Decree of Divorce*
*Page 32*

VOL584 PG 0688

omission of the other party and hold him or her harmless from all damages resulting from the claim or demand.

Damages, as used in this provision, includes any reasonable loss, cost, expense, penalty, and other damage, including without limitation attorney's fees and other costs and expenses reasonably and necessarily incurred in enforcing this indemnity.

IT IS ORDERED that the indemnifying party will reimburse the indemnified party, on demand, for any payment made by the indemnified party at any time after the entry of the divorce decree to satisfy any judgment of any court of competent jurisdiction or in accordance with a bona fide compromise or settlement of claims, demands, or actions for any damages to which this indemnity relates.

### Clarifying Orders

Without affecting the finality of this *Final Decree of Divorce*, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

### Relief Not Granted

IT IS ORDERED AND DECREED that all relief requested in this case and not expressly granted is denied. This is a final judgment, for which let execution and all writs and processes necessary to enforce this judgment issue. This judgment finally disposes of all claims and all parties and is appealable.

VOL584 PG0689

*IMMO Blunck*
*Final Decree of Divorce*
*Page 33*

*Undisclosed Assets*

It is, therefore, ORDERED AND DECREED that any property not disclosed by Tedde R. Blunck in this proceeding, which property is later determined to be in the possession of or under the control of Tedde R. Blunck, shall be awarded to Cathy A. Blunck. It is ORDERED AND DECREED that Tedde R. Blunck is designated as the constructive trustee of the property for the benefit of Cathy A. Blunck.

It is ORDERED AND DECREED, as a part of the division of the estate of the parties that any community liability not expressly awarded to a party under the terms of this Decree is to be paid by the party incurring the liability.

*Date of Judgment*

This divorce judicially PRONOUNCED AND RENDERED in court at in Hays County, Texas, on 16 August 2012, and further noted on the court's docket sheet on the same date, but signed on _October 24_ 2012.

_____
BILL HENRY
JUDGE PRESIDING

VOL 584 PG 0690

**APPROVED AS TO FORM ONLY:**

BARRETT AND COBLE
7200 North MoPac Expressway, Suite 440
Austin, Texas 78731
512-482-8193
512-482-0525 facsimile


By:_____
    John Barrett
    State Bar No. 01816300
    Kathleen Debra Coble
    State Bar No. 24049063


Tedde R. Blunck
502 Quitman Street
Pittsburgh, Texas 75686
903-855-8460


By:_____
    Tedde R. Blunck, Pro Se

VOL584 PG 0691

000209
000070

# The Turnover Statute

### 31.002 Collection Of Judgment Through Court Proceeding.

(a) A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that:

  (1) cannot readily be attached or levied on by ordinary legal process; and

  (2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

(b) The court may:

  (1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control, together with all documents or records related to the property, to a designated sheriff or constable for execution;

  (2) otherwise apply the property to the satisfaction of the judgment; or

  (3) appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment.

(c) The court may enforce the order by contempt proceedings or by other appropriate means in the event of refusal or disobedience.

(d) The judgment creditor may move for the court's assistance under this section in the same proceeding in which the judgment is rendered or in an independent proceeding.

(e) The judgment creditor is entitled to recover reasonable costs, including attorney's fees.

(f) A court may not enter or enforce an order under this section that requires the turnover of the proceeds of, or the disbursement of, property exempt under any statute, including Section 42.0021, Property Code. This subsection does not apply to the enforcement of a child support obligation or a judgment for past due child support.

(g) With respect to turnover of property held by a financial institution in the name of or on behalf of the judgment debtor as customer of the financial institution, the rights of a receiver appointed under Subsection (b)(3) do not attach until the financial institution receives service of a certified copy of the order of receivership in the manner specified by Section 59.008, Finance Code.

(h) A court may enter or enforce an order under this section that requires the turnover of nonexempt property without identifying in the order the specific property subject to turnover.

TEX. CIV. PRAC. & REM. CODE ANN. § 31.002 (WEST 2008).

EXHIBIT B

IN THE MATTER OF §
THE MARRIAGE OF §
§
TEDDE R. BLUNCK §
AND §
CATHY A. BLUNCK §

IN THE DISTRICT COURT

22ND JUDICIAL DISTRICT

HAYS COUNTY, TEXAS

## ORDER APPOINTING RECEIVER PURSUANT TO SECTION 31.002, CIVIL PRACTICE AND REMEDIES CODE

On the date subscribed below, Cathy A. Blunck's *Motion for Post-Judgment Receivership Pursuant to Section 31.002, Civil Practice and Remedies Code* was presented to the Court.

The Court, upon taking judicial notice of the file in this cause and upon a review of the substance of Cathy A. Blunck's motion, is of the opinion and does so find that a Receiver should be appointed to take possession of and sell the leviable assets of Tedde R. Blunck (hereinafter referred to as Judgment Debtor).

Based on the pleadings, the evidence and the argument of counsel, the Court finds that the Judgment Debtor owns non-exempt property that cannot be readily attached or levied on by ordinary legal process. Notwithstanding any contrary language herein, this order does not compel turn over of Judgment Debtor's homestead, or checks for current wages or other exempt property.

It is therefore ORDERED, ADJUDGED, and DECREED by this Court that Leon Breeden, whose address is 120 W. Hopkins, Suite 102, San Marcos, Texas, 78666, 512-396-2199 (telephone), 512-754-7163 (facsimile), leon@leonbreeden.com be, and he is hereby appointed Receiver in this case pursuant to the provisions of Section 31.002 of the Texas Civil Practice and Remedies Code with the power and authority to take possession of and sell all leviable property of Judgment Debtor,

In the Matter of the Marriage of Blunck
Order on Motion for Post-Judgment Receivership
Page 1



including, but not limited to the following non-exempt property: (1) all documents or records, including financial records, related to such property that is in the actual or constructive possession or control of the Judgment Debtor; (2) all financial accounts (bank account), certificates of deposit, money-market accounts, accounts held by any third party; (3) all securities; (4) all real property, equipment, vehicles, boats, and planes; (5) all safety deposit boxes or vaults; (6) all cash; (7) all negotiable instruments, including promissory notes, drafts, and checks; (8) cause of action or choses of action; (9) contract rights, whether present or future; and (10) accounts receivable; and that all such property shall beheld in custodia legis by said Receiver as of the date of this Order. *at his office address* BH

Judgment Debtor is ORDERED to turnover to the Receiver within five (5) from Judgment Debtor's receipt of a copy of this Order: 1) the documents contained on Exhibit "A" attached hereto, together with all documents and financial records which may be requested by the Receiver; 2) all checks, cash, securities (stocks and bonds), promissory notes, documents of title, and contracts owned by or in the name of Judgment Debtor. *at his office address* BH

Judgment Debtor is ORDERED to identify and turn over to the Receiver all interests of Judgment Debtor's in any business or venture and all agreements, stock certificates and other documents pertaining to the Judgment Debtor's ownership in the business or venture within five (5) days from Judgment Debtor's receipt of a copy of this order.

This Order constitutes a Charging Order under the Texas Business Organizations Code. This Order constitutes a lien upon the Judgment Debtor's partnership interest in a partnership and the Judgment Debtor's membership interest in a limited liability company. The Receiver has the right to receive any distribution to which the Judgment Debtor would be entitled from the Judgment

In the Matter of the Marriage of Blunck
Order on Motion for Post-Judgment Receivership
Page 2

Debtor's partnership or membership interest.

Judgment Debtor is ORDERED to continue, until the Judgment in this cause is fully paid, to turnover to the Receiver at the Receiver's address all checks, cash, securities, promissory notes, documents of title, and contracts within three (3) days from the Judgment Debtor's receipt and possession of such property, if, as and when Judgment Debtor becomes in receipt and possession of any such property. Paychecks for current wages are exempt from this Order.

In addition to the powers of the Receiver set forth herein, it is ORDERED that the Receiver shall have the following rights, authority and powers with respect to the Judgment Debtor's property, to: 1) collect all accounts receivable of Judgment Debtor and all rents due to the Judgment Debtor from any tenant; 2) to change locks to all premises at which any property is situated; 3) direct the delivery of Judgment Debtor's mail and the mail of any business of the Judgment Debtor's to the Receiver's address and open all mail directed to Judgment Debtor and any business of Judgment Debtor; 4) endorse and cash all checks and negotiable instruments payable to Judgment Debtor, except paychecks for current wages; 5) hire a real estate broker to sell any real property and mineral interest belonging to the Judgment Debtor; 6) hire any person or company to move and store the property of Judgment Debtor; 7) (but not the obligation) insure any property belonging to the Judgment Debtor; 8) obtain from any financial institution, bank, credit union, credit bureau, savings and loan, title company, or any other third party, any financial records, including credit reports belonging to or pertaining to the Judgment Debtor; 9) obtain from any landlord, building owner or building manager where the Judgment Debtor or the Judgment Debtor's business is a tenant, copies of the Judgment Debtor's lease, lease application, credit application, payment history and copies of

In the Matter of the Marriage of Blunck
Order on Motion for Post-Judgment Receivership
Page 3

Judgment Debtor's checks for rent or other payments; 10) hire any person or company necessary to accomplish any right or power under this Order; and 11) take all action necessary to gain access to all storage facilities, safety deposit boxes, real property, and leased premises wherein any property of Judgment Debtor may be situated, and to review and obtain copies of all documents related to same.

In addition to the powers of the Receiver set forth herein, it is ORDERED that the Receiver shall have the right, authority and power to request and obtain from providers of utilities, telecommunications, telephone, cell phone, cable, internet, data services, internet website hosts, satellite television services, and all similar services (including Time Warner, AT&T, Verizon, Sprint, Satellite TV, Direct TV, EV1, Google, Yahoo, and internet blogs and chat rooms) compelling the production of any information regarding the defendant's payments, payment history and financial information, including account information, telephone numbers, names, service addresses, telephone numbers, IP addresses, call detail records, payment records, and bank and credit card information. This Order specifically serves as the court order required by 47 USC §551, and satisfies all obligations of the responding party to obtain or receive a court order prior to disclosing material containing personally identifiable information of the subscriber and/or customer.

Any Sheriff or Constable, and their deputies, and any other peace officer, are hereby directed and ordered to assist the Receiver in carrying out his duties and exercising his powers hereunder and prevent any person from interfering with the Receiver in taking control and possession of the property of Judgment Debtor, without the necessity of a Writ of Execution. It is ORDERED that the Receiver is authorized to direct any Constable or Sheriff to seize and sell property under a Writ of

In the Matter of the Marriage of Blunck
Order on Motion for Post-Judgment Receivership
Page 4

Page 75 of 207                                                                 000075

Execution.

It is ORDERED that Cathy A. Blunck shall have and recover of and against Judgment Debtor, judgment in the additional sum of $750.00 as additional attorney fees for the presentation of this motion. Said judgment shall bear interest at the rate of 5% per annum from the date of this order until said judgment is fully satisfied.

It is ORDERED that the Receiver has the authority to issue subpoenas for the production of documents to Judgment Debtor and to third parties.

It is ORDERED the Receiver shall not post a bond. It is further ORDERED that the Receiver shall be entitled to Receiver's fees at a rate of $300.00 per hour, which the Court finds to be the customary and usual fee for a turnover receiver. It is ORDERED that the Receiver's fee is taxed as a cost against the Judgment Debtor. The Receiver is further ORDERED to take the oath of his office.

SIGNED this _____7_____ day of February 2015.

_____
BILL HENRY
JUDGE PRESIDING

In the Matter of the Marriage of Blunck
Order on Motion for Post-Judgment Receivership
Page 5

ORDER PREPARED BY:

LAW OFFICE OF KARL E. HAYS, PLLC
2101 South IH-35, Suite 210
Austin, Texas 78741
512-476-1911
512-476-1904 facsimile


By:_____
      Karl E. Hays
      State Bar Number 09307050
      service@haysfamilylaw.com

ATTORNEY FOR CATHY A. BLUNCK

In the Matter of the Marriage of Blunck
Order on Motion for Post-Judgment Receivership
Page 6

Page 77 of 207

000077

**EXHIBIT "A" - Documents to be Delivered to Receiver**

1. Tax returns for calendar years 2012, 2013, and 2014, including all W-2 and 1099 forms. If returns have not been prepared yet for any year, then produce W-2 and 1099 forms for each year.

2. Name, address and telephone number of any tax preparer, accountant or bookkeeper employed by Tedde R. Blunck or any business or entity in which he has an interest since September 1, 2012.

3. Full statements for all bank, financial and brokerage accounts in the name of Tedde R. Blunck or any business or entity in which he has an interest for each month since September 1, 2012.

4. All life insurance policies currently in effect insuring the life of Tedde R. Blunck.

5. All checkbooks for all accounts currently held by Tedde R. Blunck and any business or entity in which he has an interest.

6. All keys for any safety deposit boxes or drawers or storage facilities currently rented by Tedde R. Blunck or any business or entity in which he has an interest.

7. All trust documents in which Tedde R. Blunck is named as a grantor or beneficiary.

8. All titles for all motor vehicles, boats, aircraft, and trailers owned by Tedde R. Blunck or any business or entity in which he has an interest.

9. All firearms owned by Tedde R. Blunck.

10. All deeds, deeds of trust, notes and leases pertaining to any real property owned by Tedde R. Blunck or any business or entity in which he has an interest.

11. All documents relating to the transfer of any property by Tedde R. Blunck since September 1, 2012.

In the Matter of the Marriage of Blunck
Order on Motion for Post-Judgment Receivership
Page 7



CAUSE NUMBER 11-1217

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| TEDDE R. BLUNCK | § | 22ND JUDICIAL DISTRICT |
| AND | § | |
| CATHY A. BLUNCK | § | HAYS COUNTY, TEXAS |

## <u>OATH OF RECEIVER</u>

I solemnly swear that I will faithfully perform and discharge the duties of receiver in this

cause and will obey the orders of the Court. I further swear that I am a qualified voter of the State

of Texas and am in fact registered to vote. My actual residence is in the State of Texas. I further

swear that I am not a party, attorney or other person interested in the action giving rise to the

judgment that is the basis for the appointment of a receiver.

Leon Breeden
Receiver

STATE OF TEXAS § 

COUNTY OF HAYS § 

I certify under my seal of office this _____ day of February 2015, that Leon Breeden personally appeared before me, the undersigned Notary Public, and signed the foregoing statement in writing before me and swore before me that the facts therein stated are true and correct.



Notary Public, State of Texas

000079

FILED this 9 day of February 2016, 9:50 a.m.
CLERK DISTRICT COURT, HAYS CO. TX
By_____Deputy

| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| TEDDE R. BLUNCK | § | 22ND JUDICIAL DISTRICT |
| AND | § | |
| CATHY A. BLUNCK | § | HAYS COUNTY, TEXAS |

## ORDER APPROVING RECEIVER'S FINAL REPORT, AUTHORIZING PAYMENT OF RECEIVER'S FINAL FEES AND EXPENSES, AND DISCHARGING RECEIVER

On this date came on to be considered the Motion to Approve Final Report of Receiver, For Payment of Receiver's Fees and Expenses, and to Discharge Receiver filed by LEON BREEDEN, who was appointed as Receiver in this case.

The Court approves the Receiver's Final Report and authorizes payment of $7,800.00 to LEON BREEDEN for the final fees and expenses of the Receiver, to be paid by CATHY A. BLUNCK. The Court reserves a final ruling on assessment of the Receiver's fees in this case as between the parties.

IT IS ORDERED that LEON BREEDEN is hereby DISCHARGES from his duties as Receiver in this case.

Signed on _February 9_____, 2015

_____
JUDGE PRESIDING

APPROVED AS TO FORM:

_____        _____
Tedd R. Blunck, Pro Se           Karl E. Hays, Attorney For Cathy Blunck
State Bar No. 00793355           State Bar No. 09307050

000080

CAUSE NO. 11-1217

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| TEDDE R. BLUNCK | § | 22ND JUDICIAL DISTRICT |
| AND | § | |
| CATHY A. BLUNCK | § | HAYS COUNTY, TEXAS |

**OBJECTION TO RECEIVER'S MOTION TO APPROVE FINAL REPORT OF RECEIVER, FOR PAYMENT OF RECEIVER'S FEES AND EXPENSES. AND TO DISCHARGE RECEIVER**

This Objection To Receiver's Motion To Approve Final Report Of Receiver, For Payment Of Receiver's Fees And Expenses. And To Discharge Receiver is brought by Tedde R. Blunck, Petitioner.   In support, Tedde R. Blunck shows:

1.      Receiver Leon Breeden submitted his Final Report of Activities to the Court and Noticed the Petitioner January 14, 2015.   Receiver Requests that his final report be approved and that he be discharged from his role as Receiver in the case.

2.      Petitioner objects only to Payment of Receiver's fees as requested and makes no objection to the Final Report or the discharge of the Receiver.

3.      Petitioner asserts that Receiver's fees are unreasonable because they are based on his hourly rate for his work as an attorney, not that of a receiver.

4.      Receivers are entitled to reasonable compensation. See Jones v. Strayhorn, 159 Tex. 421, 321 S.W.2d 290, 292-293 (1959). The value of a receiver's services determines the appropriate amount of compensation. See Bergeron v. Sessions, 561 S.W.2d 551, 554 (Tex. Civ. App.--Dallas 1977, writ ref'd n.r.e.). To determine the value of a receiver's services, courts consider the following factors:

(1) the nature, extent and value of the administered estate;

(2) the complexity and difficulty of the work;

(3) the time spent;

(4) the knowledge, experience, labor and skill required of, or devoted by the receiver;

(5) the diligence and thoroughness displayed; and

(6) the results accomplished.

Id. at 554-55. While courts should "cautiously avoid excessive or improper" fees, sufficient fees should be permitted "to induce competent persons to serve as receiver[.]" Id. at 555. We should be mindful that "[t]he apportionment of costs should be controlled by equitable principles and the ultimate success or failure of the party who requests the appointment of a receiver is not in itself controlling, but is a prime factor in determining who shall ultimately pay the costs of the receivership." Hodges v. Peden, 634 S.W.2d 8, 12 (Tex. App.--Houston [14th Dist.] 1982, no writ (citing Jones, 321 S.W.2d at 293-94).

5.      Objection to the Receiver's fees requested will be addressed in the order set out above:

(1)      the nature, extent and value of the administered estate – there were three accounts that the Receiver held in custodia legis. According to his report, he did nothing more than visit each bank and present the order of the court appointing him receiver and subsequent to that time received periodic reports from the banks.

(2)      the complexity and difficulty of the work – there was nothing complex at all in the work that the receiver did, it could have just as easily been done by any high school graduate. The Petitioner cooperated in every regard and did not interfere with Receiver in any way to complicate the Receiver's exercise of his obligations.

(3)      the time spent – the vast majority of the Receiver's time was spent traveling and eating meals. In fact the Final Report is incorrect in that total time through preparation of the report was 18.75 hours and the invoice if for 26 hours. Even if 26 is the correct number more than

half of the Receiver's time was spent in travel and meals.

(4)	the knowledge, experience, labor and skill required of, or devoted by the receiver – the only knowledge required of the Receiver was that of the accounts provided to him by the Petitioner. There was no need to use the knowledge, experience, labor and skill of an attorney in this matter and the Receiver should not be compensated at his rate as an attorney to perform legal work in complex legal matter.  "[A] receiver is not entitled to compensation at a legal rate for work which does not require legal skills." Bergeron, 561 S.W.2d at 554.

(5)	the diligence and thoroughness displayed – the Receiver did not file regular monthly reports with the Court, in fact the only two reports have been received by the Petitioner, the initial report and the final report.

(6)	the results accomplished – The Receiver held three IRA accounts in custodia legis without doing any more, as set out in the Agreed Order, signed by the Petitioner.  Absolutely no legal effort was required on the part of the Receiver at any time.

6.	Receiver has not provided any evidence at any time during the last two years that his charged rate of $300 per hour is reasonable compensation for the services provided.  In fact such a high rate for the services that were provided is highly unreasonable, especially the use of such an egregious rate for travel and meals.

7.	Tedde R. Blunck prays that the Court sustain his Objection To Receiver's Motion To Approve Final Report Of Receiver, For Payment Of Receiver's Fees And Expenses. And To Discharge Receiver and require the Receiver to, at a hearing to proffer evidence showing by a preponderance of the evidence that the fee charged for the services was reasonable, in light of the factors stated above that the court must consider.

Respectfully submitted,

TEDDE R. BLUNCK, PETITIONER
502 Quitman Street
P.O. Box 1152
Pittsburg, Texas 75686
Tel: (903) 855-8460
Fax: (903) 855-8465
tblunck@yahoo.com

By:_____
    Tedde R. Blunck, Pro Se

### Certificate of Service

I certify that a true copy of the above was served on Leon Breeden and Karl E. Hays, by e-service to their e-mail addresses on file in accordance with the Texas Rules of Civil Procedure on February 8, 2015.

_____

Tedde R. Blunck, Petitioner

Pro Se

FILED
2/9/2015 12:00:00 AM
Beverly Crumley
District Clerk
Hays County, Texas

CAUSE NO. 11-1217

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| TEDDE R. BLUNCK | § | 22ND JUDICIAL DISTRICT |
| AND | § | |
| CATHY A. BLUNCK | § | HAYS COUNTY, TEXAS |

**OBJECTION AND SPECIAL EXCEPTION TO RESPONDENT'S MOTION FOR POST JUDGMENT RECEIVERSHIP PURSUANT TO SECTION 31.002 , CIVIL PRACTICES AND REMEDIES CODE**

This Objection To Respondent's Motion For Post Judgment Receivership Pursuant To Section 31.002 , Civil Practices And Remedies Code is brought by Tedde R. Blunck, Petitioner. In support, Tedde R. Blunck shows:

1. The Motion is not sufficiently specific to comply with the requirements of the Texas Civil Practices and Remedies Code Section 31.002.

2. Petitioner did not receive adequate notice as required under the Texas Rules of Civil Procedure as Exhibit A referenced in the Motion was not provided by the Respondent.

3. The Judgment amount stated in the Motion of $242,532.00 is not supported by the text of the Final Decree of Divorce.

4. The Receiver proposed seeks unreasonable fees.

5. Although it cannot be determined in fact since Exhibit A was not provided, it is assumed that the Judgment amount alleged seeks payment for attorney's fees that were awarded in the Final Decree of Divorce for Appellate proceedings. Such fees were never incurred and the Appellate court actually denied the Respondent's request for attorney fees in the limited appellate proceedings that did take place.

6. Tedde R. Blunck prays that the Court sustain his Objection and Special Exception To Respondent's Motion For Post Judgment Receivership Pursuant To Section 31.002, Civil

---

Practices And Remedies Code and require the Respondent to provide proper notice, and restate her Motion to comply with the Texas Civil Practices and Remedies Code Section 31.002 and that the Court review Respondent's Exhibit A in light of the Final Decree of Divorce to correct any and all errors stated therein and that Receiver proposed be disqualified.

Respectfully submitted,

TEDDE R. BLUNCK, PETITIONER
502 Quitman Street
P.O. Box 1152
Pittsburg, Texas 75686
Tel: (903) 855-8460
Fax: (903) 855-8465
tblunck@yahoo.com

By:_____
     Tedde R. Blunck, Pro Se

## Certificate of Service

I certify that a true copy of the above was served on Leon Breeden and Karl E. Hays, by e-service to their e-mail addresses on file in accordance with the Texas Rules of Civil Procedure on February 8, 2015.

Tedde R. Blunck, Petitioner

Pro Se

NO. 11-1217

IMMO Tedde R. Blunck and

§
§
§
§
§
§
§
§
§

IN THE DISTRICT COURTS OF
HAYS COUNTY, TEXAS

HAYS COUNTY, TEXAS

vs.

Cathy A. Blunck

428th JUDICIAL DISTRICT

## RECEIPT OF EXHIBITS

I, the undersigned court reporter for the above District Court, do hereby tender for filing to the District Clerk of Hays County the following exhibits in the above styled and numbered cause:

Movant's

### ~~PLAINTIFF'S~~ EXHIBITS

✓1. The Tedde R. Blunck Living Trust
✓2. Sch. A & Sch B, Real & Personal Property
3. _____
4. _____
5. _____
6. _____
7. _____
8. _____
9. _____
10. _____
11. _____
12. _____

Receiver's

### ~~DEFENDANT'S~~ EXHIBITS

✓1. The Motion to Approve Final Report by Receiver, For Payment of Receiver's Fees & Expenses and to Discharge Receiver
2. 
3. 
4. 
5. 
6. 
7. 
8. 
9. 
10. 
11. 
12. 

*Diana Vargas*
**COURT REPORTER**

Hearing Date 2-9-15

I, , Beverly Crumley , District Clerk, do hereby acknowledge receipt of the above listed exhibits in the above numbered and styled cause.

.DATED this ___9___ day of ___FEBRUARY___ , 20 _15_ .

Beverly Crumley
District Clerk, Hays County

By _____

Deputy 000087

FILED
2/13/2015 7:37:13 PM
Beverly Crumley
District Clerk
Hays County, Texas

<u>CAUSE NO. 11-1217</u>

| | | |
|---|---|---|
| **IN THE MATTER OF** | § | **IN THE DISTRICT COURT** |
| **THE MARRIAGE OF** | § | |
| | § | |
| **TEDDE R. BLUNCK** | § | **22 JUDICIAL DISTRICT** |
| **AND** | § | |
| **CATHY A. BLUNCK** | § | **HAYS COUNTY, TEXAS** |

**DESIGNATION OF CLERK'S RECORD**

TO THE CLERK OF THE COURT:

Tedde R. Blunck requests the clerk of the Court to prepare a record of these proceedings, including all matters required by rule 34.5(a) of the Texas Rules of Appellate Procedure and specifically including the following documents:

1.    All documents filed or entered of record in the matter from December 1, 2014 through and including February 9, 2015, and

2.    All Exhibits filed or entered of record in the matter from December 1, 2014 through and including February 9, 2015.

Respectfully submitted,

TEDDE R. BLUNCK
502 Quitman Street
PO Box 1152
Pittsburg, Texas 75686
Tel: (903) 855-8460
Fax: (903) 855-8465
E-Mail:   tedde@bluncklaw.net

By:_____
    Tedde R. Blunck, Pro Se
    Petitioner

**Certificate of Service**

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on February 13, 2015.

_____

Tedde R. Blunck, Pro Se
Petitioner

<u>CAUSE NO. 11-1217</u>

| | | |
|---|---|---|
| **IN THE MATTER OF** | § | **IN THE DISTRICT COURT** |
| **THE MARRIAGE OF** | § | |
| | § | |
| **TEDDE R. BLUNCK** | § | **22 JUDICIAL DISTRICT** |
| **AND** | § | |
| **CATHY A. BLUNCK** | § | **HAYS COUNTY, TEXAS** |

<u>NOTICE OF APPEAL</u>

This Notice of Appeal is filed by Tedde R. Blunck, Petitioner, a party to this proceeding who seeks to alter the trial court's judgment or other appealable order.

1. The trial court, cause number, and style of this case are as shown in the caption above.

2. The judgment or order appealed from is titled ORDER APPOINTING RECEIVER PURSUANT TO SECTION 31.002, CIVIL PRACTICE AND REMEDIES CODE and was signed on February 9, 2015.

3. Tedde R. Blunck desires to appeal from all portions of the judgment.

4. This appeal is being taken to the Third Court of Appeals.

5. This notice is being filed by Tedde R. Blunck.

Respectfully submitted,

TEDDE R. BLUNCK, PRO SE
502 Quitman Street
PO Box 1152
Pittsburg, Texas 75686
Tel: (903) 855-8460
Fax: (903) 855-8465

By:_____
    Tedde R. Blunck, Pro Se
    tblunck@yahoo.com

---

**Certificate of Service**

I certify that a true copy of this Notice of Appeal was served in accordance with rule 9.5 of the Texas Rules of Appellate Procedure on each party or that party's lead counsel as follows:

Party:  Cathy A. Blunck

Lead attorney:  Karl Hays

Address of service:    Law Office of Karl Hays, 2101 South -35, Suite 210, Austin, Texas 78741

Email Address:        karlhays@haysfamilylaw.com

Method of service:    by electronic service

Date of service:   February 26, 2015

Party:  Receiver - Leon Breeden

Lead attorney: Leon Breeden

Address of service:    120 W. Hopkins, Suite 102, San Marcos, Texas 78666

Email Address:        leon@leonbreeden.com

Method of service:    by electronic service

Date of service:        February 26, 2015


_____

Tedde R. Blunck, Pro Se

# CIVIL DOCKET

11 – 1217
Filed: 06/15/2011

| Divorce No Children | 22nd District Court |

IMMO: TEDDE R. BLUNCK AND CATHY A. BLUNCK

| Plaintiff Blunck, Tedde R | Lead Attorney Pro Se |

| Defendant Blunck, Cathy A | Lead Attorney |

| DATE | ORDERS OF THE COURT |
|------|---------------------|
| AUG 3 0 2011 | Resp appeared w/atty for TO. Pets name called 3x by bailiff Ron Chadwick–NR. Sworn testimony given. H–car notes, prop policies, YMCA, prop maint & repairs, deferms, farming, Cite Visa, $5000/mo, $10000 interim attx fees. W–use of Days Cove + 2007 veh, father's wedding ring, African trophies, diamond earrings, FedEx. BKS Atty has signed order. BKS |
| 8 8 12 | H and W present and ready; opening statement by W; opening statements waived by H; H's case in chief BH |
| 8 9 12 | H's case in chief BH |
| CR 12 5 12 | Motion for New Trial heard & overruled |

| DATE | | | ORDERS OF THE COURT |
|---|---|---|---|
| 8 | 16 | 12 | H's case in chief; H rests; W's case in chief; |

W rests and closes; H closes; Final arguments;
Divorce granted; property division pursuant to exhibit
W-28; W-55%; of property; H-45% of
property; H awarded farm in Pittsburgh, Texas; H
to transfer owelty deed to W to secure note in the
amount of $105,247; Attorneys fees awarded to W
in the amount of 36,846; value of timber split 50/50;
W awarded 100% of her retirement accounts; separate
property of Terrell Enterprises, Selma Ventures and
Max/May, Inc. confirmed to W; Court finds constructive
fraud committed by H (remedy taken under advisement);
Court finds that H wasted community assets; H ordered
to ship 4 game heads to Richard Antoine w/in
21 days; W to stay in marital home until good funds
transferred into her account from H; W to cooperate
in sale of marital home in interim. BH

# CRIMINAL DOCKET

**11-1217**
Filed: 06/15/2011

| Divorce No Children | 22nd District Court |

IMMO: TEDDE R. BLUNCK AND CATHY A. BLUNCK

| Plaintiff | Lead Attorney |
| Blunck, Tedde R | Pro Se |

| Defendant | Lead Attorney |
| Blunck, Cathy A | Coble, Kathleen Debra |

| DATE | ORDERS OF THE COURT |
|------|---------------------|
| 1 2 13 | W's motion for temporary orders pending appeal; oping statements; W's case in chief. H's case in chief, closing statement. H ordered to pay $20,000 appellate attorneys fees on or before 30 days after filing notice of appeal. Leon Breeden is appointed receiver of T. Rowe Price I.R.A. account and its penurtaking subject to posting of bond in the amount of $7,000.00; H will make mortgage payments, taxes, insurance and reasonable repairs on home occupied by W; H found in contempt - remedies held in abeyance; H's motion to modify judgment taken under advisement, |

| DATE | | | ORDERS OF THECOURT |
|---|---|---|---|

W's request for receiver to be appointed for all property denied. W's attorney to prepare judgment on temporary orders on or before 14 days from 1/2/13 BH

2 / 20 / 13 — W's request for temporary orders; W's opening statement; H's opening statement; W's case in chief; W rests; W rests and closes; H rests and closes; receiver rests and closes; closing arguments; H found in direct contempt; punishment taken under advisement; Court finds willing and continuous violation of court order. H is enjoined from transferring real or personal property; W's attorney awarded 28,166 to be paid on or before 30 days from today; nunc pro tunc; H's request for master in chancery denied; W's request to reduce bond denied; H is ordered to turn over documents in aid of judgment on or before 21 days from today; W's request for turnover order granted; H ordered to pay 11,756 on or before 14 days;

000095

# CIVIL DOCKET

11-1217
Filed: 06/15/2011

| Divorce No Children | 22nd District Court |

IMMO: TEDDE R. BLUNCK AND CATHY A. BLUNCK

| Plaintiff | Lead Attorney |
| Blunck, Tedde R | Pro Se |

| Defendant | Lead Attorney |
| Blunck, Cathy A | Coble, Kathleen Debra |

| DATE | ORDERS OF THE COURT |
|------|---------------------|
| | Leon Breeden named as receiv authority expanded to include custodia logis or right to total property of marital estate. Mr. Breeden ordered to receive 11,756 from H. Attorneys fees to be paid on or before 3/6/13; Receiver ordered to take all able and necessary steps to preserve estate. DH |
| 3 5 14 | Court requests permission to proceed w/ bank contempt action from bankruptcy court; W's request to dissolve receivership denied; bond of $7,000 for receiver is dissolved; Receiver will be paid $7,000 as partial payment for fees - no objection |

from parties BH

12 18 14  W's motion to release funds granted BH

2 9 15  Receiver's motion to approve final report to receiver granted; Receiver's motion to approve fees in the amount of $7,800.00 approved; Lan Breeden appointed as receiver under the living Trust BH

BEVERLY CRUMLEY
HAYS COUNTY DISTRICT CLERK
HAYS COUNTY GOVERNMENT CENTER
712 S. STAGECOACH TRAIL, STE. 2211
SAN MARCOS, TEXAS 78666
512-393-7660

CASE NO. 11-1217
TEDDE R. BLUNCK VS. CATHY A. BLUNCK
BILL OF COSTS

| Type of Fee | Charges | Paid | By |
|---|---|---|---|
| 3rd Court of Appeals | 5.00 | 5.00 | TEDDE BLUNCK |
| Alternative Dispute Resolution System Fee | 15.00 | 15.00 | TEDDE BLUNCK |
| Issuance of Citation(s) | 8.00 | 8.00 | TEDDE BLUNCK |
| Clerk Filing Fee | 50.00 | 50.00 | TEDDE BLUNCK |
| Constable Service Fee | 65.00 | 65.00 | TEDDE BLUNCK |
| Cost of Clerk's Record (2013) | 372.00 | 372.00 | TEDDE BLUNCK |
| Cost of Clerk's Record (2015) | 98.00 | 98.00 | TEDDE BLUNCK |
| Court Building Fund | 15.00 | 15.00 | TEDDE BLUNCK |
| Court Records Pres. Fee | 10.00 | 10.00 | TEDDE BLUNCK |
| Courthouse Security Fee | 5.00 | 5.00 | TEDDE BLUNCK |
| District Court Tech. Fee | 10.00 | 10.00 | TEDDE BLUNCK |
| E-Filing Convenience Fee | 78.00 | 78.00 | TEDDE BLUNCK |
| Family Protection Fee | 15.00 | 15.00 | TEDDE BLUNCK |
| Indigent Services – Family | 15.00 | 15.00 | TEDDE BLUNCK |
| Judicial Fund Court Costs | 45.00 | 45.00 | TEDDE BLUNCK |
| Law Library Fee | 20.00 | 20.00 | TEDDE BLUNCK |
| Motion to Modify | 15.00 | 15.00 | TEDDE BLUNCK |
| Motion for New Trial | 15.00 | 15.00 | TEDDE BLUNCK |
| Records Mgmt/Preservation | 10.00 | 10.00 | TEDDE BLUNCK |
| Records Mgmt/Pres. – DC | 10.00 | 10.00 | TEDDE BLUNCK |
| Reports/Copies | 1.00 | 1.00 | TEDDE BLUNCK |
| Steno Fee | 15.00 | 15.00 | TEDDE BLUNCK |
| Support of the Judiciary Fee | 42.00 | 42.00 | TEDDE BLUNCK |
| Abstract of Judgment | 8.00 | 8.00 | CATHY BLUNCK |
| Citation | 16.00 | 16.00 | CATHY BLUNCK |
| Counterclaim - Family | 15.00 | 15.00 | CATHY BLUNCK |
| District Court Tech. Fee | 5.00 | 5.00 | CATHY BLUNCK |
| E-Filing Fee – Civil | 50.00 | 50.00 | CATHY BLUNCK |
| Indigent Services – Family | 15.00 | 15.00 | CATHY BLUNCK |
| Motion for Enforcement | 30.00 | 30.00 | CATHY BLUNCK |
| Records Mgmt & Pres. Fee | 5.00 | 5.00 | CATHY BLUNCK |
| Records Mgmt/Pres – DC | 5.00 | 5.00 | CATHY BLUNCK |
| Show Cause Notice | 24.00 | 24.00 | CATHY BLUNCK |

I, Beverly Crumley, Clerk of the District Courts in and for Hays County, Texas, do hereby certify the above to be a correct account of the costs due in the above entitled and numbered cause up to this date.

Given under my hand and official seal on this the 18TH day of MARCH, 2015.

BEVERLY CRUMLEY, DISTRICT CLERK
HAYS COUNTY, TEXAS

By: _____ , Deputy

000098

---------------------------------------------------------------------

CLERK'S CERTIFICATE

---------------------------------------------------------------------

THE STATE OF TEXAS          §
                            §
                            §
COUNTY OF HAYS              §


I, BEVERLY CRUMLEY, Clerk of the District Courts, within and for the State and County aforesaid, do hereby certify that the documents contained in this record to which this certification is attached are all of the documents specified by Texas Rule of Appellate Procedure 34.5(a) and all other documents timely requested by a party to this proceeding under Texas Rule of Appellate Procedure 34.5(b).

GIVEN UNDER MY HAND AND SEAL at my office in San Marcos, Texas this 18th day of MARCH, 2015.

BEVERLY CRUMLEY
District Clerk
Hays County, Texas

By: _____
              Deputy

REPORTER'S RECORD
VOLUME 1 OF 3
CAUSE NO. 11-1217

IN THE MATTER OF THE MARRIAGE  ) IN THE DISTRICT COURT
                               )
OF                             ) 428TH JUDICIAL DISTRICT
                               )
TEDDE R. BLUNCK AND            )
CATHY A. BLUNCK                ) HAYS COUNTY, TEXAS

-------------------------------------------------------------

MASTER INDEX

FEBRUARY 9, 2015

-------------------------------------------------------------

On the 9th day of February, 2015, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable William Henry, judge presiding, held in San Marcos, Hays County, Texas.

Proceedings reported by machine shorthand.

APPEARANCES

FOR THE RESPONDENT:
Mr. Karl E. Hays
LAW OFFICES OF KARL E. HAYS
2101 South IH-35, Suite 210
Austin, TX 78741
Telephone: 512-476-1911
State Bar No. 09307050

FOR THE RECEIVER:
Mr. Leon Breeden
Attorney at Law
120 W. Hopkins St., Suite 102
San Marcos, TX 78666
Telephone: 512-396-2199
State Bar No. 02940750

VOLUME 2

RECEIVER'S MOTION TO APPROVE FINAL REPORT OF RECEIVER,
FOR PAYMENT OF RECEIVER'S FEES AND EXPENSES,
AND TO DISCHARGE RECEIVER;
RESPONDENT'S/MOVANT'S MOTION FOR
POST-JUDGMENT RECEIVERSHIP

FEBRUARY 9, 2015                                    PAGE VOL.
Reciever's Motion to Approve Final Report
  of Receiver, For Payment of Reciever's Fees
  and Expenses, and to Discharge Reciever....    6     2

Respondent's/Movant's Motion for
  Post-Judgment Receivership.................   11     2

Court's Rulings.............................   23     2

Adjournment................................   24     2

Court Reporter's Certificate...............   25     2

EXHIBIT INDEX

RECEIVER'S NO.                 OFFERED    ADMITTED     VOL.
1   Receiver's File-stamped      6           6          2
      Motion

RESPONDENT'S/MOVANT'S
NO.
1   Living Trust                15          16          2

2   Schedules                   19          19          2

VOLUME 3

EXHIBIT INDEX

| RECEIVER'S NO. | OFFERED | ADMITTED | VOL. |
|---|---|---|---|
| 1    Receiver's File-stamped Motion | 6 | 6 | 2 |

| RESPONDENT'S/MOVANT'S NO. | | | |
|---|---|---|---|
| 1    Living Trust | 15 | 16 | 2 |
| 2    Schedules | 19 | 19 | 2 |

STATE OF TEXAS )

COUNTY OF HAYS)

I, Diana Vargas, Deputy Official Court Reporter in and for the 428th Judicial District Court of Hays County, State of Texas, do hereby certify that the above and foregoing pages contain a true and correct transcript of all portions of evidence and other proceedings, requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

WITNESS MY HAND this the 11th day of March, 2015.

/s/ Diana Vargas
Diana Vargas, Texas CSR 5872
Expiration Date: 12/31/16
P.O. Box 404
Schertz, TX 78154
Telephone: 210-827-4164

REPORTER'S RECORD
VOLUME 2 OF 3
CAUSE NO. 11-1217

IN THE MATTER OF THE MARRIAGE  ) IN THE DISTRICT COURT
  )
OF  ) 428TH JUDICIAL DISTRICT
  )
TEDDE R. BLUNCK AND  )
CATHY A. BLUNCK  ) HAYS COUNTY, TEXAS

------------------------------------------------------------

RECEIVER'S MOTION TO APPROVE FINAL REPORT OF RECEIVER,
FOR PAYMENT OF RECEIVER'S FEES AND EXPENSES,
AND TO DISCHARGE RECEIVER;
RESPONDENT'S/MOVANT'S MOTION FOR
POST-JUDGMENT RECEIVERSHIP

FEBRUARY 9, 2015

------------------------------------------------------------

On the 9th day of February, 2015, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable William Henry, judge presiding, held in San Marcos, Hays County, Texas.

Proceedings reported by machine shorthand.

APPEARANCES

FOR THE RESPONDENT:
Mr. Karl E. Hays
LAW OFFICES OF KARL E. HAYS
2101 South IH-35, Suite 210
Austin, TX 78741
Telephone:  512-476-1911
State Bar No. 09307050

FOR THE RECEIVER:
Mr. Leon Breeden
Attorney at Law
120 W. Hopkins St., Suite 102
San Marcos, TX 78666
Telephone:  512-396-2199
State Bar No. 02940750

VOLUME 2

RECEIVER'S MOTION TO APPROVE FINAL REPORT OF RECEIVER,
FOR PAYMENT OF RECEIVER'S FEES AND EXPENSES,
AND TO DISCHARGE RECEIVER;
RESPONDENT'S/MOVANT'S MOTION FOR
POST-JUDGMENT RECEIVERSHIP

FEBRUARY 9, 2015                                    PAGE VOL.
Reciever's Motion to Approve Final Report
  of Receiver, For Payment of Reciever's Fees
  and Expenses, and to Discharge Reciever....    6      2

Respondent's/Movant's Motion for
  Post-Judgment Receivership.................   11      2

Court's Rulings............................   23      2

Adjournment...............................   24      2

Court Reporter's Certificate................   25      2

EXHIBIT INDEX

RECEIVER'S NO.                    OFFERED   ADMITTED      VOL.
1    Receiver's File-stamped        6          6          2
        Motion

RESPONDENT'S/MOVANT'S
NO.
1    Living Trust                  15         16          2

2    Schedules                     19         19          2

(Proceedings commencing at 9:00 a.m. in open court)

THE BAILIFF: Please rise. The 428th District Court is now in session, the Honorable Bill Henry presiding. God bless these United States of America, this great state of Texas, and this honorable court.

THE COURT: Good morning. Please be seated. I'll call the docket, let me know whether or not you're ready and how much time you anticipate.

In the Matter of the Marriage of Blunck.

MR. HAYS: Mr. Breeden and I are here, Judge, and probably just 10 minutes of the court's time.

THE COURT: Okay.

(Other matters were before the court)

THE COURT: At this time we'll call Cause No. 11-1217. That's styled In the Matter of the Marriage of Tedde R. Blunck and Cathy A. Blunck.

Go ahead and make your announcements for the record.

MR. BREEDEN: Your Honor, Leon Breeden as Receiver. And I filed the first pleading that was set for hearing this morning, which was my final report and request to be discharged.

And Mr. Hays has filed another pleading.

MR. HAYS: That's correct, Your Honor. Karl Hays on behalf of Cathy Blunck.

Subsequent to Mr. Breeden filing his motion, I have filed a motion for appointment of a receiver pursuant to the turnover statute, asking for Mr. Breeden, since he's now getting out of the case as the original Receiver, to be reappointed as a turnover receiver for purposes of collecting the judgment.

THE COURT: Is anyone here on behalf of Tedde R. Blunck? It is now ten after nine, 9:10; I hear no answer. Has counsel heard from him in any way, shape, or form?

MR. HAYS: Yes, your Honor. Well, I received two motions, Mr. Breeden only received one yesterday. Sometime in the afternoon Mr. Blunck faxed through an objection to my motion for appointment of a receiver and then also an objection to Mr. Breeden's --

I don't want to speak for Mr. Breeden, but he did not get the one that dealt with him. He only got the one that dealt with me. But that's it. No indication of whether Mr. Blunck intended to show up today or not. But that's the last that I've heard from him.

THE COURT: Okay. Let me take a look at his objections.

THE CLERK:  They are in the computer.

MR. HAYS:  I have the two.  Those are my only copies, but you're more than welcome to go through them.

THE COURT:  They were sent through on Sunday?

MR. BREEDEN:  Yes, Your Honor.

MR. HAYS:  And I know Mr. Breeden has a response to his, and then I can briefly tell you the response to mine.

THE COURT:  Okay.  In order for the court to consider the issues related to the final report and payment of Receiver's fees, I'll go ahead and hear the report from Receiver at this time and I'll waive the reading of this.

MR. BREEDEN:  Your Honor, I would offer into evidence Receiver's Exhibit 1, which is a file-marked copy of my motion.

MR. HAYS:  No objection.

THE COURT:  Receiver's Exhibit No. 1 is admitted into evidence.

MR. BREEDEN:  That, Your Honor, contains my written report and a description of my activities since the last hearing in this case in March of 2014. Nothing much happened at all because of Mr. Blunck's

bankruptcy filing and his appeal. Until those were both disposed of -- and I received notice in early December from Mr. Hays that the appeal had been dismissed and a mandate had been issued and that he was going to be setting a hearing regarding the disposition of the three IRA accounts that I was in charge of. And as the court knows, he had a hearing with regard to that matter in December.

And the next day -- well, I drove to Dallas and picked up Ms. Blunck and we went up to Pittsburg and we went to each of the three banks; had a very difficult time with the first bank, convincing them of the proper manner of disposing of these accounts, took us about four hours to finally get them convinced that the appropriate way to do this was to set up an IRA account for Ms. Blunck and to simply transfer the account, or the proceeds, to her name under an IRA.

They initially proposed a couple of different methods of attempting to do this that would have cost her significantly with regards to tax dollars, to the federal government, and, in my opinion, would have destroyed the protective nature of the IRA itself.

So once we got the first bank on line, after conferring multiple times with their legal department and their IRA department, the second two were

a little faster.

But the paperwork involved with doing this, Your Honor, quite frankly, astonished me. And the fact that the banks, at least one bank, CitiBank, surprisingly, the biggest one of all, had their system set up where any typographical error or missed answer to a question required reprinting the entire document- ation. And they accumulated several reams of incorrect sets of documents before we finally got it all corrected and printed out. And all of that is detailed in my report.

We arrived in Pittsburg at about 10:15 in the morning and we walked out of the last bank at a 5:30. If we had not gone on a Friday, we wouldn't have gotten it all done. We had not eaten all day, and then had a meal and then drove back. I left at four o'clock in the morning, I arrived back at my house at 12:30 in the morning.

Mr. Blunck apparently continues to object to my hourly rate of $300 an hour, which the court has previously approved, which I can assure the court is a reasonable fee for my services as an attorney with 31 years of experience and being board certified in consumer and commercial law. And that was very helpful and useful and necessary in dealing with these banks in

regards to these accounts.

And had someone with my experience not been there, Ms. Blunck may very well have been put in a position of having the protective nature of IRAs destroyed, and possible tax implications that would have been very negative for her. So I don't have any problem with saying that $300 an hour for my time is a reasonable fee.

He also says a lot of my time is travel. Yeah, I had to get up there and get all this done, yeah. And I don't have any hesitation in asking for that either, primarily, Your Honor, on the basis that most receivers in any case are paid on a contingency basis. And when you look at the total of my fees on an hourly rate for all the work that I have done against a contingent fee, even at a low percentage of say 25 percent, my fees are still less than that. So I don't, again, have any problem with saying that all of my time was justified.

His assertion that anyone with a high school degree could have done this is simply laughable. And quite frankly, I was a bit surprised that I didn't run across Mr. Blunck or a constable or a sheriff's deputy given his comments at the last hearing that he was going to be seeking a restraining order against

transferring the accounts.

So, Your Honor, I believe my fee is fully justified. And Ms. Blunck was with me and she's quite satisfied that I was necessary to get this done. And her attorney has signed off on the order and doesn't have an objection. And so I would ask the court to approve my fees. I believe they are very reasonable.

And had we not done this at the time that we did do it -- this lady has been waiting for a couple of years, more than that, to get any assets out of this divorce estate. And we accomplished in a day something that on her own just would not have been possible, not the way the banks were trying to structure this transaction.

So not only was my fee reasonable, but my services were very necessary, assuming that's the standard. Basically, I did as the court instructed me. In my mind, that's really the standard, that I do what I was instructed to do, which was to get those accounts transferred to her. And we got that accomplished.

MR. HAYS: And, Your Honor, I'd add two things to that. First, with respect to my client being happy about what happened, the order reflects that Ms. Blunck is going to actually front the fees, the remainder of the fees. That's because she is extremely

happy with what happened. And, of course, the court is going to, in the order, reserves the right to reallocate those, hopefully against Mr. Blunck at some point.

The other thing I would mention to the court is the irony of Mr. Blunck's argument that Mr. Breeden had to travel long distance. He wouldn't have had to do that if Mr. Blunck hadn't violated the court order by basically stealing these funds and taking them and putting them in Pittsburg, Texas. Because if he had left them where they were at we wouldn't have had to have Mr. Breeden go up there and get these funds, to extricate them. The court has already held him in contempt for doing that.

And I just basically think that this is ridiculous that he would be alleging that a problem that he caused, that somehow Mr. Breeden shouldn't be paid for fixing it.

THE COURT: Let's change gears a little bit here. What's the issue behind Mr. Blunck's allegation that an appellate court has denied the respondent's request for attorney's fees? How does that play into it?

MR. HAYS: Your Honor, as is typical with what Mr. Blunck has done continuously in this case, and we sit there and we try to find nice words about

attorneys misrepresenting things to the court and saying that they're being disingenuous. I will make no bones about the fact that I think Mr. Blunck is both dishonest and deceitful and violates at every turn the ethical rules that lawyers are supposed to abide by because he is not advising the court with the level of candor that he needs to.

First and foremost, we filed for sanctions in the court of appeals because Mr. Blunck filed a frivolous appeal. The court dismissed his appeal, but then said in the order: We're not going to issue sanctions.

That has nothing to do with this court's award of appellate fees, and Mr. Blunck knows that. But he is representing to the court that, Oh, well, the court of appeals said no. No, they turned down my motion, under the appellate rules, for sanctions.

In addition -- and this is why every time I get something from Mr. Blunck, it's upsetting because Mr. Blunck complained about lack of notice. And what he says is that, Well, you didn't attach a copy of the exhibit.

We told him we were not attaching a copy of the divorce decree. In fact, I have the fax cover sheet where we said, "Please note: Exhibit A, the

final decree of the divorce, is not being faxed to you."  Because half the time he doesn't put his e-mail address on there, so we don't know whether to serve him by e-mail, and wanted to make sure we had confirmation that he got this because he's the type of person that will say, You didn't e-mail it to me.  We didn't fax it because the volume of the document and because you already have a copy.

So now he files something, saying, Well, I don't know what you're talking about.  Which is completely dishonest.  He knows about the decree of divorce, he knows what's in the decree, he's appealed from the decree of divorce.

And so the bottom line is, we also, under the statute, don't even have to attach a copy of it.  I just did that because that's what I ordinarily do when I file these motions.  I even attached a copy of the statute itself, just for the court's own benefit, so you would have both the copy of the turnover statute and a copy of the decree.

But this is at its most fundamental level an ex parte proceeding, clearly.  And I'll just tell the court the most recent citation for that.  And I can give the court a copy of this case.  It's Cantu v. Seeman.  It's a May, 2012, court of appeals opinion.  It was

petition denied from the First District, Houston Court of Appeals, where the exact same argument was raised about "I didn't get notice, I didn't get an opportunity to argue."

And the court specifically says: Due process does not require that a complainant who has been granted an opportunity to be heard and had his day in court should, after judgment, have further notice and hearing before supplemental proceedings.

You don't give them, really, notice of writ of execution being issued. They don't get a chance to challenge that.

THE COURT: Or garnishment.

MR. HAYS: Or garnishment or anything like that. And they mention there's no statutory requirement. So they overruled his objections. You can keep a copy of that case, Judge, I have additional ones.

So what we're asking for in this case, Your Honor, is we now have a situation where there is no longer an appeal -- because that's what Mr. Blunck's original argument was: You can't do anything under 9.007(c) of the Texas Family Code. That says while an appeal is pending you can't do anything to enforce a judgment -- or to enforce the property division.

Mr. Breeden was appointed originally just

to hold on to this property, make sure nothing else happened to it. Now we want Mr. Breeden appointed because of his background, his being board certified in consumer law, to be able to go collect on the judgment.

The judgment is in the amount of $242,000 and some change. There's interest attached to that because this judgment was basically done in October of 2012. So we've got, you know, at least two, two and a half years' worth of interest on this judgment.

I'm marking as an exhibit, Your Honor, as Movant's 1, a copy of Mr. Blunck's living trust. It's been marked by the court reporter. I'll tender that to the court.

I'm asking the court to do two things. One, is first take judicial notice of the file and the decree of divorce.

THE COURT: The request is granted.

MR. HAYS: And that, in and of itself, reflects the property that was awarded to Ms. Blunck. And it is that property, various items of property that we're asking for the court to appoint a receiver to be able to recover.

I'm moving for the admission of Movant's 1, which is the Living Trust in which Mr. Blunck transferred all of his property. We believe

that that -- well, that does establish in Mr. Blunck certain contractual rights. Those rights are not subject to regular execution; we can't go have the sheriff execute on those.

But a receiver steps into the shoes of Mr. Blunck and can exercise the rights that are granted to Mr. Blunck under that agreement, under that trust agreement. And so that's why we need to have a receiver, because essentially the receiver is going to step into Mr. Blunck's shoes with respect to that living trust and be able to exercise Mr. Blunck's rights that he would have under the living trust.

THE COURT: Any objection to Movant's Exhibit No. 1?

MR. BREEDEN: I'm just standing here, Your Honor. I'm not a party.

MR. HAYS: He's not here yet.

THE COURT: Correct.

MR. HAYS: He's not here yet, until you sign an order.

THE COURT: There being no objection, Movant's Exhibit No. 1 is admitted into evidence.

MR. HAYS: And I'll tender the court a copy of our proposed order on that, Your Honor. And it basically gives -- number one, it sets the same fee the

court has previously recognized as a reasonable fee for Mr. Breeden.

Mr. Breeden and I discussed this and he felt that -- and I believe this to be true -- that it's fairer to do it on an hourly basis than a contingent fee basis. It certainly benefits my client to do that considering there's about $242,000. I appreciate Mr. Breeden not doing this on a contingent basis because the reasonable fee for that is a quarter, 25 percent. And certainly I believe his hourly rate is going to be much less than that. That's what it was in connection with the original receivership.

So we asking $300 an hour for Mr. Breeden. We are asking because the statute -- there's a difference between the Turnover Statute and the provisions for receiver under the other provisions of the law. Receivers routinely serve without bond. As a turnover receiver, we're asking that Mr. Breeden be allowed to do that.

He showed himself to be an exemplary receiver in the previous case, and so in this situation all he's going to be doing is executing on a judgment. I think there's very little chance of anything going wrong that we would need a bond for. So we're asking for it to be without bond.

And we're asking for certain rights to be afforded to him; namely, that property be turned over to him; that Mr. Blunck be required to turn over certain items to him. We don't believe that that's going to happen, but we still have it in the order, asking for that.

And with that, Your Honor, I'd simply ask that the court approve the receivership. This has been a long and arduous path to get to this point. My client sat for over two years without having any benefit -- she still hasn't gotten -- she can't transfer title, she can't sell her car, transfer title to any of the vehicles because he hasn't signed off on any of it. He hasn't done any of that. And she's basically been sitting without any of this property.

We finally got the 600,000 that she should have gotten two years ago to her. But this is the end of the road for Mr. Blunck. And we need to start collecting on this judgment.

Your Honor, I have one additional thing that I wanted to provide to the court. I have marked as Movant's 2 -- Mr. Breeden already mentioned this and the court knows it. Mr. Blunck declared bankruptcy. And as the court knows, you specifically asked the bankruptcy court for permission to be able to go against

Mr. Blunck, and the bankruptcy court has granted you that permission.

They have also -- these particular debts are outside of the bankruptcy. There's a court order that says specifically we can collect these. He's in a Chapter 13 plan. These reason why I'm presenting -- these are the schedules that Mr. Blunck submitted. And in those schedules Mr. Blunck represented to the bankruptcy court that he had exempt property, in addition to what we showed you with the trust and the contract rights that can be executed pursuant to the turnover order.

There is also exempt properties in terms that there's a number of firearms that he lists in here as being exempt property. There's equity interest in properties. And I would tender that to the court and move for its admission because it's a representation by him that he had over $200,000 of nonexempt property that he is still in possession of, that we want. Because if it's over $200,000, it will go a long way toward settling this judgment of 242,000.

THE COURT: Movant's Exhibit No. 2 is admitted into evidence.

I want to go through the basics of receivership a bit here. Prior to this, the court

appointed Mr. Breeden to hold and protect the property; is that basically --

MR. HAYS: Correct.

THE COURT: Now you're asking the court to appoint him on behalf of a party to collect, and as a subset of that to -- for lack of a better word, step into the shoes of Mr. Blunck as Mr. Blunck's fiduciary responsibility to the trust?

MR. HAYS: Correct. I'll be candid with the court. Mr. Blunck attempted to avoid the application of any of our efforts to collect by transferring. He has transferred all of his property into the living trust. He represented to the court of appeals that was his poor man's attempt to a supersedeas bond. That ended backfiring on him because the court of appeals said, You transferred it to a third-party, therefore you've accepted the benefits under the judgment by that transfer; your appeal is dismissed.

Under the trust agreement, Mr. Blunck has the right to revoke that trust. Also under the trust agreement, Mr. Blunck has the right to appoint a substitute trustee. Whomever is appointed as receiver will step into Mr. Blunck's shoes and have the right to either revoke the trust or appoint a substitute trustee

to transfer property.

It is clearly in there that Mr. Blunck right now can tell his trustee "Do this with the property." He maintains full control over it. So those rights, those contract rights, the turnover order would authorize the receiver to execute those contract rights because those are rights that are subject to basically being -- they're subject to a receiver taking control of under the turnover order. They're not readily leviable because you can't have the sheriff go out and do that. And so that's why we're asking the receiver to do that.

I fully believe that Mr. Breeden will then either cause a new trustee to be appointed and have that trustee transfer property pursuant to his request, or he's going revoke the trust. One of the two. And that primarily is the focus of our turnover proceeding.

Originally, we tried the turnover, we filed for a turnover, but Mr. Blunck said, Wait a minute, under the Family Code, 9.007(c) says you can't do that. And there's a specific case. They did a turnover order and the court of appeals said you can't do that because you're attempting to enforce the judgment, and while there's an appeal you can't enforce the judgment.

So we were stymied. The most we could do

is just have it held so that Mr. Blunck didn't run out and put it in a bank in South Africa or do something else with it. And so the court just basically said, We're holding all of, you know -- and we agreed. We even said that Mr. Breeden didn't have to invest it or do anything with it. He just basically was going to hold title to it. And we were perfectly fine with that because we just didn't want Mr. Blunck to do anything with it.

But now all the appeals have been discharged. There's nothing else he can do, at all, to try and prevent the collection, as far as we see. And so now we're moving to start to collect the judgment because we're entitled to do it. And my client is entitled to get -- you granted her $240,000 worth of judgments to equalize the division of the estate. Some of it is attorneys' fees. I think over sixty grand of it is attorney's fees to Mr. Barrett.

Thankfully, Ms. Blunck has paid part of my attorney's fees out of the money she got. She also had paid Mr. Breeden some, but not all, of his fees. She still owes him I think the 7,000 or 7,500 that the court awarded today.

But she needs to be able to collect this and move on and kind of put a little bow on this and

bring closure to it.

THE COURT: The concept of having the same person be receiver under both hats is not an issue, is it? Because, conceivably, Mr. Breeden was representing the court in the prior situation and would be representing a party. So there's no conflict there, is there?

MR. HAYS: No, sir. And he is actually still also an arm of the court in terms -- because it's an executive function that he's going to be performing. And I actually think it is better to have the continuity there because he's familiar with this situation, as opposed to someone who would be coming in brand new, who wouldn't be familiar.

I mean, he's been through a lot of dealings with Mr. Blunck so far. And although he's not going to have to deal with the same institutions again -- I mean, he has been up to Pittsburg. And if there is an issue, I think the way that he handled the banks previously, he did a good job.

THE COURT: The final report from Receiver is approved, the motion to pay the fees in the amount of $7,800 is approved. Mr. Breeden is appointed as the Receiver. That order is signed; that is, the Receiver related to the collection under the living will --

living trust, excuse me.

MR. HAYS: Your Honor, the court reporter is telling me you may not have officially admitted my Exhibit 2.

THE COURT: Movant's Exhibit 2 is admitted. It's my understanding that was officially admitted.

And the amount of $300 per hour is approved as being probably under the fair market value of what receivers are paid in these types of matters.

Anything else?

MR. HAYS: No, sir.

MR. BREEDEN: Your Honor, I'm going to be signing up as Receiver, and he's ordered to produce stuff at my office, is my understanding. I haven't seen the latest version of the order. I mean --

(Sotto voce discussion between counsel)

MR. HAYS: May we be excused?

THE COURT: You bet.

(Proceedings adjourned)

STATE OF TEXAS )

COUNTY OF HAYS)

I, Diana Vargas, Deputy Official Court Reporter in and for the 428th Judicial District Court of Hays County, State of Texas, do hereby certify that the above and foregoing pages contain a true and correct transcript of all portions of evidence and other proceedings, requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

WITNESS MY HAND this the 11th day of March, 2015.

/s/ Diana Vargas
Diana Vargas, Texas CSR 5872
Expiration Date: 12/31/16
P.O. Box 404
Schertz, TX 78154
Telephone: 210-827-4164

REPORTER'S RECORD
VOLUME 3 OF 3
CAUSE NO. 11-1217

IN THE MATTER OF THE MARRIAGE ) IN THE DISTRICT COURT
)
OF ) 428TH JUDICIAL DISTRICT
)
TEDDE R. BLUNCK AND )
CATHY A. BLUNCK ) HAYS COUNTY, TEXAS

_____

EXHIBITS

_____

I, Diana Vargas, Deputy Official Court Reporter in and for the 428th Judicial District Court of Hays County, Texas, do hereby certify that the following exhibits constitute true and complete duplicates of the original exhibits, excluding physical evidence, offered into evidence during the proceedings in the above-entitled and numbered cause as set out herein before the Honorable William Henry, judge presiding, on February 9th, 2015.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $360.95 and was paid/will be paid by Petitioner Tedde R. Blunck.

WITNESS MY HAND this the 11th day of February,

2015.

/s/ Diana Vargas
Diana Vargas, Texas CSR 5872
Expiration Date:  12/31/16
P.O. Box 404
Schertz, TX 78154
Telephone:  210-827-4164

VOLUME 3

EXHIBIT INDEX

| RECEIVER'S NO. | OFFERED | ADMITTED | VOL. |
|---|---|---|---|
| 1 Receiver's File-stamped Motion | 6 | 6 | 2 |

RESPONDENT'S/MOVANT'S NO.

| | OFFERED | ADMITTED | VOL. |
|---|---|---|---|
| 1 Living Trust | 15 | 16 | 2 |
| 2 Schedules | 19 | 19 | 2 |

RECEIVER'S EXHIBIT 1

02-09-15

NO. 11-1217

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| TEDDE R. BLUNCK | § | 22ND JUDICIAL DISTRICT |
| AND | § | |
| CATHY A. BLUNCK | § | HAYS COUNTY, TEXAS |

## MOTION TO APPROVE FINAL REPORT OF RECEIVER, FOR PAYMENT OF RECEIVER'S FEES AND EXPENSES, AND TO DISCHARGE RECEIVER

TO THE HONORABLE JUDGE BILL HENRY:

### FINAL REPORT OF ACTIVITIES

This report covers my activites as receiver in this case from and after the hearing held on March 5, 2014, after which the Court entered its "Order on Motion to Release Property in Possession of Receiver and for Clerk to Release Cash Bond to Receiver" which was signed on March 18, 2014. At that time the Court denied the motion of Cathy A. Blunck to release property in possession of receiver but did approve additional fees incurred by the Receiver and for payment of the cash bond on file with the clerk of court for partial payment of my fees.

1. I did receive payment of $7,000.00 for the cash bond from the district clerk's office as partial payment of my total approved fees in that order of $16,037.51, leaving a balance of approved fees in the amount of $9,037.50.

2. Since the hearing in March, 2014, I only received sporadic emails from Ms. Blunck's attorney regarding the status of the appeal in this case, along with a request to sign an affidavit to be filed in the appeal, which I did sign and return to Mr. Hays. No fees are requested for these matters.

1



3.    On December 11, 2014, Mr. Hays called me and advised that he had received the mandate from the Court of Appeals finalizing the dismissal of Mr. Blunck's appeal and that he planned to file a motion requesting that I be discharged as receiver and that the 3 IRA accounts in the banks in Pittsburg, Texas be transferred to Cathy Blunck. I advised Mr. Hays that based on my knowledge of how banks operate that I felt strongly that no matter how his motion and order were actually worded that the banks would require some kind of signature from both Ms. Blunck and me in order to process transferring the accounts to her name and that it would be best, in my opinion, for the court to order me to transfer the accounts to Ms. Blunck rather than having me discharged and the order directing the non-party banks to transfer the accounts to Ms. Blunck. Mr. Hays agreed with my position on how the order should be worded and advised that he would file the motion the next day and request a hearing the following week.

4.    On December 12, 2014, I received and reviewed the Motion to Release and Transfer Property in Possession of Receiver and to Authorize Receiver to Submit Final Report. I then sent an email to each of the 3 banks advising them that a hearing was scheduled for the following week and that I anticipated that the Court would be ordering the accounts to be transferred to Ms. Blunck.

5.    On December 18, 2014, I appeared at the hearing on Cathy Blunck's Motion to Release and Transfer Property in Possession of Receiver and to Authorize Receiver to Submit Final Report. After hearing, the Court signed an order granting that motion and directing me to transfer the 3 IRA accounts in various banks in Pittsburg, Texas to Ms. Blunck. I had previously advised Mr. Hays, and advised the Court at the hearing, that I was available to go with Ms. Blunck to Pittsburg, Texas the next day, Friday, December 19, to try to get all of the accounts

2

transferred to Ms. Blunck as quickly as possible.

At the conclusion of the hearing I contacted the district clerk in Pittsburg to inquire about a suit which Mr. Blunck advised during the hearing that he had filed in District Court in Camp County and in which he anticipated seeking a temporary restraining against me transferring the accounts to Ms. Blunck. The clerk sent me a copy of the petition which had been filed on December 17 in Cause No. CV-14-2462 styled "Paulette M. Blunck, as Trustee of the Tedde R. Blunck Living Trust v. Cathy A. Blunck." The original petition is styled "Plaintiff's Original Petition for Breach of Contract." The petition was signed by Tedde R. Blunck as attorney for Paulette M. Blunck, as Trustee of the Tedde R. Blunck Living Trust." There was no allegation in the petition relating to the receivership in this case nor is there a request for issuance of a temporary restraining order, temporary injunction or permanent injunction. After consultation with Ms. Blunck and Mr. Hays it was decided that Ms. Blunck and I would still go to Pittsburg the next day and that in the event any type of injunction was issued and served on me or Ms. Blunck that I would try to deal with the situation in person. I then advised the Court of the situation and that in the event anything was served upon me the next day I might need to contact the Court.

6.      On December 19, 2014, I left my house promptly at 4:00 a.m. to begin the drive to Pittsburg, Texas. Ms. Blunck had agreed to meet me at a shopping center right on I-35 in Desoto, Texas, so I could pick her up there and we could drive from there to Pittsburg with minimal delay. I anticipated being able to make good time through use of state highway 130 to Georgetown, Texas, and thereafter because of the early hour. Unfortunately I encountered heavy rainstorms from just north of Georgetown to just north of Waco, with speeds reduced to a

3

maximum of 60 mph and often less than that for long stretches. I arrived in DeSoto right at 8 am and picked up Ms. Blunck and we arrived in Pittsburg at approximately 10:15.

We went first to Pilgrim Bank. The lady we were directed to was not anyone I had dealt with before but she seemed to know about the situation and went to work immediately. She called the bank's IRA department and the legal department and then advised us that everything was good and she would have the paperwork done shortly. Based on her questions and statements while preparing the paperwork it became apparent to me that the transactions the bank had in mind were not what should happen. The bank intended to issue me a cashier's check for the amount of the account, then have me deposit the check into an account in Ms. Blunck's name. This was not appropriate for several reasons, one being that I as receiver had no ownership interest in the account and should not receive any proceeds from the account, and another being that such a transaction would presumably destroy the status of the IRA accounts under federal law and incur taxes that should not be incurred. After lengthy discussions with the bank representative, the IRA department and the legal department, I finally got across that the transaction should be handled as if there were no receiver and the bank should simply close out the account in Mr. Blunck's name and transfer the funds to an IRA account in Ms. Blunk's name.

We finished at Pilgrim Bank at approximately 2:15 p.m. and went across the street to Capital One Bank. The lady I had dealt with previously there was not in and the employee dealing with IRA accounts that day was from another branch but after conferring with the woman I had dealt with previously, and senior bank official on hand, and conferences with IRA and legal department, they agreed to handle the transaction the same way Pilgrim's Bank had. They had a lot of paperwork to get approved so while they worked on that we went to First National Bank of

4

Pittsburg. The bank president I had dealt with before was present and after quick conferences with his departments, we got the paperwork started there. We then went back to Capital One and finished up and then back to First National to do the same. We walked out of First National Bank right at 5:30 p.m. Had we not gone on a Friday when bank hours are extended until 6:00 p.m. there is no way we could have finished all 3 accounts.

When we left First National Bank of Pittsburg, the 3 IRA accounts had been transferred to Ms. Blunck in an aggregate amount of approximately $656,616.01.

We then went to dinner, not having had a meal all day. We left Pittsburg at approximately 6:30 p.m. Ms. Blunck drove back to DeSoto so I could get some sleep before my drive back home. We arrived in DeSoto at approximately 8:20. I then drove back to San Marcos and arrived home at 12:30 a.m. Total distance traveled was 765 miles.

8. Ms. Blunck subsequently sent me a cashier's check in the amount of $9,037.50 for payment of the remainder of my fees which had previously been approved by the Court.

9. The order of March 18, 2014 contained a provision entitled "Clarification Regarding Accounts Under Control of Receiver", page 3, last paragraph of the Order. In that provision, it was stated that the 4th account under my receivership was the Parsons Brinckerhoff Group, Inc., 401(k) Retirement Savings account. I have not actually done anything in regard to that account because Mr. Blunck told me at the March hearing that the money (approximately $42,000.00) was still in that account and that he had no intention of claiming any of that money. I also advised Mr. Hays that I was skeptical that I could do anything in regard to a 401(k) account because of the federal ERISA statute, which grants broad authority and immunities to plan administrators and that given the amount of money involved in that account versus the IRA

5

accounts that my time would be better spent in dealing with the IRA accounts. In my humble opinion the 401(k) account should be governed by a QDRO rather than a receiver.

## REQUEST FOR PAYMENT OF FEES AND EXPENSES

The Court has previously approved my hourly rate of $300.00 per hour. Time spent on this matter is detailed below.

| | | |
|---|---|---|
| 1. December 11, 2014 - telephone conference with Mr. Hays | | .5 |
| 2. December 12, 2014 - review of motion and emails to 3 banks | | .5 |
| 3. December 18, 2014 - attending hearing and research on case in Pittsburg | | 2.5 |
| 4. December 19, 2014 - total travel and meal time | | 13.25 |
| 5. December 19, 2014 - time spent at banks getting accounts transferred | | 7.25 |
| 6. January 7, 2015 - review of file and preparation of this report | | 2.0 |
| Total time through preparation of this report | | 18.75 |

Fees requested

| | |
|---|---|
| 3.5 hours @ $300.00 per hour for December 11 - December 18 | $1,050.00 |
| 13.25 hours for travel on December 19 @ $300.00 per hour | $3,975.00 |
| 7.25 hours for time spent at banks on December 19 @ $300.00 per hour | $2,175.00 |
| 2 hours for time spent preparing this report on January 7 @ $300.00 per hour | $ 600.00 |
| Total fees requested if no hearing on this motion | $7,800.00 |

Ms. Blunck has indicated that she will pay the fees approved by the Court. The allocation of my fees as between the parties is to be determined by the Court and is outside the scope of my role as Receiver. Should a hearing be required on this matter, I request that the Court award additional fees for time expended at the hourly rate of $300.00 per hour.

6

WHEREFORE, I request that the Court approve my final report, approve payment of my fees, and discharge me from my role as Receiver in this case.

Respectfully submitted,

_Leon Breeden_

LEON BREEDEN
120 W. Hopkins, Suite 102
San Marcos, Texas 78666
Tel:  512-396-2199
Fax:  512-754-7163
leon@leonbreeden.com
State Bar No. 02940750
Receiver

### Certificate of Service

I certify that a true copy of this document was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on January _____14_____, 2014.

_Leon Breeden_

Leon Breeden, Receiver

7

MOVANT'S EXHIBIT 1

02-09-15



## The Tedde R. Blunck Living Trust

**THIS AGREEMENT OF TRUST** is made and executed at Pittsburg, Camp County, Texas, on this the 24th day of December, 2012, by and between Tedde R. Blunck, hereinafter referred to as "Settlor," and Paulette M. Blunck, hereinafter referred to as "Trustee," of this trust known as **The Tedde R. Blunck Living Trust.**

### WITNESSETH:

WHEREAS, the Settlor wishes to establish a revocable trust by transferring the assets described on the attached Schedule A to the Trustee to hold and administer upon the terms and conditions set forth in this Trust Agreement; and

WHEREAS, Settlor contemplates that he may, by inter vivos document, transfer other assets and property to the Trustee, to be added to the trust estate; and

WHEREAS, the Trustee is willing to hold and administer such property as she may receive upon the terms and conditions set forth in this Trust Agreement;

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the Settlor and the Trustee do hereby agree as follows:

### ARTICLE I.

### Trust Estate

Settlor has conveyed, transferred, and assigned and does by these presents convey, transfer, and assign unto the Trustee the assets and properties described on Schedule A attached hereto and made a part hereof. Such assets and properties shall be held, administered, and distributed as a revocable, amendable trust, subject to the provisions hereof, for the uses and purposes hereinafter set out. Settlor or any other person or persons may by a written document,

or by a Will, or by naming the Trustee as beneficiary of life insurance or employee benefit plan proceeds, deliver to the Trustee at any time and from time to time additional assets and properties acceptable to the Trustee, which additional assets and properties shall be held, administered, and distributed pursuant to this Trust Agreement. The Settlor shall have the right to use and occupy residential property owned by the trust created hereunder as the Settlor's principal residence rent free and without charge until the death of the Settlor or until this Trust Agreement is revoked or terminated, whichever occurs first. Further, any such property (or any interest therein) shall be acquired by an instrument of title that describes the property with sufficient certainty to identify it and the interest acquired, and the instrument shall be recorded in the real property records of the county in which the property is located. This section shall be construed in accordance with the Settlor's intentions to qualify such property as the Settlor's residential homestead for ad valorem tax purposes by causing the trust which owns such property to be a "qualifying trust" as defined and described in Section 11.13(j) of the Texas Tax Code. This intention shall be overriding and shall control if it conflicts with the literal language of this section.

## ARTICLE II.

### Identification of Beneficiaries

The primary beneficiary of this trust is the Settlor, Tedde R. Blunck.

## ARTICLE III.

### Revocability of Trust

This trust is revocable during Settlor's life. Settlor shall have the power and right to amend, modify or revoke, in whole or in part, this agreement or any terms or provisions thereof by notice in writing delivered to the Trustee. Such amendment, modification or revocation shall

be effective immediately upon delivery to the Trustee, except that changes with respect to the Trustee's duties, liabilities or compensation shall not be effective without the Trustee's written consent. Settlor shall further have the power and right to require and direct the Trustee to distribute to Settlor or to any other person designated by Settlor any property or properties held by the Trustee hereunder.

## ARTICLE IV.

### Distributions While Settlor Is Living

If during the life of Settlor there shall be transferred to the Trustee, to be held in accordance with the terms of this Trust Agreement, investment or income-producing assets, then so long as Settlor shall live, there shall be distributed to or for the benefit of Settlor so much of the trust income and corpus as Settlor shall from time to time direct in writing. Initially and until further written notice from Settlor to the Trustee, the Trustee shall distribute to Settlor the net trust income. In the event of the incapacity of Settlor, then notwithstanding any prior written instructions to the contrary, the Trustee may distribute to or for the benefit of Settlor so much of the trust income and corpus as the Trustee shall determine, in her sole discretion, to be necessary and appropriate to provide for the health, maintenance and support of Settlor. Any income not so distributed shall be added to corpus. The Trustee shall, for the purpose of this Article IV, be the sole judge of Settlor's incapacity; no judicial determination shall be required and the Trustee shall incur no liability to any person whomsoever for making distributions to or for the benefit of Settlor, upon the Trustee's determination of Settlor's incapacity.

## ARTICLE V.

### Disposition Upon Death of Settlor

Upon the death of the Settlor, the Trust Agreement shall be terminated and the Trust

Page 144 of 207

dissolved and the entire trust estate shall be distributed, subject to the following provisions, conditions and limitations, outright and FREE FROM TRUST to the heirs as stated in the Settlor's Last Will and Testament. If Settlor does not have a Last Will and Testament, the entire trust estate shall be distributed outright and FREE OF TRUST to the heirs-at-law of Settlor. The identity and respective shares of such heirs (as hereinafter defined in Article XI) shall be determined in all respects as if the death of the Settlor had occurred immediately following the happening of the event requiring such distribution, and according to the laws of the State of Texas then in force governing the distribution of the estate of an intestate.

## ARTICLE VI.

## General Provisions Relating to Trust

All of the provisions of this Article VI are applicable to all trusts and shares created by this Trust Agreement.

A.    Succession of Trustees. The initial Trustee of the trust created by this Trust Agreement shall be Paulette M. Blunck. If Paulette M. Blunck should fail or cease to serve as Trustee for any reason, then Pauline L. Murphy shall serve as successor Trustee. If both Paulette M. Blunck and Pauline L. Murphy should fail or cease to serve as Trustee for any reason, then a successor Trustee shall be appointed in the manner and with the qualifications pursuant to the terms of this Trust Agreement set forth in the paragraph below entitled "APPOINTMENT OF SUCCESSOR TRUSTEES".

B.    Removal of Trustees. The Settlor (including the legal guardian or legal representative of Settlor in the case that Settlor is under legal disability) shall have the power to remove any trustee and any successor trustees then serving and to appoint a successor trustee. If a trustee is removed, such trustee must be replaced by another trustee in the manner and with the

Page 145 of 207

qualifications pursuant to the terms of this Trust Agreement set forth in the paragraph below entitled "APPOINTMENT OF SUCCESSOR TRUSTEES". Such removal shall be by a written document, duly executed and acknowledged by the removing parties and by the successor trustee, and shall be filed in the Real Property Records of Camp County, Texas. The successor trustee shall promptly deliver a copy of such recorded document to the trustee being removed and then serving and the delivery of such recorded document shall immediately deprive the removed trustee of all powers as trustee hereunder. No purchaser from or other person dealing with any trustee is obligated to examine the County records and any such person shall be protected in all transactions with any trustee, whether or not any such replacement has taken place.

C.  Resignation of Trustees. Any Trustee is authorized to resign by filing a written document, duly executed and acknowledged by the resigning trustee, of record in the Real Property Records of Camp County, Texas, which filing shall immediately deprive the Trustee of all powers as Trustee hereunder; provided, nevertheless, that at least thirty (30) days prior to filing such document, the resigning Trustee shall give written notice thereof to the Settlor (including the legal guardian or legal representative of Settlor, in the case that the Settlor is under legal disability).

D.  Appointment of Successor Trustees. If any trustee appointed or serving pursuant to this Trust Agreement should fail or cease to serve as trustee for any reason and no trustee has been named in this document to serve as successor, or if all successor trustees named herein have failed or ceased to serve for any reason, then the Settlor (including the legal guardian or legal representative of a Settlor in the case that Settlor is under legal disability) shall have the power to appoint, as successor trustee, any national or state bank or trust company possessing trust powers

and having a capital, surplus and undivided profits of at least Twenty Million Dollars, or any individual regardless of domicile. Such appointment shall be made by a written document, duly executed and acknowledged by the appointing parties and by the successor trustee being appointed, and shall be filed for record in the Real Property Records of Camp County, Texas. If a successor trustee is not appointed as hereinabove provided, then a court of competent jurisdiction shall be requested to appoint a successor trustee with the qualifications set forth above, and the costs associated with such a court proceeding shall be paid from the trust or trusts for which the successor trustee is appointed.

E. <u>Relinquishment of Powers</u>. Any trustee may release or relinquish any one or more of any powers, rights or privileges which, in the trustee's judgment, unless released or relinquished, might result in adverse consequences to the trust estate or any beneficiary because of changes in law or interpretation of the law. Any such release or relinquishment shall be made by a written document, duly executed and acknowledged by said trustee, and shall be filed for record in the Real Property Records of Camp County, Texas. After any power has been so released or relinquished, it shall never again be exercised by such trustee.

F. <u>Compensation and Bond</u>. Any trustee serving hereunder shall be reimbursed for any and all expenses incurred while acting as trustee of the trust created pursuant to the provisions hereof, and in addition any corporate trustee shall receive fair and reasonable compensation for services as trustee in accordance with the corporate trustee's regular fee schedules as published from time to time. No trustee serving hereunder shall be required to furnish bond or any other security, and all rights, powers, authorities, privileges and discretions herein conferred upon any trustee authorized to serve hereunder shall be exercised without the supervision of any court, it being intended that so far as can be legally provided the trustee

serving shall be completely free of all court supervision of any kind, including the requirements of any accounting; provided, however, that the then serving trustee shall furnish an accounting to any beneficiary or guardian of any beneficiary upon reasonable demand made therefor.

G. **Powers and Duties of Successor Trustees.** On the appointment and qualification of any successor trustee, the same duties shall devolve on and the same rights, powers, authorities, privileges, and discretions shall inure to such successor trustee as to the Trustee originally designated hereunder. All rights, powers, authorities, privileges and discretions shall be exercised without the supervision of any court. No successor trustee shall have any duty, responsibility, obligation or liability whatsoever for the acts, defaults or omissions of any predecessor trustee. Any successor trustee named herein shall be responsible only for the assets delivered by the preceding trustee, or his or her legal representative, and may accept as correct the statements of such predecessor, or his or her legal representative, that these constitute all of the assets of the trust estate, without any duty to inquire into the administration or accounting by the preceding trustee. No successor trustee shall be held responsible for and by reason of any act or omission of a predecessor in trust.

H. **Reorganization of any Corporate Trustee.** Any corporation or national or state banking association that shall succeed to all or the greater part of the assets of any corporate trustee serving hereunder by purchase, merger, consolidation, or otherwise, shall succeed to all the rights, duties, and functions of such corporate trustee as trustee under all trusts governed by this Trust Agreement for which the corporate trustee is then serving or may serve as trustee.

## ARTICLE VII.

## General Provisions Relating to the Trust

A. **Situs of Trust.** The trusts created herein shall be deemed Texas trusts and shall, in

Page 148 of 207

all respects, be governed by the laws of the State of Texas. However, if the Trustee, in the Trustee's sole discretion, determines that a change of situs would be beneficial to the purposes of any separate trust established by this Trust Agreement, the Trustee shall have the discretion and authority to change the situs of any such trust to another state. Formal notice of any change of situs may be given by filing of record a written declaration in the Real Property Records of Camp County, Texas. If the situs of any such trust is changed to another state, then the trust shall, in all respects, be governed by the laws of the state which is the new situs. No such change of situs shall be authorized herein, however, which would result in a termination of the trust for federal tax purposes.

B.    Small Trust Provision.   Any provision of this Trust Agreement to the contrary notwithstanding, any trustee, other than a beneficiary hereof, shall have the discretionary power to terminate any separate trust created by this Trust Agreement whenever the continued management thereof is no longer economical because of the small size of such trust, taking into consideration financial or other special advantages to the beneficiary or beneficiaries of continuing the trust estate. Upon the termination of any trust estate, the then remaining corpus and undistributed income shall be distributed outright and free of trust to the Settlor, if living; otherwise to the beneficiaries thereof, or to a custodian named for a beneficiary under a Uniform Transfers to Minors Act, or to the beneficiaries' legal representatives in proportion to their respective presumptive interests in the trust or share at the time of such termination. Upon such distribution and delivery, the said trust or share shall terminate and the Trustee then serving shall not be liable or responsible to any person or persons whomsoever for so acting. The Trustee then serving shall not be liable for failing or refusing at any time to terminate the trust or a share thereof as authorized by this paragraph.

C.    Merger of Trusts. If any time the Trustee of any trust created pursuant to this Trust Agreement shall also be acting as Trustee of any other trust created hereby, or by a Will for the benefit of the same beneficiary or beneficiaries upon substantially the same terms and conditions, the then serving Trustee is authorized and empowered, if in such Trustee's discretion such action is in the best interest of the beneficiary or beneficiaries of the trust created hereunder, to transfer and merge all of the assets then held under such trust created pursuant to this Trust Agreement to and with such other trust and thereupon and thereby to terminate the trust created hereby. Such Trustee is further authorized to accept the assets of the other trust which may be transferred to such trustee of the trust created hereunder and to administer and distribute such assets and properties so transferred in accordance with the provisions of this Trust Agreement. If the component trusts differ as to contingent beneficiaries and the contingency occurs, the funds may be distributed in such shares as the trustee, in the Trustee's sole discretion, shall deem necessary to create a fair ratio between the various sets of remaindermen. If any trust created in this Trust Agreement is merged with any trust created under any other document, such merged trust shall not continue beyond the date on which the earliest maximum term of the trusts so merged would, without regard to such merger, have been required to expire. Settlor further directs that, as to any property belonging to any trust estate at any time (including a merged trust) as to which under the laws of any state applicable to said property that trust is required to be terminated at any time prior to its normal termination date, the trust as to that particular property shall terminate at the time required by the laws of said state.

D.    Perpetuities Provision. Notwithstanding any other provisions of this Trust Agreement to the contrary, any trust herein created, if it has not previously terminated, shall terminate twenty-one (21) years after the death of the last to survive of the Settlor and all the

lineal descendants of the Settlor living on the date of this Trust Agreement. Upon such termination, the remaining assets and property of the trust shall be delivered and distributed, outright and free of trust, to the person or persons to whom the income of the particular trust may be distributed at that time. If the income of a particular trust may be distributed to more than one person at that time, the then serving Trustee shall divide the assets and properties between such persons in such proportions between them as said Trustee shall determine, in the Trustee's sole discretion, to best carry out the Settlor's intentions as expressed in this document.

E.    Spendthrift Provision. No beneficiary shall have the right or power to anticipate, by assignment or otherwise, any income or corpus given to such beneficiary or any portion thereof; nor, in advance of actually receiving the same, shall any beneficiary have the right or power to sell, transfer, encumber or in anywise charge same; nor shall such income or corpus, or any portion of same, be subject to any divorce, execution, garnishment, attachment, insolvency, bankruptcy or other legal proceeding of any character, or legal sequestration, levy or sale or in any event or manner be applicable or subject, voluntarily or involuntarily, to the payment of such beneficiary's debts or other obligations.

## ARTICLE VIII.

### Powers of the Trustee

The Trustee shall have and may exercise the following rights, powers and privileges with respect to each trust created by this instrument, unless specifically limited by other provisions of this instrument:

A.    Distributions. The Trustee shall have full power and authority to make all partitions, divisions and distributions contemplated by any of the provisions of this instrument. Any partitions, divisions or distributions may be made by allocating assets and property

proportionately in kind or by allocating undivided interests therein in kind. Any partition, division, or distribution made by the Trustee in good faith shall be binding and conclusive on all interested parties. In the event that a beneficiary shall, in the opinion of the Trustee, be incapacitated by reason of age, illness, or any other cause at the time of a particular distribution, the Trustee may apply the distribution for the benefit of such beneficiary in any manner that the Trustee may deem advisable, whether by payment of such beneficiary's expenses or to any such beneficiary, the legal or natural guardian, the person having custody of such beneficiary or any other person deemed suitable by the Trustee. Should any property be distributable hereunder to a minor person, the Trustee may make the distribution to a custodian for such person under the Uniform Transfers to Minors Act of Texas or any other state.

B. <u>Conservation of Trust Properties</u>. The Trustee may hold, manage and conserve any and all properties transferred to the trust and may take any action that the Trustee may deem necessary or appropriate, including the exercise of all rights and powers that a prudent owner would exercise in managing and conserving properties of a like kind.

C. <u>Investment in Securities</u>. The Trustee may buy, sell or trade any security of any nature (including stocks, stock rights, warrants, bonds, debentures, notes, certificates of interest, certificates of indebtedness and options) or any other things of value issued by any person, firm, association, trust, corporation or body politic whatsoever.

D. <u>Securities and Margin Accounts</u>. The Trustee may buy, sell and trade in securities of any nature, including covered and uncovered options on margin and, for such purposes, may maintain and operate margin accounts with brokers and may pledge any securities with brokers as security for loans and advances made to the Trustee.

E. <u>Investment in Real Estate and Personal Property</u>. The Trustee may, at such cost

and upon such terms as the Trustee may deem advisable, purchase or otherwise acquire real estate and personal property of any kind and hold, manage and conserve the same in whatever manner the Trustee may deem best; lease such property under a lease or leases to commence at once or in the future and for any period of time, even though such period may extend beyond the duration of the trust; renew and extend leases; partition, exchange, release, convey or assign any right, title or interest of the trust in any real estate or personal property owned by the trust; plat real estate and lay out and dedicate streets, alleys and ways; and improve and erect buildings on any real property (in addition to or substitution for buildings at any time existing thereon).

F.    Investment in Oil, Gas and Other Mineral Interests.  The Trustee may purchase or otherwise acquire oil, gas and other mineral interests, leases, royalties, overriding royalties, production payments, oil payments, gas payments, net profit overriding royalties, and net profit interests; grant, make and release oil, gas and other mineral leases, subleases and farmouts; enter into development and drilling contracts, operating contracts and utilization agreements; make arrangements for present or future pooling of any interest in oil, gas or other mineral properties and for secondary recovery projects, and exercise with respect to any and all oil, gas and other mineral properties all rights and powers that a prudent owner would have with respect to properties of a like kind.

G.    Investment in Undivided Interests.  The Trustee may, for any trusts created under this instrument, jointly hold, manage and invest in one or more assets, properties or consolidated funds, in whole or in part, as the Trustee may determine.  As to each asset, property or consolidated fund, division into the appropriate shares need be made only on the Trustee's books of account, in which each trust shall be allotted its proportionate part of the principal and income of the asset, property or fund and charged with its proportionate part of the expenses thereof.  No

such holding shall, however, defer the vesting in possession of any estate created by this instrument.

H.    Investment in Partnerships. The Trustee may purchase or otherwise acquire an interest in any partnership conducting a lawful business, transfer trust property to any partnership which will conduct or is conducting any lawful business, or become either a general or limited partner of any such partnership.

I.    Power to Organize or Continue Business. The Trustee may continue any business (whether a proprietorship, corporation, partnership, limited partnership or other business entity) which the trust may own or in which it may be financially interested for such time as the Trustee may deem to be in the best interests of the trust; employ in the conduct of any such business such capital out of trust as the Trustee may deem proper; borrow money for use in any such business alone or with other persons financially interested in such business, and secure loans by a mortgage, pledge or any other manner of encumbrance of not only the trust's property and interest in such business but also such portion of the trust outside of such business as the Trustee may deem proper; organize, either alone or jointly with others, new corporations, partnerships, limited partnerships or other business entities and convey to it or them trust property or any part thereof; and generally exercise with respect to the continuance, management, sale or liquidation of any business which the trust may own or in which it may be financially interested, or of any new business or business interest, all the rights and powers which a prudent owner of any such business would have.

J.    Selection and Retention of Investments. Any property acquired by the Trustee and at any time constituting any part of the trust shall be deemed a proper investment, and the Trustee shall be under no obligation to dispose of or convert such property. Investments need

not be diversified, may be of a wasting nature, and may be made or retained with a view to possible increase in value. The Trustee may invest all funds available for investment at any time that the Trustee may deem advisable in such investments as the Trustee may be permitted to make pursuant to the terms hereof. The Trustee, unless otherwise herein specifically prohibited, shall have as wide a latitude in the selection, retention and making of investments as an individual would have in retaining or investing his own funds and shall not be limited to nor bound or governed by any statute or regulation respecting investments.

K. Holding Title to Investments. The Trustee may hold title to investments in the name of the Trustee or a nominee. If the trust owns assets located in a jurisdiction in which the Trustee cannot be authorized to act, then the Trustee may appoint any national bank authorized to act in such jurisdiction as Trustee of such assets and confer on such Trustee any power as may be necessary in the premises, but, in any event, such Trustee shall account for all net income and/or net proceeds from the sale of such assets to the Trustee acting hereunder.

L. General Powers. The Trustee may sell, exchange, alter, mortgage, pledge or otherwise dispose of trust property; borrow any sum believed by the Trustee to be necessary or desirable for protecting the trust or any part thereof, making any income or corpus payment or distribution, or for any other purpose which in the Trustee's opinion may be appropriate; pay all reasonable expenses; execute obligations, negotiable and nonnegotiable; join in, by deposit, pledge, or otherwise, any plan of reorganization or readjustment of any investments of the trust, and vest in a protective committee or other legal entity such power as in the Trustee's opinion may be desirable; and sell for cash and/or credit all or any part of the trust property.

M. Power to Make Loans. The Trustee may make loans, secured or unsecured, in such amounts, upon such terms, at such reasonable rates of interest, and to such persons, firms or

corporations as the Trustee may deem proper and appropriate; provided, however, that the Trustee shall not be empowered to make any loan to any person or corporation then serving as Trustee hereunder.

N. Power to Vote Stock. The Trustee may vote shares of stock in person or by proxy, with or without power of substitution; exercise and perform any and all rights, privileges and powers inuring to the holder of any stock or security comprising at any time a part of the trust, and exercise by agent or attorney-in-fact any right appurtenant to any property or matter in which the trust may be interested.

O. Protection of the Trust Estate. The Trustee may protect, perfect and defend the title to any trust property; sue and be sued; enforce any bonds, mortgages or other obligations or liens owned by the trust; compromise, arbitrate, or otherwise adjust claims in favor of or against the trust; waive or release rights of any kind; and abandon any property considered by the Trustee to be worthless.

P. Notes, Mortgages, and Foreclosures. The Trustee may, at any time, reduce the rate of interest payable on any bond, note, or other security owned by the trust; continue mortgages upon and after maturity, with or without renewal, or extend the same upon such terms as seem advisable to the Trustee without reference to the value of the security at the time of such continuance; modify or release any guaranty or mortgage; as an incident to collection of any bond or note, foreclose and bid in the property at foreclosure sale, acquire the property by deed from the mortgagor or obligor without foreclosure and retain the property so bid in or taken over without foreclosure.

Q. Insurance. The Trustee may carry such insurance coverage (in stock companies or in mutual companies), including public liability, property damage and life insurance, for such

hazards and in such amounts as the Trustee may deem advisable. With respect to life insurance, the Trustee may acquire life insurance on the life of any beneficiary or on the life of any person in whom a beneficiary has an insurable interest from any company in such amount and type as the Trustee may deem advisable, pay all premiums from either income or principal, and designate as beneficiary the Trustee of the trust. With respect to all insurance policies held in the trust estate, unless the Trustee shall arrange for the automatic application of dividends in reduction of premium payments, dividends shall be treated as a return of corpus and applied to the payment of such premiums.

R.     Employ and Compensate Agents and Representatives. The Trustee may employ, appoint, remove and compensate, out of income or corpus or in such proportion between income and corpus as the Trustee may deem proper, agents or other representatives, including accountants, brokers, attorneys-at-law, attorneys-in-fact, investment counsel, investment brokers, realtors, rental agents, geologists, engineers, and other assistants and advisers, as are deemed by the Trustee to be helpful in the proper administration of the trust, without liability for any neglect, omission, misconduct, or default of such agent or representative, provided such agent or representative was selected and retained by the Trustee with due care.

S.     Establish and Maintain Reserves. Out of rents, profits, or other income received, the Trustee may set up reserves for taxes, assessments, insurance premiums, repairs, improvements, depletion, depreciation, obsolescence and general maintenance of buildings or other property.

T.     Power to Determine Income and Corpus. Stock dividends and capital gains shall be treated as corpus. Except as herein otherwise specifically provided, the Trustee shall determine in accordance with general principles of federal tax law the manner in which expenses

are to be borne and receipts credited between corpus and income and what shall constitute income, net income and corpus. In determining such matters, the Trustee may give consideration to, but shall not be bound by, the provisions of the Texas Trust Code.

U.      **Liability of Third Party.**  No purchaser at any sale made by the Trustee or person dealing with the Trustee is obliged to see to the application of any money or property paid or delivered to the Trustee or to inquire into the expediency or propriety of, or the authority of the Trustee to enter into and consummate, any transaction.

V.      **Documents.**  The Trustee may execute and deliver any deeds, conveyances, assignments, leases, contracts, stock or security transfer powers, or any other written instrument of any character appropriate to any of the powers or duties herein conferred upon the Trustee.

W.      **Transactions with Beneficiaries and Fiduciaries.**  The Trustee is authorized to enter into any transaction permitted by this instrument, even though the other party to that transaction is a beneficiary; the estate of a beneficiary; a trust created by or for the benefit of a beneficiary, whether living or deceased; the estate of Settlor; a personal representative of any estate, including that of Settlor; or a Trustee of any trust, including the Trustee under this instrument acting individually; except to the extent that the Texas Trust Code, as amended, or any successor statute may expressly prohibit Settlor from authorizing any corporate Trustee serving hereunder from engaging in any such transaction. The Trustee is authorized, but not directed, to lend trust funds to the personal representatives of the Settlor's estate upon such security and for such time and at such rate of interest as the Trustee, in its sole discretion, deems proper, and to purchase any assets from the personal representatives of the Settlor's estate for such sums and on such terms as the Trustee may deem appropriate or proper; provided, however, that the Trustee shall be required to act in all such matters on the same basis as it would in

other policies or any benefit plans which may be made payable to the Trustee hereunder, including, but not limited to, the following:

1.    The power, as provided in Article I above, to add the proceeds of any other policies of insurance and any benefit plans to the operation of the trust by making such policies and benefit plans payable to the Trustee;

2.    The right to receive or apply dividends or distributive shares of surplus, disability benefits, surrender values or the proceeds of matured endowments;

3.    The power to obtain and receive from the respective insurance companies such advances or loans on account of policies as may be available;

4.    The power to exercise any option, right or privilege granted in any policy or benefit plan;

5.    The power to borrow on, sell, assign or pledge any policy or rights under any benefit plan;

6.    The power to change the beneficiary of any policy or benefit plan;

7.    The power to withdraw a policy or benefit plan from the operation of this trust in order to exercise a reserved power or for any other purpose;

8.    The power to change the beneficiaries under this Trust Agreement, their respective shares and plans of distribution; and

9.    The power to convert any policy of insurance into another form or forms of insurance.

It is the intent of the parties hereto that as to the life insurance policies listed on the attached Schedule A, the Trustee shall receive only the proceeds payable at the death of the insured Settlor subject to all loans and charges against such proceeds as may have accrued during

such Settlor's lifetime, and the Settlor shall, during his lifetime, retain all other contractual benefits, powers and options under such policies and benefit plan.

B.     Duty Regarding Policies and Premium Payments.

1.     Settlor's Duties.   It is the Settlor's intention to pay all premiums, assessments, or other charges necessary to keep all policies owned by them and payable to the Trustee in force, but the Settlor shall be under no duty to do so and shall sustain no liability to anyone if Settlor should permit any policies within operation of the trust to lapse for non-payment of premiums, assessments, or other charges, or otherwise permit the policies, or any of them, to become uncollectible.

2.     Trustee's Duties.   The Trustee shall be under no obligation, during the lifetime of the Settlor, to pay any premiums, assessments, or other charges necessary to keep the policies in force, nor shall the Trustee be under any obligation to ascertain whether the same have been paid, or to notify any person of the non-payment of premiums.   The Trustee shall keep safely all policies deposited with the Trustee, and shall, at the request of the Settlor, execute such releases and other documents as shall be required to permit the Settlor to exercise any options, privileges, or powers reserved to the Settlor hereunder.

C.     Trustee's Duties Upon Insured Settlor's Death.   As soon as practicable after the death of an insured Settlor, the Trustee shall make such proofs of death as shall be required under any policies of insurance then within the operation of this Trust Agreement and payable to the Trustee, and the Trustee shall receive such sums of money as shall be due to the Trustee under the terms of such policies of life insurance, including double indemnity benefits, and hold the same, in trust, for the uses and purposes hereinafter set forth.   To facilitate the receipt of such

sums of money, the Trustee shall have the power to execute and deliver receipts and other documents, to compromise or adjust disputed claims in such manner as the Trustee, in the Trustee's sole discretion, may deem just, and to take such steps as the Trustee, in the Trustee's sole discretion, shall deem necessary and proper for collection thereof; provided that if payment on any policy is contested, the Trustee shall not be obligated to take any action for collection unless and until the Trustee shall have been indemnified to the Trustee's satisfaction against any loss, liability, or expense, including attorney's fees; and provided further, that the Trustee may, in the Trustee's sole discretion, use any funds in the Trustee's hands, whether corpus or income, to pay the costs and expenses, including attorney's fees, of bringing action for the collection of the proceeds of any policy hereunder, and the Trustee may be reimbursed for any advances made for such purposes. Upon payment to the Trustee of the amounts due under the policies of insurance payable hereunder, the insurance companies issuing such policies shall be relieved of all further liability hereunder, and no such insurance company shall be under any responsibility to see to the performance of the trust created hereby.

To the extent permitted, the Trustee shall have the right to negotiate and receive proceeds from employee benefit plans in any manner the Trustee may deem prudent and consistent with the tax (estate, generation-skipping, income, and other) and other objectives of any trust established hereunder and its beneficiaries; provided, however, if such proceeds would be otherwise exempt from federal estate taxes in whole or in part, the Trustee shall not elect to receive, use or expend such otherwise exempt proceeds in such a manner as will subject them to federal estate taxation in Settlor's estate without the written consent of the personal representative of Settlor's estate.

## ARTICLE X.

### Acceptance by Trustee

The Trustee by executing this Trust Agreement hereby accepts the trust created by this Trust Agreement and covenants to faithfully discharge all duties of the Trustee hereunder.

## ARTICLE XI.

### Definitions and General Provisions

The following definitions and provisions are applicable to this Trust Agreement:

A.     Children and Descendants.  The terms "child, children, descendants, issue" and similar terms shall be deemed only to include children born to, or adopted (on or before eighteen years of age) in, a lawful marriage.  A posthumous child shall be considered as living at the death of his parent.

B.     Heirs.  The "heirs" of a person shall include those persons who would have inherited the personal property of a deceased person had such deceased person died intestate at the time of such distribution, unmarried and domiciled in Texas, under the laws of the State of Texas then in force, taking shares as prescribed by such applicable laws.

C.     Beneficiary.  A "beneficiary" is a person who is entitled to distribution assets hereunder.  Any person who is prohibited by law from inheriting property from my estate shall be treated as having failed to survive me.

D.     Trust.  Except as provided otherwise by the context of this document, the word "trust" as used herein shall include any and all trusts created hereunder.

E.     Trust Estate.  The term "trust estate" means all assets, however and whenever acquired, including income, which may belong to a trust at any given time.

F.     Trustee.  The term "Trustee" shall include within its meaning any trustee and all trustees serving from time to time hereunder and shall refer both to the original Trustee and to

any successor or substitute thereof.

G.     <u>Code</u>. The term "Code" refers to the Internal Revenue Code of 1986, as amended, and corresponding provisions of any subsequent federal tax laws.

H.     <u>Other Terms</u>. The use of any gender includes the other genders, and the use of either the singular or the plural includes the other.

## ARTICLE XII.

### Binding Effect

This Trust Agreement shall extend to and be binding upon the heirs, executors, administrators, legal representatives and successors, respectively, of the parties hereto.

## ARTICLE XIII.

### Captions Not Interpretive

The captions that have been used to designate the various articles, paragraphs and subparagraphs in this Trust Agreement are solely for convenience in reading and ease of reference and shall not be construed in any event or manner as interpretive or limiting the interpretation of the same.

**IN WITNESS WHEREOF**, this Trust Agreement was executed on this the _24th_ day of _December_, 2012.

_____
Tedde R. Blunck, Settlor


_____
Paulette M. Blunck, Trustee

STATE OF TEXAS         §
        §
COUNTY OF CAMP         §

     **BEFORE ME**, the undersigned authority, in and for the State of Texas, on this day personally appeared Tedde R. Blunck, in his capacity as Settlor, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed and in the capacity therein stated.

     **GIVEN UNDER MY HAND AND SEAL OF OFFICE** on this the 24 day of December , 2012.



KOLHIN DEANN MARSHALL
Notary Public, State of Texas
My Commission Expires
October 05, 2015

_____
Notary Public, State of Texas

STATE OF TEXAS         §
        §
COUNTY OF CAMP         §

     **BEFORE ME**, the undersigned authority, in and for the State of Texas, on this day personally appeared Paulette M. Blunck, in her capacity as Trustee, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she executed the same for the purposes and consideration therein expressed and in the capacity therein stated.

     **GIVEN UNDER MY HAND AND SEAL OF OFFICE** on this the 24 day of December, 2012.



KOLHIN DEANN MARSHALL
Notary Public, State of Texas
My Commission Expires
October 05, 2015

_____
Notary Public, State of Texas

## SCHEDULE A

### To The Tedde R. Blunck Living Trust

### Dated: December 24, 2012

**Initial Assets:** All of Settlor's interest in and to the following described properties:

**REAL PROPERTY:**

Parcel #1
Address:               1347 County Road 4510, Pittsburg, Texas 75686
Legal Description:    ABS A060 Mary Hayes, Tract, 41-5000, 406.93 (+1.55 AC in Rd.) acres, Camp County, Texas (containing a computed area of 408.48 acres with 1.55 acres in a public road, leaving a net area of 406.93 acres)

BEING a tract of land situated in the MARY HAYS SURVEY ABSTRACT NO. 60, Camp County, Texas and being the remainder of a tract of land conveyed to E. B. McCaslin by deed recorded in volume 191 Page 415 Deed Records Camp County, Texas, and being more particularly described by metes and bounds as follows:

BEGINNING at a point for the Southeast corner of this tract on the centerline of County Road No. 4510, same being the Northeast corner of a tract of land conveyed to F. M. Jones by deed recorded in volume 22 page 286 Deed Records Camp County, Texas.
THENCE South 89 degrees 56 minutes 43 seconds West, passing a ½ inch capped (yellow plastic stamped Dewey 1641) steel rod set on the West line of County Road No. 4510 at 20.00 feet and continuing along the common line between said McCaslin and Jones tracts and generally along a wire fence for a total distance of 2443.60 feet to a ½ inch capped (yellow plastic stamped Dewey 1641) steel rod set for corner, same being a point in the East line of a tract of land in the name of Mrs. Hallie Reed, (no recording data).
THENCE North 20 degrees 00 minutes 00 seconds West along the common line between said McCaslin and Reed tracts, passing the Southeast corner of a tract of land in the name of J. W. Smith, (no recording data), also passing the Southeast corner of a tract of land in the name of J.D. Pankhurst, (no recording data) and continuing generally along a wire fence for a total distance of 6370.90 feet to a point for corner in Prairie Creek.
THENCE the following calls along the common line between said McCaslin and Pankhurst tracts and the meanderings of said creek:
1. North 43 degrees 20 minutes 02 Seconds East 366.11 feet
2. North 14 degrees 19 minutes 43 seconds West, passing the Northeast corner of said Pankhurst tract, same being a corner of a tract of land conveyed to Prairie Creek Ranch Partnership by deed recorded in volume 255 page 407 Deed Records Camp County,

Texas and continuing for a total distance of 2187.00 feet to a point for corner in said creek, same being the Southwest corner of a tract of land in the name of P. L. Nolen et al, (no recording data).

3. North 48 degrees 55 minutes 32 seconds East along the common line between said McCaslin and Nolen tracts for a distance of 61.73 feet to a point for corner in said creek.

4. South 54 degrees 55 minutes 32 seconds East along the common line between said McCaslin and Nolen tracts for a distance of2 34.56 feet to a point for corner in said creek.

5. North 55 degrees 17 minutes 22 seconds East along the common line between said McCaslin and Nolen tracts for a distance of 300.86 feet to a point for corner in said creek.

6. THENCE South 87 degrees 51 minutes 39 seconds East along the common line between said McCaslin and Nolen tracts for a distance of 121.10 feet to a point for corner in said creek.

7. THENCE North 60 degrees 17 minutes 00 seconds East along the common line between said McCaslin and Nolen tracts for a distance of 83.25 feet to a point for corner in said creek.

8. North 73 degrees 43 minutes 49 seconds East along the common line between said McCaslin and
Nolen tracts for a distance of 48.00 feet to point for corner in said creek,

9. South 64 degrees 21 minutes 04 seconds East along the common line between said McCaslin and
Nolen tracts for a distance of 218.71 feet to a point for corner in said creek.

10. North 11 degrees 55 minutes 04 seconds West along the common line between said McCaslin and Nolen tracts for a distance of 65.38 feet to a point for corner in said creek.

11. North 08 degrees 50 minutes 00 seconds East along the common line between said McCaslin and
Nolen tracts for a distance of 112.06 feet to a point for corner in said creek.

12. South 66 degrees 39 minutes 07 seconds East along the common line between said McCaslin and
Nolen tracts for a distance of 201.50 feet to a point for corner in said creek

13. North 85 degrees 46 minutes 22 seconds East along the common line between said McCaslin and Nolen tracts for a distance of 21.50 feet to a point for corner in said creek, same being a point in the West line of a tract of land in the name of H. Stephens, (no recording data).

THENCE South 19 degrees 48 minutes 58 seconds East along the common line between said McCaslin and Stephens tracts and generally along a wire fence, passing the following tracts along the East line of McCaslin tract:

Annie Reynolds, (no recording data), Hartwell Stephens, (no recording data), and a tract of land conveyed to E. R. McCaslin and Myrtle McCaslin by deed recorded in volume 59 page 43 Deed Records Camp County, Texas and continuing for a total distance of 5101.23 feet to a fence post found for corner.

THENCE North 70 degrees 11 minutes 31 seconds East along the common line

point, a ½ inch iron rod found, bears North 69 Degrees 03 Minutes 27 Seconds West, a distance of 64.00 feet;

THENCE South 69 Degrees 03 Minutes 27 Seconds East, with the South line of said State Highway No. 11, a distance of 60.38 feet to a ½ inch iron rod set with a yellow plastic cap stamped (CBG INC) at the Northwest corner of a tract of land once conveyed to Mollie Thomison by Warranty Deed as recorded in Volume 051, page 165, Deed Records, Camp County, Texas, from said point, a ½ inch iron pipe found, bears North 12 Degrees 53 Minutes 11 Seconds West, a distance of 0.98 feet;

THENCE South 12 Degrees 53 Minutes 11 Seconds West, with the West line of said Thomison tract, and passing the Southwest corner of said Thomison tract, and a Northwest corner of the remainder of a called 1-1/4 acre tract conveyed to Camp County-City of Pittsburg, Texas, by Warranty Deed, as recorded in Volume 122, page 483, Deed Records, Camp County, Texas, and continuing on for a total distance of 283.36 feet to a ½ inch iron rod set with a yellow plastic cap stamped (CBG INC) at the Eastern most Northeast corner of a called 0.253 acre tract conveyed to the East Texas Medical Center Regional Healthcare System, by Warranty Deed, as recorded in Volume 179, page 128, Official Public Records, Camp County, Texas, from said point, a ½ inch iron rod found with a red plastic cap stamped (S&A), bears South 10 Degrees 49 Minutes 21 Seconds West, a distance of 73.64 feet;

THENCE North 71 Degrees 36 Minutes 01 Seconds West, with a North line of said 0.253 acre tract, a distance of 100.00 feet to a ½ inch iron rod set with a yellow plastic cap stamped (CBG INC) at an ell corner of said 0.253 acre tract;

THENCE North 20 Degrees 54 Minutes 16 Seconds East, (Reference Bearing), with the an East line of said 0.253 acre tract, and passing at a distance of 11.29 feet, a ½ inch iron rod found with a red plastic cap stamped (S&A) at the Northern most Northeast corner of said 0.253 acre tract, and the Southeast corner of the remainder of said 0.623 acre tract, and continuing on for a total distance of 285.00 feet to the POINT OF BEGINNING and CONTAINING 22,707 square feet or 0.52 acres of land, more or less.

**ALL HOUSEHOLD FURNITURE, FURNISHINGS, FIXTURES, GOODS, ART OBJECTS, COLLECTIBLES, APPLIANCES, AND EQUIPMENT OWNED BY SETTLOR**

**MOTOR VEHICLES:**

Vehicle #1
Description:     2008 Ford F-150 Lariat, vehicle identification number 1FTPW14V88FB48320

Vehicle #2
Description:     2012 Ford Escape, vehicle identification number

1FMCUCEG7CKA65259

Vehicle #3
Description: 1976 Bethany Citation Travel Trailer, vehicle identification number BF1111CFB464015

## CASH IN BANKS:

Account #1
Institution: First National Bank
Account type: Checking Account
Account/CD #: 503108466

~~Account #2~~
~~Institution:~~ ~~First National Bank~~
~~Account type:~~ ~~Individual Retirement Account~~
~~Account/CD #:~~ ~~42111~~

~~Account #3~~
~~Institution:~~ ~~Pilgrim Bank~~
~~Account type:~~ ~~Individual Retirement Account~~
~~Account/CD #:~~ ~~5151865~~

~~Account #4~~
~~Institution:~~ ~~Capital One Bank~~
~~Account type:~~ ~~Individual Retirement Account~~
~~Account/CD #:~~ ~~481523054~~

## LIFE INSURANCE:

Policy #1
Insurer: Liberty Life
Policy #: 6268

Policy #2
Insurer: West Coast Life
Policy #: 2817

Policy #3
Insurer: Mass Mutual
Policy #: 5310

## EMPLOYEE RETIREMENT PLANS:

~~Item #1~~
~~Description: Tedde R. Blunek's benefits in Parsons Brinckerhoff, Inc. Executive~~

---

~~Deferred Compensation Plan (DCOMP I), c/o T. Rowe Price, arising out of Tedde R.~~
~~Blunck's employment with Parsons Brinckerhoff, Inc. to be paid when Tedde R. Blunck~~
~~is eligible for funds withdrawal and actually paid.~~



~~Item #2~~

~~Description: Tedde R. Blunck's benefits in Parsons Brinckerhoff Inc. Exec~~
~~Deferred Compensation Plan (DCOMP II), c/o T. Rowe Price, arising out of Tedde R.~~
~~Blunck's employment with Parsons Brinckerhoff, Inc. to be paid when Tedde R. Blunck~~
~~is eligible for funds withdrawal and actually paid.~~



~~Item #3~~

~~Description: Tedde R. Blunck's retirement benefits in Parsons Brinckerhoff~~
~~Group Inc. 401K Retirement Savings Plan, c/o T. Rowe Price, arising out of Tedde R.~~
~~Blunck's employment with Parsons Brinckerhoff Group Inc.~~

## MISCELLANEOUS:

Item #1
Description: ALL GUNS, KNIVES, ARCHERY EQUIPMENT AND AMMUNITION OWNED BY SETTLOR.

Item #2
Description: ALL ENGINEERING AND SURVEYING EQUIPMENT OWNED BY SETTLOR.

Item #3
Description: ALL BUSINESS FURNITURE, COMPUTERS, BUSINESS EQUIPMENT AND SUPPLIES OWNED BY SETTLOR.

Item #4
Description: ALL TOOLS, EQUIPMENT AND OTHER PERSONAL PROPERTY OWNED BY SETTLOR.

Item #5
Description: ALL CLOTHING, JEWELRY, AND OTHER PERSONAL EFFECTS OWNED BY SETTLOR.

Item #6
Description: ALL HUNTING TROPHIES AND PRINTS OWNED BY SETTLOR.

Item #7
Description: PROCEEDS FROM THE NOTES RECEIVABLE FROM RICHARD AND VANESSA ANTOINE AND BEAU SHAFER.

_Tedde R. Blunck, Settlor_

_Paulette M. Blunck, Trustee_

VOL **334** PAGE **633**



FILED FOR RECORD
at __2:05__ o'clock __P__ m



ELAINE YOUNG
County Clerk, Camp County, Texas
By _____ Deputy

DEC 27 2012

THE STATE OF TEXAS      I, ELAINE YOUNG, COUNTY CLERK, CAMP COUNTY, TEXAS
COUNTY OF CAMP      do hereby certify that the foregoing instrument of writing with its
Certificate of authentication was filed for record in my office on the __27__ day of __Dec__ A.D. 2012
at __2:09__ o'clock __P__ M. and duly recorded on the __27__ day of __Dec__ A.D. 2012
File no. __41,691__ ; Vol. __334__ Page __601__ of Official Public Record of said county.
Witness my hand and seal of office Pittsburg, Texas the day and year last above written.

ELAINE YOUNG, COUNTY CLERK
By: _____, DEPUTY
KIM PITTMAN

MOVANT'S EXHIBIT 2

02-09-15

B6A (Official Form 6A) (12/07)

In re  **Tedde Robin Blunck**                                        Case No.   **13-20129**
                                                                                    (if known)

## SCHEDULE A - REAL PROPERTY

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, Without Deducting Any Secured Claim or Exemption | Amount Of Secured Claim |
|---|---|---|---|---|
| Real property in Hays County Less than 10 acres of real property and improvements located at 1152 Little Bear Road, Buda, Hays County, Texas, subject to Cathy A. Blunck's right to exclusive use of the property pending payments of funds by Tedde Blunck (100% of mineral rights)<br><br>Legal: Lot 9, Block C od Elliott Ranch, Phase Four, a subdivision in Hays County, Texas, according to the map or plat of record in Volume 12, Pages 151-156 of the Plat Records of Hays County, Texas | Fee Simple | C | $515,000.00 | $388,440.00 |
| Debtor's homestead (Camp County) 406.93 acres of real property with improvements located at 1347 CR 4510 Pittsburg, Camp County, Texas. (100% of mineral rights)<br><br>Legal: ABS A060 Mary Hayes, Tract, 41-5000, 406.93 (+1.55 AC in Rd.) acres, Camp County, Texas (containing computed area of 408.48 acres with 1.55 acres in a public road, leaving a net area of 406.93 acres) BEING a tract of land situated in the MARY HAYS SURVEY ABSTRACT NO. 60, Camp County, Texas and being the remainder of a tract of land conveyed to E.B. McCaslin by deed recorded in Volume 191 Page 415 Deed Records Camp, County, Texas, and being more particularly described by metes and bounds | Equitable Interest | H | $650,000.00 | $428,648.00 |
| Orlanda, FL time share | Time Share | H | $20,000.00 | $0.00 |

                                                        Total:    $1,185,000.00
                                                        (Report also on Summary of Schedules)

TAB "F"

Page 17

B6B (Official Form 6B) (12/07)

In re  **Tedde Robin Blunck**                                    Case No.  **13-20129**
                                                                              (if known)

## SCHEDULE B - PERSONAL PROPERTY

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1. Cash on hand. | X | | | |
| 2. Checking, savings or other financial accounts, certificates of deposit or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | Cypress Bank (IOLTA account) Pittsburg, Texas | - | $0.00 |
| | | Cypress Bank, checking xxxx8152 | - | $286.00 |
| | | Cypress Bank; checking xxxx2980 (funds comingled with debtor's) | W | $7,374.29 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video and computer equipment. | | stove | - | $100.00 |
| | | microwave | - | $50.00 |
| | | refigerator/freezer | - | $300.00 |
| | | freezer | - | $300.00 |
| | | washer/dryer | - | $200.00 |
| | | silverware | - | $50.00 |
| | | bedroom furniture | - | $750.00 |
| | | lawn furniture | - | $50.00 |
| | | lawnmower | - | $350.00 |
| | | televisions | - | $300.00 |
| | | VCR | - | $50.00 |
| | | DVR | - | $50.00 |

Page 174 of 207

B6B (Official Form 6B) (12/07) -- Cont.

In re  **Tedde Robin Blunck**                                      Case No.   **13-20129**
                                                                                    (if known)

## SCHEDULE B - PERSONAL PROPERTY

*Continuation Sheet No. 1*

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| | | computer | - | $200.00 |
| | | household tools | - | $100.00 |
| | | plates | - | $50.00 |
| | | den furniture | - | $500.00 |
| | | dining room furniture | - | $450.00 |
| 5. Books; pictures and other art objects; antiques; stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | | clothing | - | $1,000.00 |
| 7. Furs and jewelry. | | personal jewelry | - | $2,500.00 |
| 8. Firearms and sports, photo-graphic, and other hobby equipment. | | Belgium made Browning Nomad, 6 3/4" barrel, semi-automatic, 22 long rifle caliber, S/N 69196P6 | - | $400.00 |
| | | Smith & Wesson Model 17-3, 6" barrel, 6-shot double action revovler, 22 long rifle caliber, S/N SK10201, G12 | - | $450.00 |
| | | Smith & Wesson Model 19-3, 6" barrel, 6-shot double action revolver, 357 magnum caliber, S/N 9K64937 | - | $500.00 |
| | | Smith & Wesson Model 29-2, 8 3/8" barrel, 6-shot double action revolver, 44 magnum caliber, S/N N602213 | - | $650.00 |
| | | Heckler & Kock Model USP Compact 9mmx19, semi-automatic, 9mm caliber, S/N 27-050428 | - | $750.00 |

B6B (Official Form 6B) (12/07) – Cont.

In re  **Tedde Robin Blunck**                                        Case No.   **13-20129**
                                                                                    (if known)

## SCHEDULE B - PERSONAL PROPERTY
*Continuation Sheet No. 2*

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| | | Smith & Wesson Model 500, 9" barrel, 5-shot stainless steel double action revolver, .500 magnum caliber, S/N CHM7025 | - | $1,100.00 |
| | | Thompson Center Contender, single shot, .357 Herrett caliber, S/N 108086, two barrels, one with iron sights and one with Leupold 2X scope | - | $900.00 |
| | | Tarus Model 4510 3" Stainless Steel Barrel, .410 & .45 caliber, S/N CV883961 | - | $600.00 |
| | | Kel Tec Model P-3AT, 6-shot semi-automatic hard chrome, .380 auto caliber, S/N HRM53 | - | $350.00 |
| | | Glock Model 19 9mmx19, semi-automatic, 9mm caliber, S/N BY6096 | - | $500.00 |
| | | Buddie Arms Double Duce 22 long rifle 2-shot Derringer, S/N 15918 | - | $250.00 |
| | | Ruger LCP Model 03701 semi-automatic 380 auto caliber S/N 378-46340 with LazerMax sight | - | $500.00 |
| | | S&W 460 Model Whitetails Unlimited 1 of 100 Texas Model S/N WTU1071 | - | $1,500.00 |
| | | InterArms Model Mark X Alaskan, 375 H & H Magnum caliber, bolt action, S/N B203486 with 2x7 Redfield Widefield Accutrac scope with Redfield mounts | - | $1,200.00 |
| | | Remington Model 700 BDL, 270 caliber, bolt action, S/N 6357819 with 3x9 Redfield Widefield Accutrac scope with Redfield Mounts | - | $1,000.00 |
| | | Ruger Model 10/22 Cabrine, 22 long rifle caliber, semi-automatic S/N 231-79409 with 4x Weaver scope with Weaver mounts | - | $500.00 |

B6B (Official Form 6B) (12/07) – Cont.

In re  **Tedde Robin Blunck**                                                        Case No.  **13-20129**
                                                                                                    (if known)

## SCHEDULE B - PERSONAL PROPERTY
*Continuation Sheet No. 3*

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| | | Century Arms Inc. Golani Sportster, .223 caliber, two 35 round clips and one 50 round clip, S/N GLN03854 | - | $750.00 |
| | | Colt AR-15, A2, 223 Caliber Government Cabrine S/N 007831 with AimPoint Como ML2 4MOA, Model 10338, S/N 262216, three 20 round clips and one 50 round clip and Streamlight Tactical Illuminator Model M3, no S/N rifle, Aimpoint, and Illuminator | - | $2,500.00 |
| | | Remington Model 700 BDLEngraved, 300 Winchester caliber, bolt action S/N E6478948 with 4x12 Bushnell Sportview scope S/N 74-0412-0 | - | $1,600.00 |
| | | Savage Arms Model 19530 Axis XP 243 Winchester caliber, bolt action, S/N H493953 with 3x9 Bushnell Scope S/N 76-3945 | - | $500.00 |
| | | AU Gamo Bone Collector Bull Whisper 4.5 (.177) Caliber Air Rifle S/N 04-IC507916-11 with VFLC 4x32 Scope S/N 1711F | - | $250.00 |
| | | 59/66 Yugo Model 7.62x39 Nato Round C.A.I. Georgia, VT, Stock-Kugle Vuto 1992-S/N D62531 | - | $350.00 |
| | | Savage 93 R17 Model .17 HMR Caliber S/N 0177749 | - | $225.00 |
| | | Winchester Model 12,2 3/4" chamber, 12 gauge, pump, modified choke, S/N 1761819 | - | $1,000.00 |
| | | Winchester Model 50, 2 3/4" chamber, 20 gauge, semi-automatic, modified choke, S/N 74552 | - | $750.00 |
| | | Winchester Ducks Unlimited Model 1300, 3" chamber, 12 gauge, pump, ventilated rib, Winchoke with improved cylinder, modified and full chokes, S/N L3142933 | - | $500.00 |
| | | Winchester Model 50, 2 3/4" chamber, 12 gauge, semi-automatic, full choke, S/N 55844 | - | $500.00 |

B6B (Official Form 6B) (12/07) – Cont.

In re  **Tedde Robin Blunck**                                      Case No.   **13-20129**
                                                                              (if known)

## SCHEDULE B - PERSONAL PROPERTY
*Continuation Sheet No. 4*

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| | | Belgium made Winchester Model Super X2 magnum, 2 3/4", & 3 1/2" chamber, 12 gauge, semi-automatic, ventilated rib, Mossy Oak Marsh Grass Camo, Invector Plus Chock with improved cylinder, modified, full and turkey inserts, S/N 11ANN12087 | - | $1,200.00 |
| | | Chinese made UCN X12, 3" chamber, 12 gauge, pump, riot gun with heat dissipater, black matte finish, 19" barrel, improved cylinder choke, nylon sling, S/N 03 02717 | - | $300.00 |
| | | Remington 870 Magnum 12 gauge pump, 3" chamber, invector choke, extended magazine, S/N V550259M with Simmons 4x32 Prodiamond shotgun Scope with Weaver top mounts and Tasco side plate | - | $500.00 |
| | | ArmSport Model 2746, 2 3/4", 3", & 3 1/2" chamber, 12 gauge over and under, 28" barrel with variable choke, improved cylinder, modified and full, engraved barrel, receiver and forearm, manufactured by Armi Techniche Emillo Rizzini, Marches, Italy, S/N 58085 | - | $750.00 |
| | | Pelican 2 gun hard sided case | - | $300.00 |
| | | 3 Plano 2 gun hard sided cases | - | $300.00 |
| | | 8-Soft long gun cases | - | $300.00 |
| | | Knives, game calls, holsters & ammunition | - | $3,000.00 |
| | | PSE Firestorm Lite Bow w/quiver stablizer, sights, whisker biscuit, case and 5 dozen aluminum arrows | - | $500.00 |
| | | PSE X-Force HF w/quiver, stabilizer, sights, whisker biscuit, case and 2 dozen Axis arrows | - | $1,550.00 |
| | | 5 dozen Silver broadheads, 4 dozen Muzzy broadheads | - | $300.00 |

Page 178 of 207

B6B (Official Form 6B) (12/07) – Cont.

In re  **Tedde Robin Blunck**                                   Case No.  **13-20129**
                                                                                   (if known)

# SCHEDULE B - PERSONAL PROPERTY
*Continuation Sheet No. 5*

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | Parsons Brinckerhoff Inc. Exec Def Comp Plan (DCOMPI) | - | $78,104.00 |
| | | Parsons Brinckerhoff Inc. Exec Def Comp Plan (DCOMPII) | - | $120,816.00 |
| | | Traditional IRA - Rollover (FNB Pittsburg, Texas) #42111 | - | $236,657.03 |
| | | T.RowePrice 401K | - | $40,120.25 |
| | | IRA: Pilgrim Bank of Pittsburg, Texas acct. no. xxxx865 (estimate) | - | $210,000.00 |
| | | IRA: Capital One Bank account no. xxxxxx474 (estimate) | - | $229,000.00 |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |

Page 179 of 207

B6B (Official Form 6B) (12/07) -- Cont.

In re  **Tedde Robin Blunck**                                    Case No.  **13-20129**
                                                                        (if known)

## SCHEDULE B - PERSONAL PROPERTY
*Continuation Sheet No. 6*

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and non-negotiable instruments. | X | | | |
| 16. Accounts receivable. | | Oustanding loan balance from Beau Shafer (balance owed on note secured by Jeep) | - | $14,500.00 |
| | | Note receivable from Richard and Vanessa Antoine | - | $45,000.00 |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercis-able for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

Page 180 of 207

B6B (Official Form 6B) (12/07) – Cont.

In re  **Tedde Robin Blunck**                                    Case No.   **13-20129**
                                                                                    (if known)

## SCHEDULE B - PERSONAL PROPERTY
*Continuation Sheet No. 7*

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 21. Other contingent and unliqui-dated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims.  Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | 1976 Bethany Citation Travel Trailer | - | $2,000.00 |
| | | 2007 Ford Expedition | - | $12,000.00 |
| | | 2008 Ford F-150 | - | $15,000.00 |
| | | 2012 Ford Escape | - | $21,000.00 |
| 26. Boats, motors, and accessories. | | Duck Boat, Motor, and Trailer (titled to Debtor; in possession of former spouse) | - | $5,000.00 |
| 27. Aircraft and accessories. | X | | | |

Page 181 of 207

B6B (Official Form 6B) (12/07) – Cont.

In re **Tedde Robin Blunck**                                                                                   Case No. __13-20129_____
                                                                                                                                              (if known)

## SCHEDULE B - PERSONAL PROPERTY

*Continuation Sheet No. 8*

| Type of Property | None | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 28. Office equipment, furnishings, and supplies. | | Desks | - | $100.00 |
| | | computers | - | $1,000.00 |
| | | office furnishings | - | $500.00 |
| | | misc. office equipment | - | $50.00 |
| | | legal reference books | - | $300.00 |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

___8_____ continuation sheets attached **Total >** | $1,075,232.57
(Include amounts from any continuation sheets attached. Report total also on Summary of Schedules.)

Page 182 of 207

B6C (Official Form 6C) (4/13)

In re  **Tedde Robin Blunck**                                    Case No.  **13-20129**
                                                                        (If known)

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor claims the exemptions to which debtor is entitled under:          ☐  Check if debtor claims a homestead exemption that exceeds
(Check one box)                                                              $155,675.*

☐  11 U.S.C. § 522(b)(2)
☑  11 U.S.C. § 522(b)(3)

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| Debtor's homestead (Camp County) 406.93 acres of real property with improvements located at 1347 CR 4510 Pittsburg, Camp County, Texas. (100% of mineral rights)<br><br>Legal: ABS A060 Mary Hayes, Tract, 41-5000, 406.93 (+1.55 AC in Rd.) acres, Camp County, Texas (containing computed area of 408.48 acres with 1.55 acres in a public road, leaving a net area of 406.93 acres) BEING a tract of land situated in the MARY HAYS SURVEY ABSTRACT NO. 60, Camp County, Texas and being the remainder of a tract of land conveyed to E.B. McCaslin by deed recorded in Volume 191 Page 415 Deed Records Camp, County, Texas, and being more particularly described by metes and bounds | Const. art. 16 §§ 50, 51, Texas Prop. Code §§ 41.001-.002 | $221,352.00 | $650,000.00 |
| stove | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(1), 42.001(b)(4) | $100.00 | $100.00 |
| microwave | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(1), 42.001(b)(4) | $50.00 | $50.00 |
| refigerator/freezer | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(1), 42.001(b)(4) | $300.00 | $300.00 |
| freezer | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(1), 42.001(b)(4) | $300.00 | $300.00 |

*Amount subject to adjustment on 4/01/16 and every three years thereafter with respect to cases commenced on or after the date of adjustment.*                      $222,102.00          $650,750.00

B6C (Official Form 6C) (4/13) -- Cont.

In re  **Tedde Robin Blunck**                                    Case No.   **13-20129**

(if known)

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

*Continuation Sheet No. 1*

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| washer/dryer | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(1), 42.001(b)(4) | $200.00 | $200.00 |
| silverware | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(1), 42.001(b)(4) | $50.00 | $50.00 |
| bedroom furniture | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(1), 42.001(b)(4) | $750.00 | $750.00 |
| lawn furniture | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(1), 42.001(b)(4) | $50.00 | $50.00 |
| lawnmower | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(1), 42.001(b)(4) | $350.00 | $350.00 |
| televisions | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(1), 42.001(b)(4) | $300.00 | $300.00 |
| VCR | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(1), 42.001(b)(4) | $50.00 | $50.00 |
| DVR | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(1), 42.001(b)(4) | $50.00 | $50.00 |
| computer | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(1), 42.001(b)(4) | $200.00 | $200.00 |
| household tools | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(1), 42.001(b)(4) | $100.00 | $100.00 |
| plates | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(1), 42.001(b)(4) | $50.00 | $50.00 |
| den furniture | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(1), 42.001(b)(4) | $500.00 | $500.00 |
| dining room furniture | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(1), 42.001(b)(4) | $450.00 | $450.00 |
| | | $225,202.00 | $653,850.00 |

B6C (Official Form 6C) (4/13) – Cont.

In re **Tedde Robin Blunck**                                      Case No.   **13-20129**
                                                                              (If known)

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

*Continuation Sheet No. 2*

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| clothing | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(5) | $1,000.00 | $1,000.00 |
| personal jewelry | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(6) | $2,500.00 | $2,500.00 |
| S&W 460 Model Whitetails Unlimited 1 of 100 Texas Model S/N WTU1071 | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(7) | $1,500.00 | $1,500.00 |
| Knives, game calls, holsters & ammunition | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(8) | $3,000.00 | $3,000.00 |
| PSE Firestorm Lite Bow w/quiver stablizer, sights, whisker biscuit, case and 5 dozen aluminum arrows | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(8) | $500.00 | $500.00 |
| PSE X-Force HF w/quiver, stabilizer, sights, whisker biscuit, case and 2 dozen Axis arrows | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(7) | $1,550.00 | $1,550.00 |
| 5 dozen Silver broadheads, 4 dozen Muzzy broadheads | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(8) | $300.00 | $300.00 |
| Parsons Brinckerhoff Inc. Exec Def Comp Plan (DCOMPI) | Tex. Prop. Code § 42.0021 | $78,104.00 | $78,104.00 |
| Parsons Brinckerhoff Inc. Exec Def Comp Plan (DCOMPII) | Tex. Prop. Code § 42.0021 | $120,816.00 | $120,816.00 |
| Traditional IRA - Rollover (FNB Pittsburg, Texas) #42111 | Tex. Prop. Code § 42.0021 | $236,657.03 | $236,657.03 |
| T.RowePrice 401K | Tex. Prop. Code § 42.0021 | $40,120.25 | $40,120.25 |
| IRA: Pilgrim Bank of Pittsburg, Texas acct. no. xxxx865 (estimate) | Tex. Prop. Code § 42.0021 | $210,000.00 | $210,000.00 |
| | | $921,249.28 | $1,349,897.28 |

Page 185 of 207

B6C (Official Form 6C) (4/13) -- Cont.

In re  **Tedde Robin Blunck**                                    Case No.   **13-20129**
                                                                                        (If known)

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

*Continuation Sheet No. 3*

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| IRA: Capital One Bank account no. xxxxxx474 (estimate) | Tex. Prop. Code § 42.0021 | $229,000.00 | $229,000.00 |
| 1976 Bethany Citation Travel Trailer | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(9) | $2,000.00 | $2,000.00 |
| 2007 Ford Expedition | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(9) | $7,944.00 | $12,000.00 |
| 2008 Ford F-150 | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(9) | $4,862.00 | $15,000.00 |
| 2012 Ford Escape | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(9) | $463.00 | $21,000.00 |
| Desks | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(4) | $100.00 | $100.00 |
| computers | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(4) | $431.00 | $1,000.00 |
| office furnishings | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(4) | $0.00 | $500.00 |
| misc. office equipment | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(4) | $0.00 | $50.00 |
| legal reference books | Tex. Prop. Code §§ 42.001(a), 42.002 (a)(4) | $0.00 | $300.00 |
| | | $1,166,049.28 | $1,630,847.28 |

Page 186 of 207

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

IN RE:  Tedde Robin Blunck

CASE NO   13-20129

CHAPTER   13

## SCHEDULE C-1 (SUPPLEMENTAL EXEMPTION ANALYSIS)

**Exemption Totals by Category:**
(Values and liens of surrendered property are NOT included in this section)

Scheme Selected: **State**

| No. | Category | Gross Property Value | Total Encumbrances | Total Equity | Total Amount Exempt | Total Amount Non-Exempt |
|---|---|---|---|---|---|---|
| N/A | Real Property. | $1,185,000.00 | $817,088.00 | $367,912.00 | $221,352.00 | $146,560.00 |
| 1. | Cash on hand. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 2. | Checking, savings or other financial accounts, CD's or shares in banks... | $7,660.29 | $0.00 | $7,660.29 | $0.00 | $7,660.29 |
| 3. | Security deposits with public utilities, telephone companies, landlords, others. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 4. | Household goods and furnishings, including audio, video... | $3,850.00 | $0.00 | $3,850.00 | $3,850.00 | $0.00 |
| 5. | Books, pictures and other art objects, antiques, stamp, coin, records.... | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 6. | Wearing apparel. | $1,000.00 | $0.00 | $1,000.00 | $1,000.00 | $0.00 |
| 7. | Furs and jewelry. | $2,500.00 | $0.00 | $2,500.00 | $2,500.00 | $0.00 |
| 8. | Firearms and sports, photographic and other hobby equipment. | $29,075.00 | $0.00 | $29,075.00 | $6,850.00 | $22,225.00 |
| 9. | Interests in insurance policies. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10. | Annuities. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11. | Education IRAs. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12. | Interests in IRA, ERISA, Keogh... | $914,697.28 | $0.00 | $914,697.28 | $914,697.28 | $0.00 |
| 13. | Stock and interests in incorporated... | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 14. | Interests in partnerships.... | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 15. | Government and corporate bonds... | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 16. | Accounts receivable. | $59,500.00 | $0.00 | $59,500.00 | $0.00 | $59,500.00 |
| 17. | Alimony, maintenance, support, and property settlement to which the..... | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 18. | Other liquidated debts owed debtor... | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 19. | Equitable or future interests, life estates, and rights or powers..... | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 20. | Contingent and noncontingent interests in estate of decedent, death benefit.... | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 21. | Other contingent and unliquidated claims of every nature..... | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

Copyright 1996-2013 (Legal)PRO Systems, Inc., San Antonio, Texas (210) 561-5300 -- All rights reserved.

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

IN RE:  **Tedde Robin Blunck**                                      CASE NO    **13-20129**

                                                                    CHAPTER    **13**

## SCHEDULE C-1 (SUPPLEMENTAL EXEMPTION ANALYSIS)
*Continuation Sheet # 1*

### Exemption Totals by Category:
(Values and liens of surrendered property are NOT included in this section)                 Scheme Selected: **State**

| No. | Category | Gross Property Value | Total Encumbrances | Total Equity | Total Amount Exempt | Total Amount Non-Exempt |
|-----|----------|---------------------:|-------------------:|-------------:|--------------------:|------------------------:|
| 22. | Patents, copyrights, and other intellectual property. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 23. | Licenses, franchises, and other.... | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 24. | Customer Lists. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 25. | Automobiles, trucks, trailers, vehicles... | $50,000.00 | $34,731.00 | $15,269.00 | $15,269.00 | $0.00 |
| 26. | Boats, motors and accessories. | $5,000.00 | $0.00 | $5,000.00 | $0.00 | $5,000.00 |
| 27. | Aircraft and accessories. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 28. | Office equipment, furnishings... | $1,950.00 | $0.00 | $1,950.00 | $531.00 | $1,419.00 |
| 29. | Machinery, fixtures used in business. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 30. | Inventory. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 31. | Animals. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 32. | Crops - growing or harvested. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 33. | Farming equipment and implements. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 34. | Farm supplies, chemicals, and feed. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 35. | Other personal property of any kind. | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | **TOTALS:** | **$2,260,232.57** | **$851,819.00** | **$1,408,413.57** | **$1,166,049.28** | **$242,364.29** |

### Surrendered Property:
The following property is to be surrendered by the debtor. Although this property is NOT exempt, it is NOT considered "non-exempt" for purposes of this analysis. The below listed items are to be returned to the lienholder.

| Property Description | Market Value | Lien | Equity |
|----------------------|-------------:|-----:|-------:|
| **Real Property** | | | |
| (None) | | | |
| **Personal Property** | | | |
| (None) | | | |
| **TOTALS:** | $0.00 | $0.00 | $0.00 |

### Non-Exempt Property by Item:
The following property, or a portion thereof, is non-exempt.

| Property Description | Market Value | Lien | Equity | Non-Exempt Amount |
|----------------------|-------------:|-----:|-------:|------------------:|
| **Real Property** | | | | |
| Real property in Hays County | $515,000.00 | $388,440.00 | $126,560.00 | $126,560.00 |

Copyright 1996-2013 LegalPRO Systems, Inc., San Antonio, Texas (210) 561-5300 – All rights reserved.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

IN RE:  **Tedde Robin Blunck**                           CASE NO    **13-20129**

                                                         CHAPTER    **13**


## SCHEDULE C-1 (SUPPLEMENTAL EXEMPTION ANALYSIS)

*Continuation Sheet # 2*

| | | | |
|---|---|---|---|
| Orlanda, FL time share | $20,000.00 | $20,000.00 | $20,000.00 |
| **Personal Property** | | | |
| Cypress Bank, checking xxxx8152 | $286.00 | $286.00 | $286.00 |
| Cypress Bank; checking xxxx2980 | $7,374.29 | $7,374.29 | $7,374.29 |
| Belgium made Browning Nomad, 6 3/4" barrel, semi-automatic, 22 | $400.00 | $400.00 | $400.00 |
| Smith & Wesson Model 17-3, 6" barrel, 6-shot double action | $450.00 | $450.00 | $450.00 |
| Smith & Wesson Model 19-3, 6" barrel, 6-shot double action | $500.00 | $500.00 | $500.00 |
| Smith & Wesson Model 29-2, 8 3/8" barrel, 6-shot double action | $650.00 | $650.00 | $650.00 |
| Heckler & Kock Model USP Compact 9mmx19, semi-automatic, | $750.00 | $750.00 | $750.00 |
| Smith & Wesson Model 500, 9" barrel, 5-shot stainless steel | $1,100.00 | $1,100.00 | $1,100.00 |
| Thompson Center Contender, single shot, .357 Herrett caliber, S/N | $900.00 | $900.00 | $900.00 |
| Tarus Model 4510 3" Stainless Steel Barrel, .410 & .45 caliber, | $600.00 | $600.00 | $600.00 |
| Kel Tec Model P-3AT, 6-shot semi-automatic hard chrome, .380 | $350.00 | $350.00 | $350.00 |
| Glock Model 19 9mmx19, semi-automatic, 9mm caliber, S/N | $500.00 | $500.00 | $500.00 |
| Buddie Arms Double Duce 22 long rifle 2-shot Derringer, S/N | $250.00 | $250.00 | $250.00 |
| Ruger LCP Model 03701 semi-automatic 380 auto caliber S/N 378 | $500.00 | $500.00 | $500.00 |
| InterArms Model Mark X Alaskan, 375 H & H Magnum caliber, bolt | $1,200.00 | $1,200.00 | $1,200.00 |
| Remington Model 700 BDL, 270 caliber, bolt action, S/N 6357819 | $1,000.00 | $1,000.00 | $1,000.00 |
| Ruger Model 10/22 Cabrine, 22 long rifle caliber, semi-automatic | $500.00 | $500.00 | $500.00 |
| Century Arms Inc. Golani Sportster, .223 caliber, two 35 round | $750.00 | $750.00 | $750.00 |
| Colt AR-15, A2, 223 Caliber Government Cabrine S/N 007831 with | $2,500.00 | $2,500.00 | $2,500.00 |
| Remington Model 700 BDLEngraved, 300 Winchester caliber, bolt | $1,600.00 | $1,600.00 | $1,600.00 |
| Savage Arms Model 19530 Axis XP 243 Winchester caliber, bolt | $500.00 | $500.00 | $500.00 |
| AU Gamo Bone Collector Bull Whisper 4.5 (.177) Caliber Air Rifle | $250.00 | $250.00 | $250.00 |
| 59/66 Yugo Model 7.62x39 Nato Round C.A.I. Georgia, VT, Stock | $350.00 | $350.00 | $350.00 |
| Savage 93 R17 Model .17 HMR Caliber S/N 0177749 | $225.00 | $225.00 | $225.00 |
| Winchester Model 12,2 3/4" chamber, 12 gauge, pump, modified | $1,000.00 | $1,000.00 | $1,000.00 |
| Winchester Model 50, 2 3/4" chamber, 20 gauge, semi-automatic, | $750.00 | $750.00 | $750.00 |
| Winchester Ducks Unlimited Model 1300, 3" chamber, 12 gauge, | $500.00 | $500.00 | $500.00 |
| Winchester Model 50, 2 3/4" chamber, 12 gauge, semi-automatic, | $500.00 | $500.00 | $500.00 |

Copyright 1996-2013 LegalPRO Systems, Inc., San Antonio, Texas (210) 561-5300 -- All rights reserved.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

IN RE:  Tedde Robin Blunck                                    CASE NO    **13-20129**

                                                             CHAPTER    **13**

## SCHEDULE C-1 (SUPPLEMENTAL EXEMPTION ANALYSIS)

*Continuation Sheet # 3*

| | | | |
|---|---|---|---|
| Belgium made Winchester Model Super X2 magnum, 2 3/4", & 3 | $1,200.00 | $1,200.00 | $1,200.00 |
| Chinese made UCN X12, 3" chamber, 12 gauge, pump, riot gun | $300.00 | $300.00 | $300.00 |
| Remington 870 Magnum 12 gauge pump, 3" chamber, invector | $500.00 | $500.00 | $500.00 |
| ArmSport Model 2746, 2 3/4", 3", & 3 1/2" chamber, 12 gauge | $750.00 | $750.00 | $750.00 |
| Pelican 2 gun hard sided case | $300.00 | $300.00 | $300.00 |
| 3 Plano 2 gun hard sided cases | $300.00 | $300.00 | $300.00 |
| 8-Soft long gun cases | $300.00 | $300.00 | $300.00 |
| Oustanding loan balance from Beau Shafer | $14,500.00 | $14,500.00 | $14,500.00 |
| Note receivable from Richard and Vanessa Antoine | $45,000.00 | $45,000.00 | $45,000.00 |
| Duck Boat, Motor, and Trailer | $5,000.00 | $5,000.00 | $5,000.00 |
| computers | $1,000.00 | $1,000.00 | $569.00 |
| office furnishings | $500.00 | $500.00 | $500.00 |
| misc. office equipment | $50.00 | $50.00 | $50.00 |
| legal reference books | $300.00 | $300.00 | $300.00 |
| **TOTALS:** | **$631,235.29** | **$388,440.00** | **$242,795.29** | **$242,364.29** |

| Summary | |
|---|---|
| A. Gross Property Value (not including surrendered property) | $2,260,232.57 |
| B. Gross Property Value of Surrendered Property | $0.00 |
| C. Total Gross Property Value (A+B) | $2,260,232.57 |
| D. Gross Amount of Encumbrances (not including surrendered property) | $851,819.00 |
| E. Gross Amount of Encumbrances on Surrendered Property | $0.00 |
| F. Total Gross Encumbrances (D+E) | $851,819.00 |
| G. Total Equity (not including surrendered property) / (A-D) | $1,408,413.57 |
| H. Total Equity in surrendered items  (B-E) | $0.00 |
| I.  Total Equity  (C-F) | $1,408,413.57 |
| J. Total Exemptions Claimed | $1,166,049.28 |
| K.  Total Non-Exempt Property Remaining  (G-J) | $242,364.29 |

Copyright 1996-2013, LegalPRO Systems, Inc., San Antonio, Texas (210) 561-5300 -- All rights reserved.

B6D (Official Form 6D) (12/07)

In re **Tedde Robin Blunck**                                    Case No.   **13-20129**
                                                                          (if known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

☐  Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCT #:<br><br>**Capital Farm Credit**<br>**PO Box 216**<br>**Lockhart, TX 78644-2016** | | - | DATE INCURRED: **10/2010**<br>NATURE OF LIEN:<br>**Purchase Money**<br>COLLATERAL:<br>**Debtor's Homestead**<br>REMARKS:<br><br>VALUE:                    **$650,000.00** | | | | **$428,648.00** | |
| ACCT #:<br><br>**Cathy A. Blunck**<br>**1152 Little Bear Road**<br>**Buda, Texas 78610** | | - | DATE INCURRED:<br>NATURE OF LIEN:<br>**Marital property**<br>COLLATERAL:<br>**marital property**<br>REMARKS:<br>**A division of marital property was entered on February 20, 2013. Debtor has filed appeal.**<br>VALUE:                            **$0.00** | X | X | | **$0.00** | |
| ACCT #: xxxx5610<br><br>**Ford Motor Credit Corporation**<br>**Ford Motor Credit**<br>**PO Box 6275**<br>**Dearborn, MI 48121** | | - | DATE INCURRED: **08/2008**<br>NATURE OF LIEN:<br>**Purchase Money**<br>COLLATERAL:<br>**2008 Ford F-150**<br>REMARKS:<br><br>VALUE:                      **$15,000.00** | | | | **$10,138.00** | |
| ACCT #: xxxx9885<br><br>**Ford Motor Credit Corporation**<br>**Ford Motor Credit**<br>**PO Box 6275**<br>**Dearborn, MI 48121** | | - | DATE INCURRED: **09/15/2011**<br>NATURE OF LIEN:<br>**Purchase Money**<br>COLLATERAL:<br>**2012 Ford Escape**<br>REMARKS:<br><br>VALUE:                      **$21,000.00** | | | | **$20,537.00** | |

Subtotal (Total of this Page) >     **$459,323.00**     **$0.00**

Total (Use only on last page) >

____1____ continuation sheets attached

(Report also on Summary of Schedules.)     (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

B6D (Official Form 6D) (12/07) - Cont.
In re  **Tedde Robin Blunck**                                    Case No.  **13-20129**
                                                                        (if known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND AN ACCOUNT NUMBER (See Instructions Above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCT #: xxxxxxx2500<br><br>Greater TX F C U<br>6411 N Lamar Blvd<br>Austin, TX 78752 | | - | DATE INCURRED: **07/2007**<br>NATURE OF LIEN:<br>**Purchase Money**<br>COLLATERAL:<br>**2007 Ford Expedition**<br>REMARKS:<br>**in possession of former spouse**<br><br>VALUE:            **$12,000.00** | | | | **$4,056.00** | |
| ACCT #: xxxxx6145<br><br>Nationstar Mortgage LLC<br>Attn: Bankruptcy<br>350 Highland Dr<br>Lewisville, TX 75067 | | - | DATE INCURRED: **04/2008**<br>NATURE OF LIEN:<br>**Purchase Money**<br>COLLATERAL:<br>**Debtor's Homestead**<br>REMARKS:<br><br>VALUE:            **$515,000.00** | | | | **$388,440.00** | |
| ACCT #: xxxxx6145<br><br>Nationstar Mortgage LLC<br>Attn: Bankruptcy<br>350 Highland Dr<br>Lewisville, TX 75067 | | - | DATE INCURRED: **03-06/2013**<br>NATURE OF LIEN:<br>**Arrearage claim**<br>COLLATERAL:<br>**Debtor's Homestead**<br>REMARKS:<br>**residential property in Hays County occupied by former spouse**<br><br>VALUE:            **$7,400.00** | | | | **$7,400.00** | |
| | | | | | | | | |

Sheet no. ___**1**___ of ___**1**___ continuation sheets attached
to Schedule of Creditors Holding Secured Claims

Subtotal (Total of this Page) >        **$399,896.00**        **$0.00**
Total (Use only on last page) >        **$859,219.00**        **$0.00**

(Report also on Summary of Schedules.)

(If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

B6E (Official Form 6E) (04/13)

In re **Tedde Robin Blunck**                                                    Case No.   **13-20129**
                                                                                          (If Known)

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS**     (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐ **Domestic Support Obligations**
Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**
Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief.  11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**
Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $12,475* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**
Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**
Claims of certain farmers and fishermen, up to $6,150* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**
Claims of individuals up to $2,775* for deposits for the purchase, lease or rental of property or services for personal, family, or household use, that were not delivered or provided.  11 U.S.C. § 507(a)(7).

☐ **Taxes and Certain Other Debts Owed to Governmental Units**
Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to Maintain the Capital of an Insured Depository Institution**
Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution.  11 U.S.C. § 507(a)(9).

☐ **Claims for Death or Personal Injury While Debtor Was Intoxicated**
Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance.  11 U.S.C. § 507(a)(10).

☑ **Administrative allowances under 11 U.S.C. Sec. 330**
Claims based on services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by such person as approved by the court and/or in accordance with 11 U.S.C. §§ 326, 328, 329 and 330.

*Amounts are subject to adjustment on 4/01/16, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

_____1_____continuation sheets attached

B6E (Official Form 6E) (04/13) - Cont.

In re **Tedde Robin Blunck**                                    Case No. **13-20129**
                                                                                  (If Known)

## SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

| TYPE OF PRIORITY | Administrative allowances |
|---|---|

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
| ACCT #:<br>Gordon Mosley<br>4411 Old Bullard Rd. Ste. 700<br>Tyler, Texas 75703 | | - | DATE INCURRED: **06/25/2013**<br>CONSIDERATION:<br>**Attorney Fees**<br>REMARKS: | | | | $3,000.00 | $3,000.00 | $0.00 |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

Sheet no. __1__ of __1__ continuation sheets   Subtotals (Totals of this page) >   $3,000.00 | $3,000.00 | $0.00

attached to Schedule of Creditors Holding Priority Claims   Total >   $3,000.00

(Use only on last page of the completed Schedule E.
Report also on the Summary of Schedules.)

Totals >                                                    $3,000.00 | $0.00
(Use only on last page of the completed Schedule E.
If applicable, report also on the Statistical Summary
of Certain Liabilities and Related Data.)

Page 194 of 207

B6F (Official Form 6F) (12/07)

In re   **Tedde Robin Blunck**                                        Case No.   **13-20129**
                                                                                (if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

☐ Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCT #:<br>**AAA Financial Service**<br>PO Box 851001<br>Dallas, Texas 75285-1001 | | - | DATE INCURRED:<br>CONSIDERATION:<br>**Notice Only**<br>REMARKS: | | | | **Notice Only** |
| ACCT #:  xxxxxxxxxxxx3623<br>**American Express**<br>PO Box 3001<br>16 General Warren Blvd<br>Malvern, PA 19355 | | - | DATE INCURRED:  **01/2013**<br>CONSIDERATION:<br>**Credit Card**<br>REMARKS: | | | | **$1,013.00** |
| ACCT #:  xxxxxxxxxxxx6779<br>**Bank Of America**<br>Po Box 982235<br>El Paso, TX 79998 | | - | DATE INCURRED:  **04/2003**<br>CONSIDERATION:<br>**Credit Card**<br>REMARKS: | | | | **$11,807.00** |
| ACCT #:  xxxxxxxxxxx1499<br>**Bank Of America**<br>Po Box 982235<br>El Paso, TX 79998 | | - | DATE INCURRED:  **01/1999**<br>CONSIDERATION:<br>**Credit Card**<br>REMARKS: | | | | **$5,677.00** |
| ACCT #:<br>**Bank Of America**<br>PO Box 851001<br>Dallas, TX 75285 | | - | DATE INCURRED:<br>CONSIDERATION:<br>**Notice Only**<br>REMARKS: | | | | **Notice Only** |
| ACCT #:  xxxxxxxxxxx4561<br>**Barclays Bank Delaware**<br>Attn: Bankruptcy<br>P.O. Box 8801<br>Wilmington, DE 19899 | | - | DATE INCURRED:  **01/2013**<br>CONSIDERATION:<br>**Credit Card**<br>REMARKS: | | | | **$17,123.00** |

Subtotal >  **$35,620.00**

Total >
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

____3____ continuation sheets attached

B6F (Official Form 6F) (12/07) - Cont.

In re   **Tedde Robin Blunck**                                               Case No.   **13-20129**
                                                                                    (if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCT #:<br>**Camp CAD**<br>c/o Laurie Spindler Huffman<br>Linebarger Goggan Blair & Sampson,LLP<br>2323 Bryan Street Suite 1600<br>Dallas, TX 75201 | | - | DATE INCURRED:<br>CONSIDERATION:<br>**Notice Only**<br>REMARKS: | | | | **Notice Only** |
| ACCT #:<br>**Camp County Tax Assessor**<br>121 Church St., Room 101<br>Pittsburg, TX 75686 | | - | DATE INCURRED:<br>CONSIDERATION:<br>**Notice Only**<br>REMARKS: | | | | **Notice Only** |
| ACCT #:  xxxx-xxxx-xxxx-4432<br>**Card Member Services**<br>PO Box 94014<br>Palatine, IL 60094 | | - | DATE INCURRED:<br>CONSIDERATION:<br>**Notice Only**<br>REMARKS: | | | | **Notice Only** |
| ACCT #:  xxxxxxxxxxxx7921<br>**Citibank**<br>Citicorp Credit Services/Attn: Centraliz<br>PO Box 20507<br>Kansas City, MO 64195 | | - | DATE INCURRED:  **11/01/1994**<br>CONSIDERATION:<br>**Credit Card**<br>REMARKS: | | | | **$10,615.00** |
| ACCT #:<br>**Ford Motor Credit**<br>PO Box 7172<br>Pasadena, CA 91109-7172 | | - | DATE INCURRED:<br>CONSIDERATION:<br>**Notice Only**<br>REMARKS: | | | | **Notice Only** |
| ACCT #:<br>**Ford Motor Credit Company LLC**<br>Bassel and Wilcox<br>PO Box 11509<br>Fort Worth, TX 76110 | | - | DATE INCURRED:<br>CONSIDERATION:<br>**Notice Only**<br>REMARKS: | | | | **Notice Only** |

Sheet no. ____1____ of ____3____ continuation sheets attached to                              Subtotal >          **$10,615.00**
Schedule of Creditors Holding Unsecured Nonpriority Claims

Total >
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

B6F (Official Form 6F) (12/07) - Cont.

In re    **Tedde Robin Blunck**                                                    Case No.    **13-20129**
                                                                                              (if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCT #:  xxx4851<br>Grant & Weber<br>Attn: Bankruptcy<br>26575 W Agoura Rd<br>Calabasas, CA 91302 | | - | DATE INCURRED:  **12/2012**<br>CONSIDERATION:<br>**Installment Account**<br>REMARKS: | | | | **$741.00** |
| ACCT #:<br>Hays County CAD<br>c/o Diane W. Sanders<br>PO Box 17428<br>Austin, TX 78760 | | - | DATE INCURRED:<br>CONSIDERATION:<br>**Notice Only**<br>REMARKS: | | | | **Notice Only** |
| ACCT #:<br>Hays County Tax Office<br>102 N. LBJ Dr.<br>San Marcos, TX 78666 | | - | DATE INCURRED:<br>CONSIDERATION:<br>**Notice Only**<br>REMARKS: | | | | **Notice Only** |
| ACCT #:<br>John Barrett<br>Barrett & Coble<br>7200 North MoPac Expressway, Ste. 440<br>Austin, Texas 78731 | | - | DATE INCURRED:  **2013**<br>CONSIDERATION:<br>**Attorney Fees for former spouse**<br>REMARKS:<br>**under appeal**<br><br>**$66,612.00 awarded at trial** | | | X | **Notice Only** |
| ACCT #:<br>Karl E. Hays<br>2101 South IH-35, Ste. 210<br>Austin, Texas 78741 | | - | DATE INCURRED:<br>CONSIDERATION:<br>**Appellate counsel fees for former spouse**<br>REMARKS:<br>**under appeal**<br><br>**$20,000.00 awarded at trial** | | | X | **Notice Only** |
| ACCT #:<br>Leon Breeden<br>120 West Hopkins, Ste. 102<br>San Marcos, TX 78666 | | - | DATE INCURRED:<br>CONSIDERATION:<br>**Attorney fees for appointed Receiver**<br>REMARKS:<br>**under appeal**<br><br>**$11,756.00 awarded at trial** | | | X | **$0.00** |

Sheet no. _____**2**_____ of _____**3**_____ continuation sheets attached to      Subtotal >      $741.00
Schedule of Creditors Holding Unsecured Nonpriority Claims

Total >
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

Page 197 of 207

B6F (Official Form 6F) (12/07) - Cont.

In re   **Tedde Robin Blunck**                                       Case No.   **13-20129**
                                                                              (if known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCT #:  xxxx-xxxx-xxxx-3337 <br><br>RCI Card Services <br>PO Box 13337 <br>Philadelphia, PA  19101-3337 | | - | DATE INCURRED: <br>CONSIDERATION: <br>**Notice Only** <br>REMARKS: | | | | **Notice Only** |
| ACCT #:  xxx2509 <br><br>The Lotus Agency <br>15904 Strathern St Ste 1 <br>Van Nuys, CA 91406 | | - | DATE INCURRED:  **10/2012** <br>CONSIDERATION: <br>**Collection Attorney** <br>REMARKS: | | | | **$2,400.00** |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Sheet no. ____**3**____ of ____**3**____ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

                                                          Subtotal >        **$2,400.00**

                                                             Total >        **$49,376.00**
(Use only on last page of the completed Schedule F.)
(Report also on Summary of Schedules and, if applicable, on the
Statistical Summary of Certain Liabilities and Related Data.)

B6G (Official Form 6G) (12/07)

In re **Tedde Robin Blunck**                                    Case No.   **13-20129**
                                                                           (if known)

## SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests.
State nature of debtor's interest in contract, i.e., "Purchaser," "Agent," etc.  State whether debtor is the lessor or lessee of a lease.
Provide the names and complete mailing addresses of all other parties to each lease or contract described.  If a minor child is a party to
one of the leases of contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a
minor child, by John Doe, guardian."  Do not disclose the child's name.  See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☑  Check this box if debtor has no executory contracts or unexpired leases.

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT. | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST. STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY. STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
|---|---|
| | |

Page 199 of 207

B6H (Official Form 6H) (12/07)

In re  **Tedde Robin Blunck**                                       Case No.   **13-20129**
                                                                              (if known)

# SCHEDULE H - CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by the debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight-year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☑ Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| | |

Page 200 of 207

B6I (Official Form 6I) (12/07)

In re **Tedde Robin Blunck**                                    Case No. __13-20129_____

                                                                        (if known)

## SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child. The average monthly income calculated on this form may differ from the current monthly income calculated on Form 22A, 22B, or 22C.

| Debtor's Marital Status: | Dependents of Debtor and Spouse | | | |
|---|---|---|---|---|
| **Single** | Relationship(s): wife | Age(s): | Relationship(s): | Age(s): |

| Employment: | Debtor | Spouse |
|---|---|---|
| Occupation | Sr. Assoc. Counsel | |
| Name of Employer | Parsons Brinckerhoff Group | |
| How Long Employed | 23 years | |
| Address of Employer | 1 Penn Plaza New York, N.Y. | |

INCOME: (Estimate of average or projected monthly income at time case filed)

| | | DEBTOR | SPOUSE |
|---|---|---|---|
| 1. | Monthly gross wages, salary, and commissions (Prorate if not paid monthly) | $14,178.67 | |
| 2. | Estimate monthly overtime | $0.00 | |
| 3. | SUBTOTAL | $14,178.67 | |
| 4. | LESS PAYROLL DEDUCTIONS | | |
| | a. Payroll taxes (includes social security tax if b. is zero) | $1,969.33 | |
| | b. Social Security Tax | $849.12 | |
| | c. Medicare | $198.51 | |
| | d. Insurance | $490.32 | |
| | e. Union dues | $0.00 | |
| | f. Retirement | $0.00 | |
| | g. Other (Specify)   LTD | $29.06 | |
| | h. Other (Specify) | $0.00 | |
| | i. Other (Specify) | $0.00 | |
| | j. Other (Specify) | $0.00 | |
| | k. Other (Specify) | $0.00 | |
| 5. | SUBTOTAL OF PAYROLL DEDUCTIONS | $3,536.34 | |
| 6. | TOTAL NET MONTHLY TAKE HOME PAY | $10,642.33 | |
| 7. | Regular income from operation of business or profession or farm (Attach detailed stmt) | $500.00 | |
| 8. | Income from real property | $0.00 | |
| 9. | Interest and dividends | $0.00 | |
| 10. | Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | $0.00 | |
| 11. | Social security or government assistance (Specify): | $2,556.00 | |
| 12. | Pension or retirement income | $0.00 | |
| 13. | Other monthly income (Specify): | | |
| | a. Prorated Income Tax Refund | $1,250.00 | |
| | b. | $0.00 | |
| | c. | $0.00 | |
| 14. | SUBTOTAL OF LINES 7 THROUGH 13 | $4,306.00 | |
| 15. | AVERAGE MONTHLY INCOME (Add amounts shown on lines 6 and 14) | $14,948.33 | |
| 16. | COMBINED AVERAGE MONTHLY INCOME: (Combine column totals from line 15) | $14,948.33 | |

(Report also on Summary of Schedules and, if applicable,
on Statistical Summary of Certain Liabilities and Related Data)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:
**Debtor's status has been changed from a straight salary postition to hourly.**
**He is now part-time**

B6J (Official Form 6J) (12/07)

IN RE:   **Tedde Robin Blunck**                                            Case No.   **13-20129**

                                                                              (if known)

## SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average or projected monthly expenses of the debtor and the debtor's family at time case filed. Prorate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate. The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form 22A or 22C.

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse."

| | |
|---|---:|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | $2,429.46 |
|    a. Are real estate taxes included?  ☐ Yes  ☑ No | |
|    b. Is property insurance included?  ☐ Yes  ☑ No | |
| 2. Utilities:  a. Electricity and heating fuel | $250.00 |
|           b. Water and sewer | $40.00 |
|           c. Telephone | $101.00 |
|           d. Other:  Satellite Service | $50.67 |
| 3. Home maintenance (repairs and upkeep) | $50.00 |
| 4. Food | $675.00 |
| 5. Clothing | $200.00 |
| 6. Laundry and dry cleaning | $50.00 |
| 7. Medical and dental expenses | $50.00 |
| 8. Transportation (not including car payments) | $500.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | $50.00 |
| 10. Charitable contributions | |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | |
|         a. Homeowner's or renter's | $487.50 |
|         b. Life | $457.04 |
|         c. Health | |
|         d. Auto | $266.00 |
|         e. Other:  American Home Shield - warrant | $49.75 |
| 12. Taxes (not deducted from wages or included in home mortgage payments)<br>Specify: est. property taxes | $1,300.00 |
| 13. Installment payments: (In chapter 11, 12, and 13 cases, do not list payments to be included in the plan) | |
|      a. Auto:   FMC: 2012 Ford Escape | $526.59 |
|      b. Other:  Nationstar Mortgage - Buda home | $2,466.00 |
|      c. Other:  FMC: 2008 Ford F-150 | $711.98 |
|      d. Other: | |
| 14. Alimony, maintenance, and support paid to others: | |
| 15. Payments for support of add'l dependents not living at your home: | |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | $510.00 |
| 17.a. Other: See attached personal expenses | $232.00 |
| 17.b. Other: | |
| 18. AVERAGE MONTHLY EXPENSES (Total lines 1-17. Report also on Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | **$11,452.99** |
| 19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document: **None.** | |
| 20. STATEMENT OF MONTHLY NET INCOME | |
| a. Average monthly income from Line 15 of Schedule I | $14,948.33 |
| b. Average monthly expenses from Line 18 above | $11,452.99 |
| c. Monthly net income (a. minus b.) | $3,495.34 |

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

IN RE:   **Tedde Robin Blunck**                                    CASE NO   **13-20129**

                                                                  CHAPTER   **13**

## EXHIBIT TO SCHEDULE J

## Itemized Business Expenses
### Law Practice

| Expense | Category | Amount |
|---|---|---|
| property tax expense | | $110.00 |
| office expenses | | $400.00 |
| | Total > | $510.00 |

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

IN RE:   **Tedde Robin Blunck**                                    CASE NO   **13-20129**

                                                                  CHAPTER   **13**

## EXHIBIT TO SCHEDULE J

*Continuation Sheet No. 1*

## Itemized Personal Expenses

| Expense | Amount |
|---|---|
| Home Security | $49.00 |
| personal care | $65.00 |
| housekeeping | $55.00 |
| Internet Service | $63.00 |
| **Total >** | **$232.00** |

B6 Summary (Official Form 6 - Summary) (12/07)

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

In re  **Tedde Robin Blunck**                                      Case No.    **13-20129**

                                                                   Chapter     **13**

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each.  Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided.  Add the amounts from Schedules A and B to determine the total amount of the debtor's assets.  Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors also must complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | $1,185,000.00 | | |
| B - Personal Property | Yes | 9 | $1,075,232.57 | | |
| C - Property Claimed as Exempt | Yes | 4 | | | |
| D - Creditors Holding Secured Claims | Yes | 2 | | $859,219.00 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 2 | | $3,000.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 4 | | $49,376.00 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 1 | | | $14,948.33 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 3 | | | $11,452.99 |
| TOTAL | | 28 | $2,260,232.57 | $911,595.00 | |

Form 6 - Statistical Summary (12/07)

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

In re  **Tedde Robin Blunck**                                     Case No.   **13-20129**

                                                                 Chapter    **13**

# STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C. § 101(8)), filing a case under chapter 7, 11, or 13, you must report all information requested below.

☐  Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

**Summarize the following types of liabilities, as reported in the Schedules, and total them.**

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | $0.00 |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | $0.00 |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) (whether disputed or undisputed) | $0.00 |
| Student Loan Obligations (from Schedule F) | $0.00 |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | $0.00 |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | $0.00 |
| TOTAL | $0.00 |

**State the following:**

| | |
|---|---|
| Average Income (from Schedule I, Line 16) | $14,948.33 |
| Average Expenses (from Schedule J, Line 18) | $11,452.99 |
| Current Monthly Income (from Form 22A Line 12; OR, Form 22B Line 11; OR, Form 22C Line 20) | $14,767.71 |

**State the following:**

| | | |
|---|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" column | | $0.00 |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column. | $3,000.00 | |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | | $0.00 |
| 4. Total from Schedule F | | $49,376.00 |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | | $49,376.00 |

B6 Declaration (Official Form 6 - Declaration) (12/07)

In re **Tedde Robin Blunck**                                            Case No.  **13-20129**
                                                                              (if known)

# DECLARATION CONCERNING DEBTOR'S SCHEDULES

## DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of _____**30**_____ sheets, and that they are true and correct to the best of my knowledge, information, and belief.

Date **7/23/2013** _____        Signature **_/s/ Tedde Robin Blunck_** _____
                                                          *Tedde Robin Blunck*

Date _____        Signature _____

[If joint case, both spouses must sign.]

---

*Penalty for making a false statement or concealing property:  Fine of up to $500,000 or imprisonment for up to 5 years or both.  18 U.S.C. §§ 152 and 3571.*